David Gurnick, SBN 115723
Matthew J. Soroky, SBN 258230
Lewitt, Hackman, Shapiro, Marshall & Harlan
16633 Ventura Boulevard, 11th Floor
Encino, California 91436-1865
Phone: (818) 990-2120; Fax: (818) 981-4764
dgurnick@lewitthackman.com; msoroky@lewitthackman.com
Attorneys for Plaintiff D & D Greek Restaurant, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

D & D Greek Restaurant, Inc., d/b/a The Great Greek, a California corporation,

               Plaintiff,

     vs.

Great Greek Franchising, LLC, a Florida limited liability company and DOES 1 through 10,

           Defendants.

**CASE NO:**

**COMPLAINT FOR:**

1. **INJUNCTIVE RELIEF FOR TRADEMARK INFRINGE-MENT (15 U.S.C. § 1125(a))**

2. **FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**

3. **CANCELLATION OF FEDERAL REGISTRATIONS (15 U.S.C. § 1119)**

4. **TRADEMARK INFRINGMENT (CAL. BUS. & PROF. CODE § 14335 & COMMON LAW)**

5. **UNFAIR COMPETITION (CAL. BUS. & PROF. CODE § 17200 & COMMON LAW)**

**JURY TRIAL DEMANDED**

## I.    NATURE OF ACTION

1. Plaintiff owns and operates *The Great Greek* restaurant, which has operated more than 36 years. Since the 1980s Plaintiff's trademark *The Great Greek* has maintained and grown widespread recognition nationally and internationally, for quality foods and service. In 2019 Plaintiff acquired the restaurant, trademark and goodwill of the trademark from the founding company.

Lewitt, Hackman, Shapiro, Marshall & Harlan
A Law Corporation

1  In this Complaint, as in the Lanham Act, "trademark" refers to both a trademark

2  and service mark.

3      2.  This action is for injunctive relief to protect Plaintiff's rights as the senior

4  user and owner of *The Great Greek* trademark, stop Defendant's infringement of

5  the trademark, protect the public from being confused by Defendant's infringement,

6  cancel trademark registrations Defendant obtained and for relief based on additional

7  trademark-related claims.

8  ## II.    THE PARTIES AND THE TRADEMARK

9      3.  Plaintiff is D & D Greek Restaurant, Inc., a California corporation.

10  Plaintiff does business under the fictitious business name *The Great Greek*. Plaintiff

11  owns and operates *The Great Greek* restaurant in Los Angeles.  The restaurant was

12  founded in 1984 and operated continuously, all this time providing quality foods,

13  dine-in and take out, catering, and a location for parties and special events, all under

14  the trademark *The Great Greek*.

15      4.  *The Great Greek* restaurant has attracted visitors from throughout the

16  nation and many parts of the world, over nearly four decades, to enjoy the

17  restaurant's foods and services.  The restaurant is in the San Fernando Valley, in

18  Los Angeles.  Both are centers of tourism.  The restaurant has attracted and served

19  numerous interstate travelers.

20      5.  The brand, *The Great Greek,* and restaurant whose foods and services are

21  identified by the brand, have attained substantial notoriety and prominence in and

22  near and far beyond Los Angeles and California.  Examples of remarks illustrating

23  the national and international reputation include the following:

24      a.  Blonde H. from Chicago, Illinois posted in 2008 "Returned today after

25  not being there for two years.  Still GREAT and the food is Delicious!

26  Service is always exceptional.  I love the Greek Salad here."

27      b.  Ellie C. from Allentown, Pennsylvania posted in 2008 "I love this place

28  with a passion.  The food and wine are amazing.  I always get the

vegetarian plate, Greek coffee, and baklava and always end up taking some home. . .”

   c. Mitch N. from Seattle, Washington posted in 2008 “This is one of my favorite lunch spots while I’m in LA for business.”

   d. Joanna R. from London, UK posted in 2009: “I was lying awake in bed last night dreaming of this place. I haven’t been in several months (I live in London now), but have many fond memories of the Great Greek.”

These comments are only four examples; thousands of favorable comments reflecting recognition of the brand have been spoken and written in social media and elsewhere over the years.

6.  Widespread recognition, fame and prominence of *The Great Greek* trademark are shown by the length of time the restaurant has operated successfully under the brand, by hundreds of thousands of guests served and millions of dollars of aggregate products and services sold over the years for quality foods, dine-in and take out, catering, and parties and special events services, by wide coverage of the mark in print and print advertising, by reviews by famous food and dining critics who have substantial readerships, listeners and viewers, by appearances of the brand on popular television shows, and by attention on social media.

7.  *The Great Greek* trademark and restaurant have been commented on favorably by known restaurant reviewers such as Elmer Dills and Larry Lipson. *The Great Greek* trademark has been shown in popular media such as appearances on TV shows *NCIS: Los Angeles*, *Two and Half Men* and *Chasing Maria Menounos*. The restaurant has been regularly patronized by some of the nation’s most famous celebrities, whose patronage is no more or less important than the valued patronage of all other customers, except that patronage by and association with celebrities attracts more attention to and recognition of *The Great Greek* brand.

8.  Defendant Great Greek Franchising, LLC (“GGF”) is a Florida limited liability company with its headquarters in Florida.

Lewitt, Hackman, Shapiro, Marshall & Harlan
A Law Corporation

9.   Within approximately 30 days prior to filing this Complaint, Plaintiff became aware for the first time of possible existence of GGF, using trademarks *Great Greek* and *The Great Greek Mediterranean Grill* for restaurant services. Plaintiff investigated and learned that GGF obtained registrations in the PTO for these trademarks for restaurant services, and that GGF uses and has purported to grant licenses to others to use such marks for restaurants in California, Colorado, Florida, Michigan, Nevada, Texas, Ohio and other states.

10. Plaintiff learned that GGF's predecessor improperly registered *The Great Greek Mediterranean Grill* (No. 5,298,597) on the Supplemental Register of the PTO, then GGF improperly registered *Great Greek* (No. 5,964,545) and *The Great Greek Mediterranean Grill* (Nos. 6,110,408; 6,110,409; 6,110,410; and 6,110,411) on the Principal Register of the PTO.

11. The above registrations should not have been applied for or granted. This is because Plaintiff and Plaintiff's predecessor(s) were and are prior and senior users of the mark.  This is because Plaintiff believes, and on information and belief alleges, GGF and its predecessor knew or should have known their assertions to the PTO of trademark rights to the exclusion of all other users in the United States and disclaimer of knowledge of other rights and uses of the marks or similar marks, such as use of *The Great Greek* by Plaintiff and its predecessor, were false.

12.  Plaintiff applied to register *The Great Greek* as a trademark in the PTO. Due to GGF's registrations, Plaintiff's application will be denied or suspended by PTO pending the outcome of this litigation.

13.  The registrations obtained by GGF are improper, unfair, unlawful impediments to Plaintiff, the senior user and victim of infringement, obtaining registration for its trademark. This is because GGF is a junior user and infringer.

14.  Plaintiff does not know the true names, identities or capacities of Defendants sued by the fictitious names DOES 1 through 10.  Each fictitiously named Defendant is an individual or entity that is responsible and liable for the

Lewitt, Hackman, Shapiro, Marshall & Harlan
A Law Corporation

damages alleged.  Plaintiffs will seek leave of court to amend this Complaint to state the true names, identities and capacities after they are ascertained.

15.   In doing the acts and omissions alleged, each Defendant was the agent, servant, employee or co-conspirator of each other Defendant and each acted in the course and scope of the agency, service, employment or conspiracy with the ratification or approval of the principal, employer and fellow conspirators.

## III.   JURISDICTION AND VENUE

16.   This Court has subject matter jurisdiction pursuant to Section 39 of the Lanham Act, 15 U.S.C. § 1121, and under 28 U.S.C. §§ 1331 and 1338(a) and (b).

17.    Though not essential for this Court to exercise jurisdiction, in view of the subject matter jurisdiction, Plaintiff alleges on information and belief that this Court also has subject matter jurisdiction under 28. U.S.C. § 1332 because on information and belief there is complete diversity of citizenship between the parties and the amount in controversy and/or value of the controversy exceeds $75,000, exclusive of interest and costs.  Defendant is a Florida limited liability company. Defendant has stated publicly that its owners are UFG Holdings Group, LLC, a Florida limited liability company and TGG Partners, LLC, a Nevada limited liability company.  Plaintiff will conduct discovery to confirm that UFG's and TGG's direct and indirect owners do not include any persons/entities that are incorporated, organized, headquartered or residing in California in a manner that would defeat diversity and if any such diversity-destroying ownership is identified, Plaintiff will amend this Complaint to remove this paragraph and ground for jurisdiction.

18.   This Court has supplemental jurisdiction over Plaintiff's related state law and common law claims under 28 U.S.C. § 1367(a).

19.   This Court has personal jurisdiction over GGF in at least the following ways: GGF purposely availed itself of the benefits of doing business in this state, purposefully directed its infringement to this state, committed its infringement in

\\SQL1\ProLaw\Documents\KLE\19822-2\2384787.docx

this state, and knew Plaintiff would suffer harm from infringement in this state, and because infringement and confusion by GGF create a substantial connection to the state and occurred, are presently occurring, and are immediately about to occur in this state.

a.      GGF and its predecessor must have, and presumably, did conduct at least cursory research and investigation for "great greek" used elsewhere prior to adopting and using the mark for its restaurants.  This would result in ready discovery of Plaintiff's recognized brand and restaurant in California.

b.      GGF registered to sell investments in this state under the infringing trademarks consisting of business franchises in California and offered and sold business franchise investments in California for restaurants to be known as *The Great Greek Mediterranean Grill.*  GGF intends to saturate California with franchised locations bearing the same or similar name and mark, including use of *Great Greek* in advertising and branding for GGF's franchised restaurants, and selling the same kind of foods and services as Plaintiff's restaurant. This harms Plaintiff in California by confusing the public and making it harder and costlier for Plaintiff to compete in California.

c.      GGF entered into at least 36 written agreements granting franchises in California, to establish in California, restaurants using the infringing trademark. GGF used the infringing trademark in selling and granting the franchise investments.

d.      GGF operates a website directed in substantial part to people in California, particularly for the offer and sale of franchises using the infringing trademark, to people in California.  In the website GGF states expressly that California is a "target market.:  The following appears on the GGF website at https://thegreatgreekgrillfranchise.com/available-territories/:

Lewitt, Hackman, Shapiro, Marshall & Harlan
A Law Corporation

\\SQL1\ProLaw\Documents\KLE\19822-2\2384787.docx

**TARGET MARKETS**

| | |
|---|---|
| Connecticut | Florida |
| Massachusetts | Texas |
| Oregon | North Carolina |
| Nebraska | New York |
| Tennessee | Colorado |
| Texas | California |
| Washington | |

(arrow points to California identified as a target market on GGF's website)

e.    GGF designated a Regional Vice President specifically for California (Jeffrey Thompson).

f.    The 36 or more written agreements in California include but are not limited to agreements entered into with Ruben & Jennifer Avila, Doheg Velasco and Anthony Simons for franchises in California, and numerous other unsuspecting victims of GGF's scheme of offering and selling franchises using a trademark that GGF does not have the right to use and that infringes Plaintiff's trademark.

g.    GGF registered year after year, for three years, with the California government agency that regulates sales of franchises (Department of Business Oversight, recently renamed Department of Financial Protection and Innovation).

h.    GGF corresponded with and paid filing fees to the California Department of Business Oversight.

i.    GGF's franchise agreement documents include forms of addendum specifically for and referencing California.

j.    Defendant appointed an agent in California, the California Commissioner of Business Oversight as Defendant's agent to receive service of process.

20.  GGF knows that the harm they are inflicting is likely to be suffered by Plaintiff in this jurisdiction.

Lewitt, Hackman, Shapiro, Marshall & Harlan
A Law Corporation

21.   Plaintiff's claims arise directly out of GGF's contacts with and infringing activities in California, and GGF caused Plaintiff and is causing Plaintiff to suffer harm in this state.  GGF is causing confusion to customers of Plaintiff's restaurant in this State.  GGF is causing confusion to and misleading and misrepresenting the trademark to unsuspecting franchise purchasers in this State.

22.   This Court's exercise of personal jurisdiction over GGF comports with fair play and substantial justice.  GGF has very substantially interjected itself into this jurisdiction by the above activities directed to this jurisdiction; there is little burden on GGF to defend here, particularly in view of its substantial activities here including selling investments to numerous unsuspecting victims here, there is no conflict here with sovereignty of GGF's home state; there is a strong interest in the claim being adjudicated here in California where the infringement is taking place and where protection and relief is needed for Plaintiff and for unsuspecting victims of investments that Defendant is selling in this state; this is the most efficient place for judicial resolution of the claim; and this jurisdiction is important to plaintiff in terms of convenient and effective relief.

23.   Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because the infringement, confusion, injury and damage are taking place in this District.

## IV.   PLAINTIFF'S TRADEMARK *THE GREAT GREEK*

24.   *The Great Greek* trademark has been used continuously since 1984 by Plaintiff and its predecessor-in-interest.  The founder and predecessor-in-interest is The Great Greek, Inc., a California corporation organized in 1982.

25.   *The Great Greek* restaurant is on one of California's most prominent streets, Ventura Boulevard, at 13362 Ventura Boulevard, Sherman Oaks, California.

26.   As a result of quality foods, quality service, advertising and marketing, customer satisfaction, attention in print, news and entertainment media, online attention, patronage of travelers throughout California and from outside California, attention of celebrities, presentation in popular media, desires of customers to visit

\\SQL1\ProLaw\Documents\KLE\19822-2\2384787.docx

Lewitt, Hackman, Shapiro, Marshall & Harlan
A Law Corporation

again, referrals by word-of-mouth, distinctiveness of the name and brand, and longevity of all the foregoing and other factors, the brand *The Great Greek* has attained a high level of recognition and notoriety, associated with Plaintiff as the source and with the quality of goods and services associated with Plaintiff.

27.  *The Great Greek* was inherently distinctive and strong as a trademark from the start or has acquired distinctiveness over time and substantial usage, advertising, marketing and promotion, or various or all of these.  It serves to identify and indicate a single source and level of quality of Plaintiff's quality foods, dine-in and take out, catering, parties and special events services to the public, and to distinguish these from other establishments including those advertised and franchised by GGF.

28.  Since in or about 1984, the restaurant under *The Great Greek* trademark has delivered foods and services to customers in interstate commerce.  Customers from out-of-state have come to patronize the restaurant under its brand.  As an example, early in the restaurant's history, the restaurant served nationwide and international visitors during the 1984 Olympic Games in Los Angeles.  Plaintiff advertised and marketed to customers out-of-state.  For example, since in or about 2002 Plaintiff and its predecessor-in-interest advertised and marketed the brand interstate and nationwide using the www.greatgreek.com website.

29.  Plaintiff and its predecessor-in-interest invested considerable effort and resources in advertising and promoting *The Great Greek* brand.  Over the years, the trademark owners prominently used and promoted *The Great Greek* trademark.

30.  The brand has appeared in print news, advertisements and other places. The trademark appears on large prominent signage at the restaurant, where it is seen by thousands of people daily, millions of people over the years. The brand was and is advertised and promoted on social media including but not limited to Yelp! and TripAdvisor.

\\SQL1\ProLaw\Documents\KLE\19822-2\2384787.docx

31.  The trademark has been noticed and recognized.  The restaurant's foods and service, known by the trademark, received many food critic awards from famous reviewers such as Larry Lipson and Elmer Dills.  The signage and interior appeared in nationally and internationally syndicated broadcast TV shows such as *Two and a Half Men* and *NCIS: Los Angeles.*

32.  On the social media sites, interstate customers post reviews and comments about the restaurant.  These attest to their positive experiences associated with Plaintiff's trademark.  Some reviewers point out having gone to the restaurant 20 to 25 years.

33.  As a result of long usage and extensive promotion and wide recognition of the mark, *The Great Greek* was originally or long ago acquired distinctiveness as the trademark for Plaintiff's goods and service, and the mark distinguishes Plaintiff's foods and services from others offering foods and service at restaurants.

34.  As a result of usage with and delivery of quality restaurant foods and quality services, advertising, promotion, public attention, media attention, attention from critics, public comments and other forms of messaging and attention, Plaintiff owns valuable goodwill and strong common law trademark rights to *The Great Greek* as a trademark for restaurant foods and service.

## V.    DEFENDANT GGF'S INFRINGEMENTS

35.  Within approximately 30 days prior to filing this Complaint, Plaintiff first became aware of possible existence of GGF, using trademarks *Great Greek* and *The Great Greek Mediterranean Grill* for restaurant services.  On investigation, Plaintiff learned for the first time that GGF obtained registrations in the PTO for these trademarks for restaurant services and uses the marks in restaurants and sold licenses to establish restaurants under such name in California, Colorado, Florida, Michigan, Nevada, Ohio, Texas and other states.

36.   Plaintiff believes, and on information and belief alleges, that GGF recently started using a web address confusingly similar to Plaintiff's web address.

Lewitt, Hackman, Shapiro, Marshall & Harlan
A Law Corporation

\\SQL1\ProLaw\Documents\KLE\19822-2\2384787.docx

1   Within these approximately 30 days, Plaintiff received communications from

2   persons located out-of-state, seeking to contact GGF's restaurants for food orders,

3   being directed to Plaintiff and being confused.  Plaintiff received a Facebook "tag"

4   from city government office in Ohio about an opening of one of GGF's restaurants

5   there.  Even a local government promoting a local GGF restaurant was confused.

6       37.   In view of the prominence of Plaintiff's brand, its wide usage, its

7   longtime usage, its media coverage, its attention by restaurant critics, its appearance

8   on the internet, its clientele of people located throughout the country, Plaintiff

9   believes, and on information and belief alleges, Defendant must have known and

10  did know of Plaintiff and Plaintiff's trademark prior to submitting applications and

11  GGF must have been false in its applications to register trademarks.

12      38.   PTO records show GGF and its predecessor hired experienced

13  trademark/intellectual property attorneys, Mr. Charles Coons of Cooper Coons, Ltd.

14  in Las Vegas, Nevada, and then intellectual property partner Mr. Michael K. Dixon

15  and prominent Florida-based law firm Akerman LLP, to prepare and file trademark

16  registration applications in 2017 and 2018 and obtain registrations for *The Great*

17  *Greek Mediterranean Grill* and *Great Greek* .  GGF and its trademark counsel must

18  have, presumably they did, or should have, conducted adequate research and

19  investigation for "great greek" used elsewhere.  Even a cursory search, through

20  Google, would result in ready discovery of Plaintiff's recognized brand and

21  restaurant.

22      39.   GGF has offered and sold franchises in at least California, Colorado,

23  Florida, Michigan, Ohio and Texas.  To offer and sell franchises, GGF prepared a

24  Franchise Disclosure Document ("FDD").  The FDD says GGF is part of United

25  Franchise Group ("UFG").

26      40.   UFG is a self-proclaimed "franchising giant" with more than 1,600

27  franchise locations in 80 countries.  UGF's franchise brands include GGF's

28  infringing restaurant brand and at least 10 other franchise companies: EmbroidMe,

Lewitt, Hackman, Shapiro, Marshall & Harlan
A Law Corporation

\\SQL1\ProLaw\Documents\KLE\19822-2\2384787.docx

Lewitt, Hackman, Shapiro, Marshall & Harlan
A Law Corporation

1    Sign*A*Rama, Transworld Business Advisors, Greener Energy, Experimax

2    Franchising, J.S. Subs, Venture X Franchising, Network Lead Exchange and

3    Resource Operations International, in industries including signage, embroidery,

4    business brokerage agencies, computer stores, sustainability advising, outsource and

5    business networking.

6        41.   Plaintiff believes, and on information and belief alleges, such an

7    experienced franchise company conducted due diligence into the *Great Greek*

8    trademark and became well aware of Plaintiff's renowned restaurant and mark *The*

9    *Great Greek* prior to adopting its trademarks for its restaurant franchise.

10        42.   GGF as a franchisor is required by a rule of the Federal Trade

11    Commission and under the California Franchise Investment Law, to disclose in the

12    FDD the nature of the franchise investment.  The legal requirements for FDD Item

13    13 required GGF to disclose information about other usages of trademarks the same

14    or similar to its trademark.  The Item 13 rules require GGF to disclose whether the

15    franchisor knows of superior prior rights or infringing uses that could materially

16    affect the franchisee's use of the principal trademarks in the state where the

17    franchised business will be located. 16 C.F.R. § 436.5(m)(9).  To make such

18    disclosure required GGF to investigate.

19        43.   GGF's FDD Item 13 stated, and Plaintiff believes and on information

20    and belief alleges GGF stated falsely, that it claimed not to know of superior prior

21    rights or infringing uses that could materially affect the recipient's use of the such

22    trademarks.

23        44.   Plaintiff believes and on information and belief alleges, the GGF

24    Franchise Agreement permits GGF to require franchisees to change the trademark

25    at any time.  GGF was aware of senior trademark rights of third parties such as

26    Plaintiff, and positioned itself in its Franchise Agreement to make franchisees

27    change the marks in such event.

28

\\SQL1\ProLaw\Documents\KLE\19822-2\2384787.docx

Lewitt, Hackman, Shapiro, Marshall & Harlan
A Law Corporation

45.   A claim by GGF that its conduct was inadvertent must fail because GGF, a franchisor backed by a large and experienced franchise company, that registered to offer and sell franchise investments in California, owes its prospective franchise investors and owes a duty to the California Department of Financial Protection and Innovation (formerly Department of Business Oversight) to investigate and know Plaintiff's superior rights to the trademark.

46.   Under the rule of decision in the Ninth Circuit, in such decisions as *Stone Creek , Inc. v. Omnia Italian Design, Inc.,* 875 F.3d 426 (9th Cir. 2017), GGF may not claim good faith remote use.  There is no good faith if the junior user had knowledge of the senior user's prior use.

47.   Based on the above, Plaintiff believes, and on information and belief alleges GGF undertook these actions with the intent of fencing in Plaintiff and confusing consumers, to trade on and receive the benefit of the goodwill built up by Plaintiff and its predecessor in the trademark *The Great Greek* at great labor and expense over many years.  GGF seeks to compete unfairly with Plaintiff by saturating California and elsewhere with franchised locations bearing the same or similar name and mark, including GFF's use of *Great Greek* in advertising and branding, and selling the same kind of foods and services as Plaintiff's restaurant, making it harder and costlier for Plaintiff to compete, and/or confuse the public to believe mistakenly that Plaintiff's restaurant is part of GGF's chain.

## VI.    GGF'S INFRINGEMENTS HARM PLAINTIFF AND THE PUBLIC

48.   GGF's use of the infringing marks *Great Greek* and *The Great Greek Mediterranean Grill* is likely to confuse, has confused and is likely to continue confusing customers and the public as to affiliation, connection or association between Plaintiff and GGF, and/or as to the origin, sponsorship, quality and approval of goods and services sold under Plaintiff's trademark.  Customers and the public in this District and elsewhere have been deceived and confused and are likely to believe GGF authorizes, sponsors or controls Plaintiff, that Plaintiff is a

franchisee of GGF, or GGF is affiliated, connected or associated with Plaintiff and/or vice versa.

49. GGF's use of *Great Greek* and *The Great Greek Mediterranean Grill* falsely designates the origin of Plaintiff's goods and services as being affiliated, connected, associated, controlled or franchised by GGF, and/or of deviating from GGF's quality and falsely and misleadingly describes and represents material facts to the public with respect to GGF's trademark rights and actual knowledge of Plaintiff's superior rights to *The Great Greek*.

50. GGF makes materially false statements about its trademark rights in its FDD that GGF registered in California and actively presents to potential investors in California, Colorado, Florida, Michigan, Nevada, Ohio, Texas and elsewhere. It is false and/or deceptive to misrepresent that there are no superior rights that could impact the franchise investor's use of the trademarks.

51. GGF is misrepresenting trademark facts to the State of California Department of Financial Protection and Innovation and obtaining registration from such agency based on such misrepresentations.

52. GGF's use of *Great Greek* and *The Great Greek Mediterranean Grill* enables GGF to trade on and receive the benefit of goodwill Plaintiff's *The Great Greek* mark, which Plaintiff and its predecessor-in-interest built up at great labor and expense over many years.

53. Positive experience with Plaintiff is being and will be improperly and confusedly attributed to GGF. That is unfair benefit to GGF from what Plaintiff has accomplished. Negative experience with GGF is being and will be confusedly attributed to Plaintiff. That is harm and damage to Plaintiff. Aside from positive or negative experience, differences in operation are causing and will confuse customers of *both* companies, as to who is who, and which is which. That is damaging to Plaintiff and is unfair to the customers. It makes it more costly and difficult for customers to know and understand who they are dealing with.

Lewitt, Hackman, Shapiro, Marshall & Harlan
A Law Corporation

\\SQL1\ProLaw\Documents\KLE\19822-2\2384787.docx

54.   GGF is larger than Plaintiff.  GGF's actions constitute and threaten immediate reverse confusion.

55.   GGF's use of *Great Greek* and *The Great Greek Mediterranean Grill* unjustly enriches GGF at Plaintiff's expense.  It prevents Plaintiff from controlling the nature and quality of goods and services under *The Great Greek* brand and places the valuable reputation and goodwill of Plaintiff in GGF's hands, over whom Plaintiff has no control.

56.   GGF's activities caused, are causing and/or are immediately about to cause irreparable injury to Plaintiff and to the public, and unless restrained and enjoined by this Court, will cause irreparable injury to Plaintiff and to the public.  There is no adequate remedy at law for this injury.

57.   Plaintiff prays and requests that GGF be enjoined from infringing Plaintiff's trademark and that GGF's trademark registrations for *Great Greek* and *The Great Greek Mediterranean Grill* be cancelled.

58.   The Claims in this Complaint are pled both additionally and in the alternative and not as elections of one or more claims to the exclusions of others.

## VII.   **FIRST CLAIM FOR RELIEF**

## **(FOR TRADEMARK INFRINGEMENT (15 U.S.C. § 1125(a)) BY PLAINTIFF AGAINST ALL DEFENDANTS)**

59.   Plaintiff realleges and incorporates by reference each allegation in the above paragraphs.

60.   Plaintiff is the owner of valid common law rights to the trademark *The Great Greek*.

61.   Defendants' activities are likely to cause confusion, mistake, or deception by or in the public as to affiliation, connection, association, origin, sponsorship, or approval of the infringing products and services to the detriment of Plaintiff and its trademark, franchisees of GGF and the public.  By the above acts, Defendants are actively, knowingly and intentionally infringing Plaintiff's

Lewitt, Hackman, Shapiro, Marshall & Harlan
A Law Corporation

\\SQL1\ProLaw\Documents\KLE\19822-2\2384787.docx

1  trademark by unlawfully using and appropriating the trademark and confusing the

2  public in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

3      62.   Defendants' acts of infringement have been and continue to be

4  deliberate, willful and wanton, making this an exceptional case within the meaning

5  of 15 U.S.C. § 1117 and other applicable law.  Pursuant to this section, Plaintiff is

6  entitled to recover attorneys' fees.

7      63.   Defendants' trademark infringements are irreparably harming and

8  continue to harm Plaintiff.  Plaintiff has no adequate remedy at law for the harm

9  caused by Defendants unless Defendants are enjoined from their infringing and

10  improper conduct.  Plaintiff should be awarded injunctive relief, temporary,

11  preliminary and permanent, prohibitory and mandatory, preventing, stopping and

12  mandating the cessation of advertising, marketing, promoting, supplying,

13  distributing, franchising, offering for sale or selling any products or services which

14  bear the *Great Greek* mark, *The Great Greek Mediterranean Grill* mark, or other

15  similar or confusingly similar names, indicia and/or trademarks by Defendants and

16  all persons in concert with them.

17      64.   Defendants should be enjoined from offering and selling franchise

18  investments for businesses which bear the infringing *Great Greek* and *The Great*

19  *Greek Mediterranean Grill* marks, from registering to offer and sell franchise

20  investments based on the infringing marks, from inducing franchisees and others to

21  use the infringing marks, and ordered at Defendants' expense to have licensees stop

22  using the infringing marks.

### VIII.  SECOND CLAIM FOR RELIEF

### (FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a)) BY PLAINTIFF AGAINST ALL DEFENDANTS)

26      65.   Plaintiff realleges and incorporates by reference each allegation in the

27  above paragraphs.

28

Lewitt, Hackman, Shapiro, Marshall & Harlan
A Law Corporation

66.   Plaintiff is the owner of valid common law rights to the trademark *The Great Greek*.

67.   Defendants' infringement of Plaintiff's *The Great Greek* trademark is likely to cause and is causing mistake and confusion and deception as to whether some affiliation, connection, or association exists between Plaintiff and Defendants, whether Plaintiff's restaurant originated from Defendants, or is sponsored or approved of by Defendants in violation of 15 U.S.C. § 1125(a).

68.   Defendants profited and will profit substantially from their unlawful actions and have been unjustly enriched to the detriment of Plaintiff.  Defendants' activities are irreparably harming and continue to harm Plaintiff.  Plaintiff has no adequate remedy at law for the harm caused by Defendant.

69.   Defendants' intentional and willful conduct caused, and will continue to cause Plaintiff irreparable harm unless enjoined, and Plaintiff has no adequate remedy at law unless Defendants are temporarily, preliminarily and permanently enjoined from their infringing and improper conduct.

## IX.    <u>THIRD CLAIM FOR RELIEF</u>

## (CANCELLATION OF FEDERAL REGISTRATIONS (15 U.S.C. § 1119) BY PLAINTIFF AGAINST ALL DEFENDANTS)

70.   Plaintiff realleges and incorporates by reference each allegation in the above paragraphs.

71.   Plaintiffs are informed and believe that Defendants made false statements to the PTO when GGF applied to register *The Great Greek Mediterranean Grill* and *Great Greek* trademarks, and Defendants knew or should have known about Plaintiff's senior use of *The Great Greek* mark for its foods and restaurant services.  On submission of each trademark application to the PTO, Defendants made this verified statement: "To the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near

Lewitt, Hackman, Shapiro, Marshall & Harlan
A Law Corporation

Lewitt, Hackman, Shapiro, Marshall & Harlan
A Law Corporation

1    resemblance as to be likely, when used on or in connection with the goods/services

2    of such other persons, to cause confusion or mistake, or to deceive."

3        72.   Defendants knew or should have known the above statement asserted

4    rights in *The Great Greek Mediterranean Grill* and *Great Greek* trademarks to the

5    exclusion of all other users in the United States, and disclaimed knowledge of other

6    rights and uses of the marks or similar marks, such as Plaintiff's use of *The Great*

7    *Greek*.  Defendants knew or should have known each verified statement was false,

8    and was made with intent to deceive the PTO so it would issue registrations.  The

9    PTO acted in reliance on these false verified statements in issuing registrations to

10   Defendants.

11       73.   Because Defendants procured registrations by misrepresentation and/or

12   fraud, the registrations must be cancelled.  The Court should order Registrations

13   5,298,597; 6,110,408; 6,110,409; 6,110,410; and 6,110,411 (*The Great Greek*

14   *Mediterranean Grill*) and 5,964,545 (*Great Greek*) to be cancelled and, pursuant to

15   regulations, should address its certified order to the USPTO, Office of the Solicitor,

16   Mail Stop 8, Director of the PTO, P.O. Box 1450, Alexandria, Virginia 22313-

17   1450.

## X.    FOURTH CLAIM FOR RELIEF

### (FOR TRADEMARK INFRINGEMENT UNDER CAL. BUS. & PROF. CODE § 14335 AND COMMON LAW BY PLAINTIFF AGAINST ALL DEFENDANTS)

22       74.   Plaintiff realleges and incorporates by reference each allegation in the

23   above paragraphs.

24       75.   Plaintiff is the owner of valid common law rights to the trademark *The*

25   *Great Greek.*

26       76.   Defendants' activities are likely to cause confusion, mistake, or

27   deception by or in the public as to the affiliation, connection, association, origin,

28   sponsorship, or approval of the infringing products and services to the detriment of

Lewitt, Hackman, Shapiro, Marshall & Harlan
A Law Corporation

Plaintiff and its trademark.  Defendants are actively, knowingly and intentionally infringing Plaintiff's *The Great Greek* trademark by unlawfully appropriating Plaintiff's trademark in violation of the common law of the State of California.

77.   Defendants are actively, knowingly and intentionally infringing Plaintiff's trademark by unlawfully misappropriating the trademarks in violation of California's Trademark Law, Bus. & Profs. Code §§ 14200 *et seq.* and common law.

78.   Defendants profited and will profit substantially from their unlawful actions and have been unjustly enriched to the detriment of Plaintiff.  Defendants' activities are irreparably harming and continue to harm Plaintiff.  Plaintiff has no adequate remedy at law for the harm caused by Defendant.

79.   Defendants' intentional and willful conduct caused, and will continue to cause Plaintiff and the public irreparable harm unless enjoined.  Plaintiff has no adequate remedy at law.  Plaintiff should be awarded injunctive relief, temporary, preliminary and permanent, prohibitory and mandatory, preventing, stopping and mandating the cessation of advertising, marketing, promoting, supplying, distributing, offering for sale or selling any products or services which bear *The Great Greek Mediterranean Grill* mark, the *Great Greek* mark, or any other similar or confusingly similar names, indicia and/or trademarks by Defendants and all persons in concert with them.

80.   Defendants' actions have been committed willfully, maliciously, and intentionally, Plaintiff is entitled to recover up to treble the amount of Defendants' unlawful profits and Plaintiff's damages pursuant to California Business & Professions Code § 14340.

/ / /

/ / /

/ / /

/ / /

\\SQL1\ProLaw\Documents\KLE\19822-2\2384787.docx

## XI.    FIFTH CLAIM FOR RELIEF

## (FOR UNFAIR BUSINESS PRACTICES (Cal. Bus. & Prof. Code § 17200) BY PLAINTIFF AGAINST ALL DEFENDANTS)

81.    Plaintiff realleges and incorporates by reference each allegation in the above paragraphs.

82.    Defendants are engaged in fraudulent, unlawful and unfair acts and practices under California Business and Profession Code § 17200 and common law.

83.    Defendants are engaged in fraudulent practices by infringing Plaintiff's trademark and by making false statements in an offering prospectus that GGF is unaware of senior rights or infringing uses of its trademarks.  Defendants knew or should have known from even a cursory Google search of "great greek" or further investigation that Plaintiff's predecessor-in-interest held senior rights to the mark *The Great Greek*.  Defendants filed federal trademark registration applications and registered in California to offer and sell franchise investments containing materially false statements.

84.    Defendants' practices are unlawful.  Franchising is a heavily regulated form of investment, nationwide and in California.  GGF as a franchisor is required by a rule of the Federal Trade Commission and under the California Franchise Investment Law, to disclose in the FDD the nature of the franchise investment.  GGF is required to register the investment offering and timely provide the FDD to prospective franchisees, which is an offering prospectus.  FDD Item 13 requires GGF to disclose whether GGF knows of superior prior rights or infringing uses that could materially affect the franchisee's use of the principal trademarks in the state where the franchised business will be located.  16 C.F.R. § 436.5(m)(9).  Defendants' FDD Item 13 made materially false statements to investors denying awareness of superior rights.

85.    Defendants' practices are unfair because they intend to sell franchises in California bearing the infringing mark *The Great Greek Mediterranean Grill* and

Lewitt, Hackman, Shapiro, Marshall & Harlan
A Law Corporation

\\SQL1\ProLaw\Documents\KLE\19822-2\2384787.docx

Lewitt, Hackman, Shapiro, Marshall & Harian
A Law Corporation

use of *Great Greek* to advertise its franchised restaurants.  This has the effect of an antitrust violation because its purpose is to infiltrate the market where Plaintiff's enjoys common law trademark rights, and cause confusion among consumers as to whether Plaintiff's restaurant is part of Defendants' chain of Greek food restaurants, to divert business from Plaintiff and making it most costly for Plaintiff to compete.

86.    Defendants violated and are violating California Business & Professions Code Section 17200 *et seq*. and common law by engaging in fraudulent, unlawful and unfair business practices that injure and damage Plaintiff and mislead the public, customers, prospective franchisees and others.

87.    Defendants' fraudulent, unlawful and unfair practices are intended to cause, caused, and are likely to continue to cause confusion, mistake and deception among the general consuming public and the trade as to whether services bearing *The Great Greek Mediterranean Grill* and *Great Greek* marks originate from, or are affiliated with, sponsored or endorsed by Plaintiff, and whether Plaintiff's restaurant originated from Defendants, or is sponsored or approved by Defendants.

88.    Defendants profited and will profit substantially, and have been, are being and threaten to continue to be unjustly enriched, from their fraudulent, unlawful and unfair actions and have been unjustly enriched to the detriment of Plaintiff, in amounts to be proven at trial.  Defendants should be ordered to disgorge and restore unjust enrichment to Plaintiff.

89.    Defendants and all persons in concert with Defendants, including but not limited to franchisees, should be enjoined from these unlawful, unfair, fraudulent business practices both mandatorily and prohibitorily, also including affirmative corrective and curative action and preventive action to prevent and avoid franchisees infringing Plaintiff's trademarks.

## XII.    PRAYER FOR RELIEF

Plaintiff prays for judgment against Defendants and franchisees and all other persons in concert with them and each and all of them as follows:

\\SQL1\ProLaw\Documents\KLE\19822-2\2384787.docx

1      1.     For injunctive relief, temporary, preliminary and permanent, prohibitory and mandatory, preventing, stopping and mandating the cessation of advertising, marketing, promoting, supplying, distributing, franchising, offering for sale or selling any products or services which bear *The Great Greek Mediterranean Grill* mark, the *Great Greek* mark, or any other similar or confusingly similar names, indicia and/or trademarks by Defendants and all persons in concert with them.

2.     For injunctive relief, temporary, preliminary and permanent, prohibitory and mandatory enjoining Defendants from offering and selling franchise investments for businesses which bear the infringing Great Greek and The Great Greek Mediterranean Grill marks, from registering to offer and sell franchise investments based on the infringing marks, from inducing franchisees and others to use the infringing marks, and ordered at Defendants' expense to have licensees stop using the infringing marks.

3.     For injunctive relief, temporary, preliminary and permanent, prohibitory and mandatory enjoining them from committing unlawful, unfair, fraudulent business practices, also including affirmative corrective and curative action and preventive action to prevent and avoid franchisees infringing Plaintiff's trademarks.

4.     For an Order that Registrations 5,964,545 (*Great Greek*) and 5,298,597; 6,110,411; 6,110,410; 6,110,409; 6,110,408 and (*The Great Greek Mediterranean Grill*) shall be cancelled and address a certified order to the USPTO, Office of the Solicitor, Mail Stop 8, Director of the United States Patent and Trademark Office, P.O. Box 1450, Alexandria, Virginia 22313-1450.

5.     For an Order that Defendants, within thirty (30) days after service of the Court's judgment, be required to file with this Court and serve upon Plaintiff's counsel a written report under oath setting forth in detail the manner in which Defendants complied with the judgment;

6.     Plaintiff does not at this time pray for recovery of damages or

Lewitt, Hackman, Shapiro, Marshall & Harlan
A Law Corporation

disgorgement of unjust enrichment; but neither does Plaintiff waive such remedy or concede that no such damages or unjust enrichment has occurred; the absence of prayer for such relief is not an admission and Plaintiff contends there has been monetary damage and unjust enrichment and Plaintiff reserves the right depending on further information as may be learned or discovered, to seek leave of court to amend the Complaint to pray for such monetary relief.

       7.     For an award of Plaintiff's costs and reasonable attorneys' fees incurred in connection with this action, as allowed by law and according to proof; and

       8.     For such additional other relief as this Court deems just and proper.

Date: October 23, 2020        LEWITT, HACKMAN, SHAPIRO, MARSHALL & HARLAN

By: */s/David Gurnick*
_____
David Gurnick/Matthew J. Soroky
Attorneys for Plaintiff D & D Greek
Restaurant, Inc., d/b/a/The Great Greek

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all claims so triable.

Date: October 23, 2020        LEWITT, HACKMAN, SHAPIRO, MARSHALL & HARLAN

By: */s/David Gurnick*
_____
David Gurnick/Matthew J. Soroky
Attorneys for Plaintiff D & D Greek
Restaurant, Inc., d/b/a/The Great Greek

Lewitt, Hackman, Shapiro, Marshall & Harlan
A Law Corporation

COMPLAINT

\\SQL1\ProLaw\Documents\KLE\19822-2\2384787.docx