B. Scott Eidson (*Pro Hac Vice* – MO 057757)
scott.eidson@stinson.com
Julie C. Scheipeter (*Pro Hac Vice* – MO 65978)
julie.scheipeter@stinson.com
**STINSON LLP**
7700 Forsyth Blvd
Suite 1100
St. Louis, Missouri 63105
Telephone:   314.863.0800
Facsimile:    314.863.9388

Javier Torres (217538)
javier.torres@stinson.com
**STINSON LLP**
1850 North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4584
Tel: (602) 279-1600
Fax: (602) 240-6925

Christopher P. Leyel (161755)
cleyel@yokasmith.com
**YOKA & SMITH, LLP**
445 South Figueroa Street, 38th Floor
Los Angeles, CA 90071
Tel: (213) 427-2300
Fax: (213) 427-2330

*Attorneys for Defendants Great Greek Franchising, LLC*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| D & D Greek Restaurant, Inc., d/b/a The Great Greek, a California corporation, <br><br> Plaintiff, <br><br> v. <br><br> Great Greek Franchising, LLC, a Florida limited liability company and DOES 1 through 10, <br><br> Defendants. | Case No. 2:20-cv-09770-MWF-SK <br><br> **DEFENDANT GREAT GREEK FRANCHISING, LLC'S MEMORANDUM OF LAW IN SUPPORT FOR PARTIAL SUMMARY JUDGMENT** <br><br> Date filed:   October 23, 2020 <br> FAC filed:   February 11, 2021 <br> SAC filed:   June 7, 2021 <br> Counter-claim filed:  March 4, 2021 <br> Judge:   Hon. Michael W. Fitzgerald <br><br> Hrng Date:  March 21, 2022 <br> Time:   10:00a.m. <br> Courtroom: 5A |

1

# TABLE OF CONTENTS

**Page**

I.  Introduction ..................................................................................................... 1

II.  Factual Background ........................................................................................ 2

    A.  D&D and the Sherman Oaks Restaurant. .............................................. 2

    B.  GGF and The Great Greek Mediterranean Grill. ................................. 3

III.  Legal Standard ............................................................................................... 4

IV.  Argument ....................................................................................................... 5

    A.  No Reasonable Jury Could Find D&D Has Legally Sufficient Market Penetration to Establish Enforceable Common Law Trademark Rights Beyond Los Angeles County. ............................... 5

        1.  Sales Were Flat Throughout the Relevant Years. ...................... 8

        2.  D&D Has No Actual Versus Potential Purchasers Evidence That Could Support Nationwide Market Penetration. ................................................................................ 8

        3.  The Sherman Oaks Restaurant Had Only Haphazard, Unintentional, and Largely Local Advertising During the Relevant Time Period. ........................................................ 9

    B.  Because D&D Cannot Establish Market Penetration Outside an Area of California, There Can be no Likelihood of Confusion and Thus no Infringement Because no GGF Franchisees are Operating in California. ........................................... 13

    C.  GGF is Entitled to Summary Judgment on Count III for Cancellation of GGF's Federal Trademark Registrations. ................ 14

    D.  GGF Is Entitled to Summary Judgment on Count IV for Infringement Under Cal. Bus. & Prof. Code §14200 Because D&D Lacks a California Trademark. ................................................ 17

    E.  D&D Cannot Establish the Damages It Seeks. ................................... 18

        1.  D&D Cannot Establish Direct Causation Between its

i

Alleged Harm and GGF's Accused Actions, and its Quantitative Measures of Damage Are Speculative.................18

2.    GGF's Profits are Not Recoverable Under the Lanham Act as a Matter of Law. ...........................................21

3.    D&D is Not Entitled to a Reasonable Royalty Under the Lanham Act as a Matter of Law. .......................................22

4.    D&D Cannot Recover Damages for its Unfair Competition Claim Under the California Business & Professional Code or Under the Common Law........................23

5.    D&D is Not Entitled to Damages Based on Conduct or Revenue of GGF's Franchisees or Prior to GGF's Existence.......................................................................24

V.    Conclusion.................................................................................25

DEFENDANT GREAT GREEK FRANCHISING, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT
CASE NO.  2:20-CV-09770-MWF-SK

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*ACCU Pers., Inc. v. AccuStaff, Inc.*,
   846 F. Supp. 1191 (D. Del. 1994) ........................................................ 12

*Adray v. Adry-Mart, Inc.*,
   76 F.3d 984 (9th Cir. 1996) ..................................................................... 5

*Am. Automobile Assoc. of N. Cal., Nev., & Utah v. Gen. Motors LLC*,
   367 F. Supp. 3d 1072 (N.D. Cal. 2019) ............................................... 18

*Blau v. YMI Jeanswear, Inc.*,
   No. CV 02-09551 ....................................................... 19, 21, 23, 24

*In re Bose Corp.*,
   580 F.3d 1240 (Fed. Cir. 2009) ............................................................ 16

*Brennan's, Inc. v. Brennan's Rest., L.L.C.*,
   360 F.3d 125 (2d Cir. 2004) .................................................................. 7

*C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*,
   213 F.3d 474 (9th Cir. 2000) .................................................................. 5

*Color Me Mine Enters., Inc. v. S. States Marketing Inc.*,
   No. CV 12-00860-RGK, 2013 WL 12119715 (C.D. Cal. April 25,
   2013) .............................................................................................. 19, 23, 25

*Coomes v. Edmonds Sch. Dist. No. 15*,
   816 F.3d 1255 (9th Cir. 2016) ............................................................... 5

*Credit One Corp. v. Credit One Fin., Inc.*,
   661 F. Supp. 2d 1134 (C.D. Cal. 2009) ........................................... 5, 13

*Dream Marriage Grp. Inc. v. Anastasia Int'l, Inc.*,
   No. CV 10-5034 .................................................................................... 17

*eCash*, 210 F. Supp at 1149 ...................................................................... 16

*Echo Drain v. Newsted*,
   307 F. Supp. 2d 1116 (C.D. Cal. 2003) ........................................... 10, 14

*Entrepreneur Media, Inc. v. Smith*,
  279 F.3d 1135 (9th Cir. 2002)..................................................................................23

*FaceGym, Ltd. v. Skin Gym Inc.*,
  2020 WL 12028894 (C.D. Cal. Aug. 27, 2020)................................................10

*Fed. Agric. Mort. Corp. v. It's a Jungle Out There, Inc.*,
  No. C 03-3721 VRW, 2005 WL 3325051 (N.D. Cal. Dec. 7, 2005).................21

*Fishman Transducers, Inc. v. Paul*,
  684 F.3d 187 (1st Cir. 2012) ......................................................................24

*Glow Indus., Inc. v. Lopez*,
  252 F. Supp. 2d 962 (C.D. Cal. 2002).....................................................7, 10, 12

*God's Era v. New Era Cap Co., Inc.*,
  No. 1:18-CV-11065-IT, 2020 WL 1536646 (D. Mass. Mar. 31,
  2020) ......................................................................................10, 13, 14

*Hana Fin., Inc. v. Hana Bank*,
  500 F. Supp. 2d 1228 (C.D. Cal. 2007)............................................................15

*Hanginout, Inc. v. Google, Inc.*,
  54 F. Supp. 3d 1109 (S.D. Cal. 2014) .................................................................9

*Kim v. Ferry*,
  No. CV0805433GAFMANX, 2009 WL 10671425 (C.D. Cal. Feb.
  18, 2009).......................................................................................................17

*Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*,
  No. C 07-03752 JSW, 2008 U.S. Dist. LEXIS 87625 (N.D. Cal.
  Oct. 16, 2008) ...............................................................................................16

*Lindy Pen Co. v. Bic Pen Corp.*,
  982 F.2d 1400 (9th Cir. 1993).............................................................................18

*Marketquest Grp. Inc. v. BIC Corp.*,
  316 F. Supp. 3d 1234 (S.D. Cal. 2018) ............................................................16

*Miller v. Am. Fam. Mut. Ins. Co.*,
  No. CV-09-1954-PHX-FJM, 2010 WL 2926051 (D. Ariz. July 23,
  2010).............................................................................................................20, 25

iv

*Money Store v. Harriscorp Fin., Inc.*,
  689 F.2d 666 (7th Cir. 1982) ............................................................... 16

*Natural Footwear, Ltd. v. Hart, Schaffner & Marx*,
  760 F.2d 1383 (3d Cir. 1985) ............................................................ 5, 8

*Novadaq Techs., Inc. v. Karl Storz GmbH & Co. K.G.*,
  No. 14-CV-04853, 2015 WL 9028123 (N.D. Cal. Dec. 16, 2015) .................... 22

*Optimal Pets, Inc. v. Nutri-Vet, LLC*,
  877 F. Supp. 2d 953 (C.D. Cal. 2012) ................................................ 5, 8, 9, 10

*Optimal Pets Inc. v. Nutri-Vet, LLC*,
  977 F. Supp. 2d 953 (C.D. Cal. 2012) ................................................... 8

*Pac. Packaging Concepts, Inc. v. Nutrisystem, Inc.*,
  No. 2:19-cv-04755-ODW (Ex), 2021 WL 3130041 (C.D. Cal. July
  23, 2021) ..................................................................................... 22, 23

*Parks LLC v. Tyson Foods, Inc.*,
  863 F.3d 220 (3d Cir. 2017) ............................................................... 8

*Perfect 10, Inc. v. Visa Int'l Serv., Assoc.*,
  494 F.3d 788 (9th Cir. 2007) .............................................................. 20

*Quia Corp. v. Mattel, Inc.*,
  No. C 10-1902 JF (HRL), 2011 WL 2749576 (N.D. Cal. July 14,
  2011) ........................................................................................ 21, 23

*Roseville Fullerton Burton Holdings, LLC v. SoCal Wheels, Inc.*,
  No. SACV141954JLSJCGX, 2016 WL 6159014 (C.D. Cal. May
  20, 2016) ..................................................................................... 17

*Sansi N. Am., LLC v. LG Elec. USA, Inc.*,
  No. CV 18-3541 PSG, 2019 WL 8168069 (C.D. Cal. Nov. 14,
  2019) .................................................................................... 18, 20, 21

*Sengoku Works Ltd. v. RMC Int'l, Ltd.*,
  96 F.3d 1217 (9th Cir.) ..................................................................... 6

*Spin Master, LTD. v. Zobmondo Entm't, LLC*,
  778 F. Supp. 2d 1052 (C.D. Cal. 2011) .................................................. 15

v

*Tana v. Dantanna's*,
611 F.3d 767 (11th Cir. 2010) ................................................................ 6, 11

*Visible Sys. Corp. v. Unisys Corp.*,
551 F.3d 65 (1st Cir. 2008) .......................................................................... 21

*Zox LLC v. John Zox*,
No. CV 21-1609 PA (SKX), 2022 WL 423392 (C.D. Cal. Jan. 11,
2022) ........................................................................................................... 15

**Statutes**

Cal. Bus. & Prof. Code §14200 ...................................................................... 17

Cal. Bus. & Prof. Code § 14245(a)(1) ........................................................... 17

Cal. Bus. & Prof. Code § 17200 ............................................................... 23, 24

Lanham Act ......................................................... 13, 16, 18, 21, 22, 23

**Other Authorities**

Federal Rule of Civil Procedure 56 ............................................................... 1, 4

5 *McCarthy* § 26:30.50 ..................................................................................... 10

DEFENDANT GREAT GREEK FRANCHISING, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:20-CV-09770-MWF-SK

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

Pursuant to Federal Rule of Civil Procedure 56, Defendant Great Greek Franchising, LLC ("GGF") moves the Court for an Order granting partial summary judgment on Counts I, II, III, IV, and V.

## I.   Introduction

In 1984, a small Sherman Oaks white tablecloth restaurant began serving customers using the name THE GREAT GREEK. The restaurant never expanded, never franchised, never filed for trademark protection on its name, never policed the use of its name, never sold food from any other location, and never directed meaningful advertising outside an area of Los Angeles County. Now, the new owner of that restaurant claims nationwide—and even worldwide—common law rights for the name THE GREAT GREEK largely based on passive uses of the internet. At base, the new owner, D&D Greek Restaurant, Inc. ("D&D"), premises its assertions of nationwide market penetration on enthusiasm for its own restaurant—not substantive evidence recognized by the courts in this Circuit.

Unfazed by its inability to establish nationwide market penetration as a matter of law, D&D proceeds to claim damages from a franchisor, Great Greek Franchising, LLC ("GGF"), which has no franchisees of its fast casual concept operating in the State of California. For its part, GGF has expanded nationwide and obtained federal trademark registrations for THE GREAT GREEK MEDITERRANEAN GRILL and related marks—all without knowledge of the Sherman Oaks restaurant during the relevant times. D&D's claims of fraud on the USPTO fail for this reason. D&D's claims of damage are also flawed. It seeks damages from GGF based on (1) the revenue earned by third party franchisees or (2) a reasonable royalty when there is no evidence the Sherman Oaks restaurant ever licensed its name. As a matter of law, these measures of damage are not applicable to the situation here.

This is an unfortunate position for the new owners of the Sherman Oaks restaurant. D&D improperly focuses its blame on GGF, but this a situation for which the current owners, and prior owners, bear some responsibility. The owners of the Sherman Oaks restaurant slept on their rights and failed to expand or meaningfully advertise for 35+ years. Now, D&D seeks to use the tool of litigation to obtain rights in geographies others have fairly established and that the law does not allow it to claim. The Court should refuse these efforts and grant summary judgment in GGF's favor on Counts I, II, III, IV, and V and D&D's damages remedies.

## II.     Factual Background

### A.     D&D and the Sherman Oaks Restaurant.

D&D owns and operates a single-location restaurant under the name "The Great Greek" (the "Sherman Oaks restaurant") on Ventura Boulevard in Sherman Oaks, California. Def. Great Greek Franchising, LLC's Statement of Uncontroverted Facts ("SUF") ¶ 7. The single-location Sherman Oaks restaurant has been in business since 1984. *Id.* ¶ 8. The Sherman Oaks restaurant is a sit down, white tablecloth restaurant that offers live music, a full bar, and a wine list that includes $250/bottle Dom Perigon. *Id.* ¶¶ 10, 11. At no time prior to the filing of this lawsuit have the Sherman Oaks restaurant owners made any effort to expand, franchise, or otherwise promote their restaurant outside the confines of Los Angeles County. *Id.* ¶ 12. In the Sherman Oaks restaurant's alleged 35+ years of operation, the owners never applied for state or federal trademark registrations—until they decided to file this lawsuit. *Id.* ¶ 9. As a result, D&D relies on its common law trademark rights in THE GREAT GREEK mark and asserts nationwide—and even worldwide—fame and market penetration.

The Sherman Oaks restaurant's recognition is limited to certain portions of Los Angeles County. *Id.* ¶ 18. D&D's food and beverage sales are limited to the Sherman Oaks restaurant. *Id.* ¶ 13. From 2001 to 2019, the Sherman Oaks restaurant

2

incurred merely $32,000 in total advertising related expenses (less than $1800/year on average). *Id*. ¶ 21. D&D's marketing tools for promoting the Sherman Oaks restaurant are limited to its website, its social media, the Internet, word of mouth, and customer reviews. *Id*. ¶ 20. D&D began using Google Ads and Yelp in late 2017, and its ads only show in Orange, Los Angeles, and Ventura counties. *Id*. ¶ 24. Historically, the Sherman Oaks restaurant has not directed any advertising outside of the Los Angeles area. *Id*. ¶¶ 24-26. For print promotions, the mark appears on signage at the restaurant and in some local periodicals, but this use is not consistent. *Id*. ¶ 26. D&D also relies heavily on passive advertisement, including occasional celebrity patronage and ancillary appearances in television programs. *Id*. ¶ 25.

### B.    GGF and The Great Greek Mediterranean Grill.

In 2011, Girair Goumroian opened the first The Great Greek Mediterranean Grill ("TGGMG") restaurant in Henderson, Nevada and adopted/began using THE GREAT GREEK MEDITERRANEAN GRILL in connection with the restaurant. *Id*. ¶ 2. TGGMG offers a "fast casual" dining experience. *Id*. ¶ 6. In January 2016, Neighbors Hospitality, LLC ("Neighbors") acquired TGGMG. *Id*. ¶¶ 3, 28. On April 28, 2017, Neighbors, through its attorney, filed for a service mark on the U.S. Patent and Trademark Office's ("USPTO") Supplemental Register for the mark "The Great Greek Mediterranean Grill." *Id*. ¶ 29. That mark was registered on the Supplemental Register on August 1, 2017 as Registration No. 5,298,597. *Id*.

In September 2017, UFG Group, Inc. ("UFG") and Neighbors entered into a joint venture agreement to franchise TGGMG under Great Greek Franchising, LLC ("GGF") as the franchisor. *Id*. ¶¶ 1, 4, 31. All TGGMG restaurants that are franchised from GGF are owned by separate franchisee entities who are not a party to this lawsuit. *Id*. ¶¶ 1, 35. GGF's revenue is generated through franchise fees, the markup on the sale of equipment to franchisees, and franchise royalty fees. *Id*. ¶ 5.

GGF acquired intellectual property rights in "The Great Greek Mediterranean Grill" including trademarks and goodwill dating back to the First TGGMG Store.

3

*Id.* ¶ 32. As a result, GGF applied to register the mark "Great Greek" on May 7, 2018, and sought additional logo registrations for "The Great Greek Mediterranean Grill" on May 4, 2018. *Id.* ¶ 33. These marks are now registered on the USPTO's Principal Register as Registration No. 5,298,597 (for The Great Greek Mediterranean Grill) and Registration Nos. 6,110,408, 6,110,409, 6,110,410, and 6,110,411 (for Great Greek). *Id.* The marks are used by franchisees at all TGGMG locations. *Id.* ¶ 34. When Neighbors and GGF filed their first trademark applications, they did not know about the Sherman Oaks restaurant. *Id.* ¶¶ 39-42.

GGF has expanded TGGMG restaurants throughout the United States with franchisees operating restaurants in Nevada, Colorado, Texas, Florida, Michigan, Virginia, Minnesota, South Carolina, and Ohio. *Id.* ¶ 37. No TGGMG restaurants have opened in California. *Id.* ¶ 38.

## III.    Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Ninth Circuit has defined the shifting burden of proof governing motions for summary judgment where the non-moving party—like D&D here—bears the burden of proof at trial:

> The moving party initially bears the burden of proving the absence of a genuine issue of material fact. Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case. Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial. This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence. The non-moving party must do more than show there is some "metaphysical doubt" as to the material facts at issue. In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor.

*Coomes v. Edmonds Sch. Dist. No. 15*, 816 F.3d 1255, 1259 n.2 (9th Cir. 2016) (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). "A motion for summary judgment may not be defeated [] by evidence that is 'merely colorable' or 'is not significantly probative.'" *Anderson*, 477 U.S. at 249–50. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).

## IV.    Argument

### A.    No Reasonable Jury Could Find D&D Has Legally Sufficient Market Penetration to Establish Enforceable Common Law Trademark Rights Beyond Los Angeles County.

In the absence of a federal registration, a senior trademark user must show that it has legally sufficient market penetration in the geographic areas in which it seeks to enforce its trademark rights. *Credit One Corp. v. Credit One Fin., Inc.*, 661 F. Supp. 2d 1134, 1138 (C.D. Cal. 2009); *see also Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 989 (9th Cir. 1996). The Ninth Circuit has adopted the four-factor test for market penetration set forth in the seminal case of *Natural Footwear, Ltd. v. Hart, Schaffner & Marx*, 760 F.2d 1383 (3d Cir. 1985). Specifically, in this Circuit, market penetration is assessed by: (1) the total volume of sales, (2) growth trends (both positive and negative), (3) the number of persons actually purchasing the products in relation to the potential number of customers, and (4) the amount of product advertising in the area. *Adray,* 76 F.3d at 989; *Optimal Pets, Inc. v. Nutri-Vet, LLC*, 877 F. Supp. 2d 953, 961-62 (C.D. Cal. 2012). These factors reflect the well-established principle that a "senior user cannot preempt remote geographical

markets before it actually enters them either by advertising, reputation, or actual sales." 2 McCarthy § 26:4.

Market penetration is measured at the time the junior user adopted and began using its trademark. 2 McCarthy § 26:4 (citing *ACCU Pers., Inc. v. AccuStaff, Inc.*, 846 F. Supp. 1191, 1206 (D. Del. 1994)). Here, it is undisputed GGF's predecessor in interest, Mr. Goumroian, adopted and began using THE GREAT GREEK MEDITERRANEAN GRILL in connection with his Greek fast casual restaurant in Henderson, Nevada in 2011. SUF ¶ 2. In 2017, GGF's immediate predecessor in interest, Neighbors, expanded use of the mark within Nevada and registered THE GREAT GREEK MEDITERRANEAN GRILL on the USPTO's Supplemental Register. *Id.* ¶¶ 3, 29-30. After acquiring all goodwill in the name THE GREAT GREEK MEDITERRANEAN GRILL from Neighbors', GGF registered GREAT GREEK on the USPTO's Principal Register through an application dated May 7, 2018. *Id.* ¶ 42. This federal registration has the practical effect of freezing a prior user's enforceable trademark rights thereby terminating any right to future expansion beyond the user's existing territory. *Tana v. Dantanna's*, 611 F.3d 767, 780-81 (11th Cir. 2010). GGF is thus entitled to a presumption of ownership and nationwide priority as of May 7, 2018, and the Court's analysis of D&D's market penetration must be assessed as of that date at the latest. *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir.), as modified, 97 F.3d 1460 (9th Cir. 1996).

D&D claims it is the senior user and owner of THE GREAT GREEK and seeks to enforce its common law trademark rights nationwide. At most, D&D may be able to establish market penetration in Los Angeles County, the only county in the country where D&D or its predecessor have operated a restaurant and made sales.[1] The record is completely devoid of admissible evidence that could support a

---

[1] GGF does not concede that D&D has established common law rights in THE GREAT GREEK mark in the whole of Los Angeles County, or in any geographic area beyond the immediate vicinity of its Sherman Oaks location. As explained

6

finding of legally sufficient market penetration anywhere beyond Los Angeles County, let alone across the entire United States.  Because D&D has not and cannot establish legally sufficient market penetration beyond Los Angeles County, it cannot preempt GGF's nationwide rights nor purport to establish a likelihood of confusion anywhere but Los Angeles County.  *See, e.g., Brennan's, Inc. v. Brennan's Rest., L.L.C.*, 360 F.3d 125, 132 (2d Cir. 2004) (affirming denial of injunction against NYC restaurant and noting that while the Brennan's New Orleans restaurant has almost 2 million customers, generated $84 million in revenue, and spent $4 million on advertising, there was no evidence regarding expenditures or recognition in New York City—where the restaurant claims market penetration).

> ### 1.   *D&D Has No Evidence of Sales Beyond Sherman Oaks, California.*

D&D does not, and has not sold food to customers outside the confines of its Sherman Oaks restaurant.  SUF ¶ 13.  Vicki West, who owned the restaurant up to and including May 8, 2018, testified that there was only one location of The Great Greek in Sherman Oaks.  *Id.* ¶ 8.  Likewise, there is no evidence D&D delivers food outside of Los Angeles County.  *Id.* ¶¶ 13, 15.

In fact, D&D has no evidence quantifying the volume of sales attributable to any geographic area, whether at the city, state, or other territorial level.  *Id.* ¶ 13. Even if there was *some* evidence of sales in multiple markets—which is not the case here—courts routinely hold that evidence that is not location-specific is legally insufficient to establish market penetration.  *See, e.g., Glow Indus., Inc. v. Lopez*, 252 F. Supp. 2d 962, 984-85 (C.D. Cal. 2002) (holding that plaintiff had not established market penetration anywhere, as plaintiff's physical presence in thirteen states and "general testimony regarding the company's nationwide sales" did not serve as evidence of the "volume or level of sales in any location, nor how

herein, D&D has pled only nationwide trademark rights and has offered no specific evidence as to trademark rights in any particular geographic region.

7

[plaintiff's] market penetration compares with that of its competitors"). D&D has no evidence of sales made outside of its Sherman Oaks restaurant. SUF ¶ 13. Without it, D&D cannot establish nationwide market common law trademark rights. *See Optimal Pets Inc.*, 977 F. Supp. 2d at 962 (granting judgment as a matter of law that plaintiff's sales did not support market penetration anywhere where it "had no sales at all in 34 states."); *see, e.g.*, *Parks LLC v. Tyson Foods, Inc.*, 863 F.3d 220, 237 n.24 (3d Cir. 2017) (affirming summary judgment in favor of defendant and concluding that plaintiff lacked adequate market penetration in five states where "there is no evidence of sales at all. And sales in many states outside of the northeast are extremely limited if not 'de minimis.'").

> 2. *Sales Were Flat Throughout the Relevant Years.*

The second factor in the balancing test "focuses upon the product's growth trends in the area at the time of the registration of the trademark." *See Nat. Footwear Ltd. v. Hart, Schaffner & Marx*, 760 F.2d 1383, 1401 (3d Cir. 1985). D&D has no sales that extend beyond Los Angeles County at the time of GGF's priority date, which means this factor cannot support a finding of nationwide market penetration. *See Optimal Pets, Inc.*, 877 F. Supp. 2d at 962-63 (reasoning that flat nationwide sales and downward or flat sales in all but one state cut against finding either nationwide or regional market penetration). In fact, D&D cannot point to any evidence showing positive growth in sales in any specific geographic region, and certainly not in all 50 states. Moreover, the only evidence D&D has presented—total annual sales—shows that D&D's sales were virtually flat in the years GGF applied for its federal trademark registrations. SUF ¶ 16 (indicating 2016 sales of ███████; 2017 sales of ███████; and 2018 sales of ███████).

> 3. *D&D Has No Actual Versus Potential Purchasers Evidence That Could Support Nationwide Market Penetration.*

D&D has adduced no evidence that could support the third market penetration factor—ratio of actual customers to potential customers. As D&D is claiming

8

nationwide rights, its potential customers are presumably any person old enough to purchase food in the United States. However, the number of D&D's actual customers is necessarily limited because D&D operates only one restaurant with a capacity of 119. SUF ¶ 10. Moreover, D&D has failed to present any evidence of its share of the entire U.S. restaurant market. It has no evidence that could establish a meaningful market share even within the zip code where its restaurant is located. Without this evidence, this factor weighs against D&D. *Hanginout, Inc. v. Google, Inc.*, 54 F. Supp. 3d 1109, 1123–24 (S.D. Cal. 2014) (finding that app company's failure to present evidence regarding its market share or any information regarding potential customers weighed against finding the app company had sufficient market penetration for injunctive relief). Accordingly, this factor cannot support D&D's claims of national market penetration. *See Optimal Pets, Inc.*, 877 F. Supp. 2d at 963 ("OPI did not even present evidence that would establish a meaningful market share in the two zip codes in which it had its best sales results.").

### 4. The Sherman Oaks Restaurant Had Only Haphazard, Unintentional, and Largely Local Advertising During the Relevant Time Period.

During the eighteen-year period from 2001 to 2019, the Sherman Oaks restaurant incurred merely $32,000 in total advertising related expenses. SUF ¶ 21. In the year leading up to GGF's priority date, 2017, the restaurant spent only ███████ on advertising. *Id.* ¶ 22. In 2018, the total advertising spend was a mere ███████. *Id.* Not only are these amounts *de minimis*, most of the advertising cost consists of amounts spent on Google analytics for Google Ads to local viewers and charitable donations to LA-based organizations. D&D's monthly Google Ads payment ranged from ████ to ████. *Id.* D&D's Google Ads were primarily viewed by individuals in Los Angeles, Van Nuys, and Long Beach areas. *Id.* ¶ 24. Other advertising was also local, such as monetary donations ranging from $20 to $70 to schools' festivals and silent auctions, community and charitable

DEFENDANT GREAT GREEK FRANCHISING, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:20-CV-09770-MWF-SK

organizations, and churches in Sherman Oaks, Valley Village, and the surrounding areas of Los Angeles. *Id.* ¶ 27. Additionally, the Sherman Oaks restaurant spent around $250 to $500 for sponsorships of local Greek festivals in the Los Angeles and Northridge areas. *Id.*

The fact that the Sherman Oaks restaurant has maintained a website—a fact common to nearly every business—should be given little weight as "[k]nowledge among persons in the territories in issue must be proven by evidence, not assumed just because the Internet is national and global . . . . The internet (or cyberspace) is not a 'territory.'" 5 *McCarthy* § 26:30.50. Internet presence is ubiquitous in the twenty-first century and "[b]ecause of the lack of boundaries on the Internet, it is difficult to attribute general advertising on a website to market penetration without corresponding geographic data like sales or page views." *FaceGym, Ltd. v. Skin Gym Inc.*, 2020 WL 12028894, at *3 (C.D. Cal. Aug. 27, 2020); *see also Echo Drain v. Newsted*, 307 F. Supp. 2d 1116, 1128 (C.D. Cal. 2003) (finding on summary judgment that plaintiff did not have market penetration outside of the Dallas-Fort Worth area where plaintiff had a website but lacked evidence of access or interaction with the website by individuals outside of this area).

Likewise, evidence pertaining to news outlet publications, social media presence, celebrity patronage, or passive appearances on television programs does not establish legally sufficient market penetration in any identified market. *See, e.g.*, *God's Era v. New Era Cap Co., Inc.*, No. 1:18-CV-11065-IT, 2020 WL 1536646, at *2 (D. Mass. Mar. 31, 2020) (holding on summary judgment that plaintiff's "website, Facebook page, and Instagram page, and since January 2019, on Amazon.com" as well as advertising by "handing out flyers, placing flyers in bags . . . , staffing a vendor's booth" and promoting in-person did not establish market penetration in Miami or Los Angeles where plaintiff's common law rights were localized in the greater Boston area). Neither is the maintenance of a website coupled with nationwide sales and mentions in prominent national magazines

10

enough to establish nationwide market penetration. *See, e.g., Glow Indus., Inc.*, 252 F. Supp. 2d at 985 (holding that plaintiff's maintenance of a website, along with mentions of its Los Angeles Store and products "in a variety of national magazines, including Mademoiselle, Marie Claire, Seventeen and Redbook" and nationwide sales, was not adequate to establish legally sufficient market penetration). Even notoriety among food critics and travel writers is not sufficient to establish nationwide market penetration. *See, e.g., Tana v. Dantanna's*, 611 F.3d 767, 777 (11th Cir. 2010) (noting that while free advertising from mentions in the media "suggest some notoriety among food critics and travel writers of nationwide publications, they do not constitute record evidence of any effort by Plaintiff to 'create a conscious connection' in the nationwide public's mind between the name Dan Tana's and his restaurant.").

D&D's marketing and branding expert, Dr. Larry Chiagouris, sets forth a bare opinion that THE GREAT GREEK brand is "strong" in certain counties surrounding Los Angeles County, naming Kern, Orange, Riverside, San Bernadino, Santa Barbara, and Ventura Counties. SUF ¶ 18. This opinion is not linked to any particular data as Dr. Chiagouris did not perform a consumer survey. Nor does it differentiate between the strength of D&D's brand today and the strength of the brand as of GGF's priority date.[2] Notably, Dr. Chiagouris did not opine that D&D's market penetration extends nationwide—a tacit admission by D&D that it cannot establish nationwide rights.

In consideration of the foregoing factors, and drawing all reasonable inferences in favor of D&D, no reasonable jury could find THE GREAT GREEK

---

[2] Although GGF asserts that Dr. Chiagouris's report does not create a genuine issue of fact as to D&D's market penetration, if the Court is inclined to consider the counties identified by Dr. Chiagouris, GGF asks for an order, in the alternative, that D&D cannot, as a matter of law, establish market penetration beyond these seven counties in the State of California.

11

mark has legally sufficient market penetration to establish nationwide common law trademark rights or common law trademark rights in any geographic area beyond Los Angeles County.

The zone of natural expansion doctrine, which may support a finding of common law rights where there is no market penetration or reputation, is narrowly construed and does not provide D&D with trademark rights outside of Los Angeles County. *Glow Indus., Inc.*, 252 F. Supp. 2d at 985 (citing *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1028-29 (11th Cir. 1989)).

> [T]here are few firm guidelines to define the senior user's imaginary zone of natural expansion. However, several criteria seem relevant: (1) How great is the geographical distance from the senior user's actual location to a point on the perimeter of the zone of expansion? (2) What is the nature of the business? Does it already have a large or small zone of actual market penetration or reputation? (3) What is the history of the senior user's past expansion? Has it remained static for years, or has it continually expanded into new territories? Extrapolating prior expansion, how long would it take the senior user to reach the periphery of the expansion zone he claims? (4) Would it require an unusual 'great leap forward' for the senior user to enter the zone, or is the zone so close to existing locations that expansion would be (or is) a logical, gradual, step of the same length as those previously made?

*Id.* "The proper inquiry . . . is into what regions did plaintiff actually plan to expand at the time defendant adopted and began using its trademark." *ACCU Pers., Inc. v. AccuStaff, Inc.*, 846 F. Supp. 1191, 1209 (D. Del. 1994) (citing 2 *McCarthy* § 26.08 [1]).  It is undisputed the Sherman Oaks restaurant has remained static throughout its entire 37-year existence.  SUF ¶ 12.  It is also undisputed that at the time of GGF's priority date, May 8, 2018, the then-owner of the Sherman Oaks restaurant had no plans or intent to expand beyond the existing location.  *Id.*  While D&D has now (after filing suit) indicated a desire to expand, a mere hope of expansion, without more, is insufficient to establish a zone of natural expansion.  *See, e.g.*, *ACCU Pers., Inc.*, 846 F. Supp. at 1208-09 (quoting *Blue Ribbon Feed Co. v. Farmers Union Cent. Exchange, Inc.*, 731 F.2d 415, 422 (7th Cir. 1984)) (finding that plaintiff had no actual plans of expansion at the time of defendant's use of its mark and that "'mere

12

hope of expansion' is not enough"). It is illogical to infer that D&D would suddenly expand its brand beyond Los Angeles County, or beyond California, when it had not done so in over thirty years prior to GGF's use and registration of its marks. *See, e.g.*, *Credit One Corp.,* 661 F. Supp. 2d at 1138-39 (finding that evidence of payment from customers in other states, where plaintiff had only one physical location, did not support finding a zone of natural expansion to such other states as "the zone of natural expansion is generally defined narrowly").

**B.      Because D&D Cannot Establish Market Penetration Outside an Area of California, There Can be no Likelihood of Confusion and Thus no Infringement Because no GGF Franchisees are Operating in California.**

D&D's claims for trademark infringement under federal and state law, false designation of origin under federal law, and unfair business practices under state law (Counts I, II, IV, and V) fail as a matter of law because D&D lacks enforceable trademark rights in any market where GGF franchisees operate. For the reasons set forth in Section A above, D&D's common law trademark rights in THE GREAT GREEK mark, if any, do not extend beyond Los Angeles County. It is undisputed that no GGF franchisees operate restaurants in Los Angeles County, nor have they in the past. SUF ¶ 38. Even if the Court determines Dr. Chiagouris's unsupported opinion creates a factual dispute as to Kern, Orange, Riverside, San Bernadino, Santa Barbara, and Ventura Counties, it is also undisputed that no GGF franchisees operate in any of those markets. *Id*. On these facts, there can be no likelihood of confusion as a matter of law and the Court need not conduct a *Sleekcraft* analysis to find that there is no infringement.

For example, in *God's Era v. New Era Cap Co., Inc.*, the court granted summary judgment in favor of defendant on plaintiff's false designation of origin, unfair competition, and trademark infringement claims under the Lanham Act and common law. The court stated it need not reach the likelihood of confusion question because "Plaintiff has not established that the . . . mark was protected in the

13

geographic regions where the products bearing the Accused Mark were sold during 2017, [such that] it has not established the possibility of infringement on the part of Defendant." No. 1:18-CV-11065-IT, 2020 WL 1536646, at *4-5 (D. Mass. Mar. 31, 2020); *cf. Echo Drain*, 307 F. Supp. 2d at 1128 (C.D. Cal. 2003) (granting summary judgment on plaintiff's claims for false designation of origin, unfair competition, and trademark infringement because plaintiff's rights were limited to the Dallas-Fort Worth area and it did not have plans to do business in California, where defendant used its mark).

Accordingly, because D&D has no legally enforceable trademark rights in any market where GGF franchisees operate, GGF is entitled to summary judgment on Counts I, II, IV, and V for trademark infringement, false designation of origination, and unfair business practices under federal and state law.

### C. GGF is Entitled to Summary Judgment on Count III for Cancellation of GGF's Federal Trademark Registrations.

Count III seeks cancellation of GGF's federal trademark registrations on two grounds: (1) priority of use and a likelihood of confusion, and (2) fraud on the Trademark Office. As set forth in Sections A and B above, D&D cannot establish senior nationwide rights to THE GREAT GREEK or a likelihood of confusion. As a result, D&D also cannot establish its claim for cancellation premised upon priority of use and likelihood of confusion. With respect to fraud, D&D has failed to produce any evidence that could support its claim of fraud in the procurement of a trademark registration. A claim for fraud in the procurement of a trademark requires proof of the following elements:

(1) there was in fact another use of the same or a confusingly similar mark at the time the oath was signed; (2) the other user had legal rights superior to applicant's; (3) applicant knew that the other user had rights in the mark superior to applicant's, and either believed that a likelihood of confusion would result from applicant's use of its mark or had no reasonable basis for believing otherwise; and that (4) applicant, in

14

failing to disclose these facts to the Patent and Trademark Office, intended to procure a registration to which it was not entitled.

*Hana Fin., Inc. v. Hana Bank*, 500 F. Supp. 2d 1228, 1234 (C.D. Cal. 2007) (citing *Intellimedia Sports Inc. v. Intellimedia Corp.*, 43 USPQ2d 1203 (TTAB 1997); *see also Zox LLC v. John Zox*, No. CV 21-1609 PA (SKX), 2022 WL 423392, at *4 (C.D. Cal. Jan. 11, 2022)).  Because a charge of fraud in the procurement of a trademark registration is a disfavored defense, the party alleging fraud bears a "heavy" burden of proof.  *See Spin Master, LTD. v. Zobmondo Entm't, LLC,* 778 F. Supp. 2d 1052, 1061 (C.D. Cal. 2011).  Likewise, because the oath in a trademark application is phrased subjectively, "it is extremely difficult to prove fraud so long as the signer has an honest held good faith belief that it is the senior right holder." *Zox LLC*, 2022 WL 423392, at *4 (C.D. Cal. Jan. 11, 2022) (quoting *Woodstock's Enters. Inc. (Cal.) v. Woodstock's Enters. Inc. (Or.)*, 43 U.S.P.Q.2d 1440 (TTAB 1997)).

In this case, the federal registrations D&D seeks to cancel were procured by two different parties.  Registration No. 5,298,597 was applied for by Neighbors' on April 28, 2017.  SUF ¶ 39.  Neighbors' trademark counsel, Charles Coons, testified that he conducted a clearance search before filing the application and that search did not reveal any restaurant by the name of The Great Greek.  *Id.* ¶ 40.  Likewise, both principals of Neighbors, Nick Della Penna and Trent Jones, testified that Neighbors' learned of the Sherman Oaks restaurant after it filed its trademark application.  *Id.* ¶ 41.  There is no evidence in the record that contradicts the testimony of Mr. Coons, Mr. Della Penna, or Mr. Jones.

Registration Nos. 6,110,408, 6,110,409, 6,110,410, 6,110,411, and 5,964,545 were applied for by GGF.  Ray Titus, President of GGF, signed the applications on behalf of GGF.  SUF ¶ 42.  Mr. Titus testified that he only became aware of the Sherman Oaks restaurant after GGF filed its trademark applications.  *Id.*  There is

15

no other evidence in the record that Mr. Titus was aware of the Sherman Oaks restaurant when he signed the trademark applications.

As this Court explained in *eCash*, "[a] statement in an application or representation to the PTO may be 'false,' without being 'fraudulent.' Statements of honest, but perhaps incorrect belief or innocently made inaccurate statement of fact do not constitute 'fraud.' Fraud arises only when the party making a statement of facts knows that the fact is false." *eCash Techs., Inc. v. Guagliardo, 210 F. Supp. 2d 1138, 1149 (C.D. Cal. 2000)* (internal citations omitted); *see also Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.,* No. C 07-03752 JSW, 2008 U.S. Dist. LEXIS 87625 (N.D. Cal. Oct. 16, 2008). Plaintiff, "cannot simply rely on a charge of falsity to prove intent by clear and convincing evidence." *Marketquest Grp. Inc. v. BIC Corp.*, 316 F. Supp. 3d 1234, 1279 (S.D. Cal. 2018).

Here, there is no evidence of fraud, and D&D cannot survive summary judgment with mere speculation as to what Mr. Coons' trademark search should have revealed. Likewise, D&D cannot survive summary judgment with speculation that its restaurant would have been discovered had GGF undertaken an additional trademark clearance search when it sought to register marks related to its existing registrations for THE GREAT GREEK MEDITERRANEAN GRILL.

"Nowhere does the Lanham Act specifically mandate a preapplication search by one who seeks federal registration of a mark." *Money Store v. Harriscorp Fin., Inc.,* 689 F.2d 666 (7th Cir. 1982). Furthermore, the standard for fraud in the procurement of registration is subjective intent—not what GGF "should have known." *See In re Bose Corp.*, 580 F.3d 1240 (Fed. Cir. 2009) ("By equating "should have known" of the falsity with a subjective intent, the Board erroneously lowered the fraud standard to a simple negligence standard.").

There is no evidence that either applicant for the registrations at issue in Count III knew of the Sherman Oaks restaurant at the time the applications were filed, nor is there evidence that either applicant intended to procure a registration to which it

16

was not entitled.  Accordingly, the Court should grant GGF summary judgment on Count III for cancellation.

**D.    GGF Is Entitled to Summary Judgment on Count IV for Infringement Under Cal. Bus. & Prof. Code §14200 Because D&D Lacks a California Trademark.**

Count IV of the SAC purports to assert a claim for trademark infringement under Cal. Bus. & Prof. Code § 14200 et seq.  SUF ¶ 55.  Section 14245 prohibits the "[u]se[], without the consent of the registrant, any reproduction, counterfeit, copy, or colorable imitation of *a mark registered under this chapter* in connection with the sale, distribution, offering for sale, or advertising of goods or services on or in connection with which the use is likely to cause confusion or mistake, or to deceive as to the source of origin of the goods or services." Cal. Bus. & Prof. Code § 14245(a)(1) (emphasis added).

On October 18, 2021, GGF moved for partial judgment on the pleadings on its Counterclaim II for Cancellation of D&D's California Service Mark Registration. SUF ¶ 44.  On November 23, 2021, the Court granted GGF's motion for partial judgment on the pleadings.  *Id.* ¶ 45. In granting the motion, the Court ordered the mark be cancelled by the California Secretary of State.  *Id.*  On November 30, 2021, the California Secretary of State cancelled D&D's state trademark registration.  *Id.* ¶ 46.  Thus, D&D no longer has a mark registered pursuant to California state law as required by § 14245, and summary judgment should be granted in GGF's favor. *See Dream Marriage Grp. Inc. v. Anastasia Int'l, Inc.*, No. CV 10-5034 RSWL (FFMx), 2010 WL 4346111, at *1 (C.D. Cal. Oct. 27, 2010) (dismissing plaintiff's claim for trademark infringement under § 14245 because plaintiff failed to plead facts that it registered a trademark in California); *Roseville Fullerton Burton Holdings, LLC v. SoCal Wheels, Inc.*, No. SACV141954JLSJCGX, 2016 WL 6159014, at *10 (C.D. Cal. May 20, 2016) (same); *Kim v. Ferry*, No. CV0805433GAFMANX, 2009 WL 10671425, at *4 (C.D. Cal. Feb. 18, 2009) (same).

17

**E.    D&D Cannot Establish the Damages It Seeks.**

This Court routinely grants summary judgment on damages in cases where a plaintiff (1) cannot establish loss due to a defendant's conduct or (2) presents a speculative measure of potential loss. *Am. Automobile Assoc. of N. Cal., Nev., & Utah v. Gen. Motors LLC*, 367 F. Supp. 3d 1072, 1105 (N.D. Cal. 2019) ("The Ninth Circuit has recognized that claims for damages under the Lanham Act may be properly disposed of on summary judgment."). Such is the case here.

> *1.    D&D Cannot Establish Direct Causation Between its Alleged Harm and GGF's Accused Actions, and its Quantitative Measures of Damage Are Speculative.*

"Section 35 of the Lanham Act, 15 U.S.C. § 1117(a) governs the award of monetary remedies in both trademark infringement and unfair competition claims." *Sansi N. Am., LLC v. LG Elec. USA, Inc.*, No. CV 18-3541 PSG (SKx), 2019 WL 8168069, at *7 (C.D. Cal. Nov. 14, 2019) (internal quotation and citation omitted). "Under § 1117(a), courts may award, subject to the principles of equity, (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." *Id.* To receive an award of actual damages, D&D "must prove both [1] the fact and [2] the amount of damage." *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993), *abrogated on other grounds by SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*, 839 F.3d 1179 (9th Cir. 2016). Here D&D fails on both turns.

> a.    D&D Cannot Establish Damage in Fact.

To establish damage in fact, D&D must demonstrate causation. 5 McCarthy on Trademarks and Unfair Competition §§ 30:72, 30:76 (5th ed.) (collecting cases and noting that for trademark damages "a higher level of proof of the fact of damage is required than for proof of quantum of injury."). Put differently, D&D must establish a harm that resulted directly from the alleged infringement. *Sansi N. Am.,*

*LLC*, 2019 WL 8168069, at *7. This is because any damages award must "constitute compensation and not a penalty." 15 U.S.C. § 1117(a). D&D fails in this regard.

Here, the parties are not direct competitors. Both D&D, and its predecessors, ran their restaurant from a single location in Sherman Oaks and never took any steps to expand or franchise their concept. SUF ¶ 12. GGF is a franchising entity that was formed in 2017. *Id.* ¶¶ 1, 4, 35. GGF does not operate individual restaurant locations, but instead offers franchise opportunities to third party franchisee entities across the country. *Id.* ¶¶ 1, 35. D&D makes its revenue from selling food and drink at its Sherman Oaks restaurant. *Id.* ¶ 13. GGF makes its revenue from the collection of franchise royalties. *Id.* ¶ 5.

In addition, the prior owner of the Sherman Oaks restaurant, Vicki West, admitted that from 2011 through 2019, she was unaware of any lost sales or other financial harm that resulted from GGF's operation of restaurants in Las Vegas, Nevada. *Id.* ¶¶ 14, 47. Put differently, a sale in Nevada is not one that could have been made by the Sherman Oaks restaurant. D&D also makes no claim—and cannot articulate an amount—to the alleged harm attributable to the goodwill value of its mark. *Id.* ¶ 48. Simply put, there is no dispute that D&D cannot establish causation for loss—if any—to GGF. *See, e.g., Color Me Mine Enters., Inc. v. S. States Marketing Inc.*, No. CV 12-00860-RGK (JCx), 2013 WL 12119715, at *9 (C.D. Cal. April 25, 2013) (granting summary judgment to defendant and finding "[p]laintiff does not sell a similar bag activity kit nor did it present evidence that it planned to offer a similar product. Thus, the evidence does not establish with 'reasonable certainty' that Plaintiff directly suffered lost sales as a proximate result of Defendants' infringing activity."); *accord Blau v. YMI Jeanswear, Inc.,* No. CV 02-09551 FMC (SHSx)*,* 2004 WL 5313967, at *5 (C.D. Cal. Jan. 2, 2004) (finding "Plaintiff has not provided sufficient evidence to raise issues of fact as to whether Plaintiff suffered any actual loss due to Defendants' alleged infringement and whether the parties are in direct competition."). *See also* 5 McCarthy on Trademarks

19

and Unfair Competition § 30:77 (5th ed.) ("If plaintiff can prove no actual loss caused by the infringement, it is likely the court will deny a recovery of damages.").

   b. <u>D&D Cannot Prove A Non-Speculative Amount of Damage.</u>

Assuming, *arguendo*, that D&D could meet the heightened standard of proving injury in fact, "it still must present non-speculative evidence that goodwill and reputation—that is, the value of its mark—was damaged in some way." *Sansi N. Am., LLC* 2019 WL 8168069, at \*8 (C.D. Cal. Nov. 14, 2019) (quoting *Marketquest Grp., Inc. v. BIC Corp.*, 316 F. Supp. 3d 1234, 1301 (S.D. Cal. 2018)).

Here, for the period January 2016 to December 2021, D&D seeks (1) unjust enrichment damages in the form of a disgorgement of revenue/profit made by third parties (GGF *franchisees*) and/or (2) recovery of lost profits in the form of a reasonable royalty. SUF ¶ 49. The amount and types of damage allegedly suffered by D&D is not plausible factually, or legally. Can D&D collect damages from the time it did not own the mark? Can D&D collect damages from the time period GGF was not using the mark? Can D&D collect damages from GGF based on the revenue or profit earned by third parties? The answer to these questions: No.

Ignoring this basic logic, D&D claims damages for a time period prior to its formation in 2019. *Id.* ¶ 7. It also claims damages from GGF for a time period prior to its formation in 2017. *Id.* ¶ 4. D&D's applicable damages timeframe is premised on the blind setting aside of corporate formalities and actual parties in this suit. This is improper. *See, e.g., Perfect 10, Inc. v. Visa Int'l Serv., Assoc.*, 494 F.3d 788, 806-808 (9th Cir. 2007) (dismissing secondary liability trademark claims based on direct infringement by non-parties for failure to plead facts required for contributory or vicarious trademark infringement); *Miller v. Am. Fam. Mut. Ins. Co.*, No. CV-09-1954-PHX-FJM, 2010 WL 2926051, at \*2 (D. Ariz. July 23, 2010) ("Although affiliated, there is no dispute that [the entities] are separate corporate entities.

20

Plaintiffs assert no alter ego, joint venture, or other derivative liability theory that would justify ignoring the separate corporate identities.").

In addition, as noted above, there was no "actual damage" suffered by D&D and there can be no "actual damage" suffered by D&D because the parties are not in direct competition.  If D&D wants to recover defendant's profits as a measure of unjust enrichment damages, it "must establish that [it] suffered actual loss due to [GGF's] infringing sales, and that the parties are in direct competition." *Sansi N. Am., LLC,* 2019 WL 8168069, at *7; *accord Blau,* 2004 WL 5313967 at *7; *Quia Corp. v. Mattel, Inc.*, No. C 10-1902 JF (HRL), 2011 WL 2749576, at *7 (N.D. Cal. July 14, 2011).

Here, even if the Court considered GGF a restaurant operator—which it is not—D&D has no evidence of lost customers, lost sales, or other injury resulting from the operation of GGF franchised restaurants—which all operate outside the State of California.  SUF ¶¶ 14, 42-44, 47.  As a result, the Court should grant summary judgment to GGF on D&D's claims for damage.  *See, e.g., Fed. Agric. Mort. Corp. v. It's a Jungle Out There, Inc.*, No. C 03-3721 VRW, 2005 WL 3325051, at *11 (N.D. Cal. Dec. 7, 2005) (granting summary judgment on damages and disgorgement where plaintiff "has not presented any evidence of . . . damages or profits reasonably attributable to the alleged infringement.").

> 2. *GGF's Profits are Not Recoverable Under the Lanham Act as a Matter of Law.*

Another factor making the proof of damages impossible for D&D is the manner of confusion it has asserted in this case.  D&D has pled this case as a reverse confusion case.  Doc. 71 ¶¶ 44, 65.  In reverse confusion cases, there is no unjust enrichment through infringement, *i.e.*, trading on the senior user's goodwill.  The purpose of disgorgement, to prevent unjust enrichment, is not served where there is no intent to exploit the value of an existing mark—which D&D cannot establish here.  *See Visible Sys. Corp. v. Unisys Corp.*, 551 F.3d 65, 80 (1st Cir. 2008)

(rejecting plaintiff's request for accounting of defendant's profits, despite a jury finding willfulness and noting "plaintiff's theory of harm was one of reverse confusion, and reverse confusion does not lend itself to any automatic assumption that there is an equivalence between defendant's profits and plaintiff's diverted sales.").

An award of profits in a reverse confusion case would constitute an impermissible penalty to the infringer and a windfall to the trademark holder. *See, e.g.*, *Novadaq Techs., Inc. v. Karl Storz GmbH & Co. K.G.*, No. 14-CV-04853, 2015 WL 9028123, at *3 (N.D. Cal. Dec. 16, 2015) ("'Disgorging the infringer's significant profits without proof of trading off the mark holder's goodwill would still amount to a penalty to the infringer and a windfall to the trademark holder . . . even if the infringer's conduct was otherwise intentional.' ") (quoting *Spin Master, Ltd. v. Zobmondo Ent., LLC*, 944 F. Supp. 2d 830, 847-49 (C.D. Cal. 2012)).  Because this is a reverse confusion case, GGF's profits are unavailable as a matter of law, and D&D cannot collect the windfall it seeks.  *Novadaq Techs., Inc.*, 2015 WL 9028123, at *2-3 (holding in a reverse confusion case that plaintiff may not receive unjust enrichment or disgorgement damages).

### 3. D&D is Not Entitled to a Reasonable Royalty Under the Lanham Act as a Matter of Law.

Setting aside the many shortcomings of D&D's expert analysis—which will be detailed fully in upcoming briefing—a reasonable royalty is not an appropriate measure of damages in this case as a matter of law.  "Reasonable royalties are a form of damages for lost profits, since they focus on the licensing fees that were never paid by an infringer using a party's mark, and like other modes of calculating lost profits, they must be proved with reasonable certainty." *Pac. Packaging Concepts, Inc. v. Nutrisystem, Inc.*, No. 2:19-cv-04755-ODW (Ex), 2021 WL 3130041, at *2 (C.D. Cal. July 23, 2021) (internal quotation and citation omitted) (holding the plaintiff is not entitled to a reasonable royalty where there is no evidence of prior

22

licensing or related negotiations).  "For this reason, reasonable royalties are most often granted in a trademark context where the parties had a prior licensing agreement . . . or where the plaintiff previously engaged in the practice of licensing the mark to a third party."  *Id.*

Here, D&D operates a single restaurant location.  SUF ¶¶ 7-8.  It has never expanded its operations or never franchised its concept.  *Id.* ¶ 12.  Where, like here, there is no evidence of intent to license the plaintiff's mark, a "reasonable royalty analysis necessarily is speculation."  *Quia Corp.*, 2011 WL 2749576, at *6-7 (finding Plaintiff's claim that it would license its mark "at some point in the future" insufficient to support a claim for lost profits in the form of a reasonable royalty as a matter of law); *accord Color Me Mine*, 2013 WL 12119715, at *9 ("Plaintiff cannot establish with reasonable certainty that it lost out on licensing fee revenue. Plaintiff does not provide sufficient evidence that both sides were willing to accept a licensing agreement.  Plaintiff also fails to provide any evidence that it had previously entered into similar types of licensing agreements with any other supplier or retailer.  Thus, Plaintiff's request for lost licensing fees is speculative").

It is undisputed that there is an absence of prior licensing activity by D&D. There is also no evidence in the record to suggest that D&D would have considered a license—in fact, the evidence suggests the opposite.  As a result, the Court should grant GGF summary judgment that D&D cannot establish its reasonable royalty measure of damages.

> 4.    *D&D Cannot Recover Damages for its Unfair Competition Claim Under the California Business & Professional Code or Under the Common Law.*

Liability standards and damages for claims arising under California Unfair Competition law, Cal. Bus. & Prof. Code § 17200, are substantially congruent to claims under the Lanham Act.  *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1153 (9th Cir. 2002).  "Money damages are not available under § 17200, only equitable relief, including restitution and disgorgement are available."  *Blau*, 2004

WL 5313967, at *7. Under §17200, restitution is defined as the "profits unfairly obtained to the extent that [the] profits represent monies given to the defendant or benefits in which the plaintiff has an ownership interest." *Id.* (quoting *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937 (Cal. 2003)).

As noted above, GGF (a franchisor) and D&D (a restaurant operator) do not compete. As a result, D&D cannot establish damage in fact as there is no "causation" of damage attributable to GGF. *Fishman Transducers, Inc. v. Paul*, 684 F.3d 187, 196 (1st Cir. 2012) (affirming rejection of award of defendant's profits when plaintiff and defendant were not in direct competition and holding "a showing of direct competition requires a substantial showing of equivalence and substitutability, and a pickup is not a substitute for a guitar . . . ."). GGF's franchise royalty revenue is not a benefit or interest in which D&D might have an ownership interest because it has never franchised—and has no concrete plans to franchise—its single location restaurant concept. SUF ¶ 12. There is no evidence in the record that could substantiate a legitimate ownership interest in GGF's profits. As a result, the Court should grant GGF judgment that D&D is not entitled to monetary relief for any unfair competition under the California Business and Professional Code. *See, e.g.*, *Blau*, 2004 WL 5313967, at *7 ("Plaintiff has failed to raise a triable issue of fact as to whether he is entitled to relief under his California Unfair Competition cause of action.").

    5.  *D&D is Not Entitled to Damages Based on Conduct or Revenue of GGF's Franchisees or Prior to GGF's Existence.*

As noted above, D&D seeks damages from GGF from January 2016-December 2021—which includes periods of time prior to the formation of both entities. In addition, D&D's alleged damages calculations are based on (1) revenue earned by third parties prior to GGF's existence and (2) revenue earned by other franchisee entities not in this lawsuit. SUF ¶ 49.

DEFENDANT GREAT GREEK FRANCHISING, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:20-CV-09770-MWF-SK

"Corporations are generally treated as separate legal entities, with separate liabilities and obligations flowing therefrom." *Color Me Mine*, 2013 WL 12119715, at *8 (granting summary judgment as to claims against defendant CVS Caremark based on conduct of a subsidiary and rejecting plaintiff's arguments on alter ego and agency theories).  Here, D&D has not asserted any derivative liability claims, nor has it developed evidence that would make GGF responsible for the actions of third parties prior to its creation.  In addition, D&D has no evidence that GGF is liable for the alleged conduct of third party franchisees. *See Miller v. Am. Fam. Mut. Ins. Co.*, No. CV-09-1954-PHX-FJM, 2010 WL 2926051, at *2 (D. Ariz. July 23, 2010) (limiting Plaintiff's asserted claims to the entities in suit because Plaintiffs assert no derivative liability theories).  As a result, the Court should award GGF summary judgment that damages may not be recovered based upon (1) third-party conduct prior to GGF's formation date, or (2) revenues earned by third-party franchisee entities.

## V.    Conclusion

For the foregoing reasons, GGF requests that the Court grant GGF's motion for partial summary judgment on Counts I, II, III, IV, and V.

Dated:  February 22, 2022.        STINSON LLP


By:  /s/ *Javier Torres*
     B. Scott Eidson
     Julie C. Scheipeter
     Javier Torres

     Attorneys for Defendants Great Greek
     Franchising, LLC

25