David Gurnick, SBN 115723
dgurnick@lewitthackman.com
Matthew J. Soroky, SBN 258230
msoroky@lewitthackman.com
**Lewitt, Hackman, Shapiro, Marshall & Harlan**
16633 Ventura Boulevard, 11th Floor
Encino, California 91436-1865
Phone: (818) 990-2120; Fax: (818) 981-4764

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
BRIAN C. VANDERHOOF, SB# 248511
   E-Mail: Brian.Vanderhoof@lewisbrisbois.com
JEAN M. KIM, SB# 309720
   E-Mail: Jean.Kim@lewisbrisbois.com
633 West 5th Street, Suite 4000
Los Angeles, California 90071
Telephone: 213.250.1800
Facsimile: 213.250.7900

Attorneys for Plaintiff D & D GREEK
RESTAURANT, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| D & D GREEK RESTAURANT, INC., D/B/A THE GREAT GREEK, A CALIFORNIA CORPORATION,<br><br>    Plaintiff,<br><br>    vs.<br><br>GREAT GREEK FRANCHISING, LLC, A FLORIDA LIMITED LIABILITY COMPANY AND,<br><br>    Defendant.<br><br>D & D RESTAURANT INC, DBA: "THE GREAT GREEK";<br><br>    Counterdefendant. | Case No. 2:20-CV-09770-MWF-SK<br><br>**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT**<br><br>Judge:   Michael W. Fitzgerald<br><br>SAC filed: June 7, 2021<br>Counterclaim filed: August 20, 2021<br>Jury Trial: May 10, 2022 |

1

Plaintiff D & D Greek Restaurant, Inc., hereby submits this Separate Statement of Genuine Disputes of Material Fact. Concurrently with this Statement, Plaintiff submits evidentiary objections which include an objection to the entirety of Defendant's evidence as lacking authentication. Should that objection be overruled, Plaintiff asks the Court to consider the portions of Defendant's evidence cited by Plaintiff to refute Defendant's statements.

## I.    RESPONSE TO DEFENDANT'S UNCONTROVERTED FACTS

### A.    The Great Greek Mediterranean Grill

| Defendant's Uncontroverted Facts and Supporting Evidence: | Plaintiff's Statement of Genuine Disputes and Supporting Evidence: |
|---|---|
| **1.** Defendant, Great Greek Franchising, LLC ("GGF") is a Florida limited liability company headquartered in Florida. GGF is a franchisor of the Great Greek Mediterranean Grill restaurants ("TGGMG"). GGF does not own or operate any of the individual TGGMG restaurants. **Declaration of Ray Titus ("Titus Decl.") ¶ 3.** | Undisputed for this motion. |
| **2.** In 2011, the first TGGMG restaurant opened in Henderson, Nevada by Girair (Jerry) Goumroian. The TGGMG was a fast-casual style restaurant serving Greek food. Mr. Goumroian adopted and began using THE GREAT GREEK MEDITERRANEAN GRILL in connection with the restaurant. Mr. Goumroian owned and operated the first TGGMG restaurant with his mother, Alice Goumroian. Henderson, Nevada is within the Las Vegas Metropolitan area. **Exhibit A (Excerpts of Girair Goumroian's** | Disputed. Mr. Goumroian did not adopt the trademark. He discovered The Great Greek in California when he registered a website for The Great Greek Mediterranean Grill. He knew of Plaintiff's restaurant, The Great Greek, before he opened The Great Greek Mediterranean Grill. **Soroky Decl., Ex. C [Deposition of Girair Goumroian ("Goumroian Depo.")], at 70:4-22, 72:7-21, 73:10-15, 85:15-86:6, 112:19-113:8; Exs. M and N [Exhs. 18 and 19 to Goumroian Depo.] [Dkt. 146].** |

4860-1557-8896.1

RESPONSE TO DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| Defendant's Uncontroverted Facts and Supporting Evidence: | Plaintiff's Statement of Genuine Disputes and Supporting Evidence: |
|---|---|
| Deposition Transcript) at 61:5-16, 62:25, 63:10-22; Exhibit B (Excerpts of Nick Della Penna's Deposition Transcript) at 74:3-8. | Mr. Goumroian listed the restaurant as The Great Greek, not The Great Greek Mediterranean Grill. **Soroky Decl., Ex. SS [Deposition of Trenton Jones ("Jones Depo.")], at 55:11-56:17; Ex. YY [Ex. 41 to Jones Depo.].**<br><br>Defendant has not provided the evidence cited in Exhibit A to support the statement. |
| **3.** Neighbors Hospitality, LLC ("Neighbors"), is a Nevada limited liability corporation. Trenton Jones and Nick Della Penna are the managers of Neighbors. Neighbors acquired the TGGMG restaurant concept from Mr. Goumroian in January 2016. **Exhibit C (Excerpts of Trenton Jones's Deposition Transcript) at 48:15-17; Exhibit A at JG 95:17-25; Exhibit B at 73:6-74:20.** | Defendant has not provided the evidence cited in Exhibit C to support the statement. |
| **4.** After Ray Titus and others at United Franchising Group ("UFG") identified TGGMG as a potential investment opportunity, GGF was formed in 2017 through a joint venture between UFG and Great Greek Partners, LLC (an entity owned by the principals of Neighbors Hospitality, LLC). Prior to its formation in 2017, GGF had no | Disputed. Mr. Titus of UFG was involved from one to three months before Neighbors applied to register the trademark. He told the principals of Neighbors Hospitality that they needed to register the trademark. **Soroky Decl., Ex. SS [Jones Depo.], at 108:12-110:8; Ex. TT [Deposition of Nick Della Penna ("Della Penna Depo.")], at 119:18-120:24; Ex. WW [Deposition of** |

RESPONSE TO DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| Defendant's Uncontroverted Facts and Supporting Evidence: | Plaintiff's Statement of Genuine Disputes and Supporting Evidence: |
|---|---|
| involvement with the TGGMG concept.  **Titus Decl. ¶ 4.** | **Ray Titus ("Titus Depo.")], at 138:17-139:14**. |
| **5.**  GGF's revenue is generated through franchise fees, the markup on the sale of equipment to the franchisees, and franchise royalty fees (generally 6% of gross revenue of individual franchisees) paid to it by its franchisees operating TGGMG restaurants. **Titus Decl. ¶ 11.** | Disputed. Defendant's revenue is generated from fees other than royalties, including additional 3% of gross revenue for marketing fund contributions and advertising fees. These revenues are based on gross revenues of the restaurants. Revenues are also generated from separate charges for technology services, training, rewards programs, computer systems, late fees, renewal fees and transfer fees. **Soroky Decl., Ex. WW (Titus Depo.), at 341:16-342:9]; Ex. ZZ [FDD/Ex. 124 to Titus Depo., at pp. 13-16.]** |
| **6.**  TGGMG restaurants offer a "fast casual" dining experience.  TGGMG restaurants offer casual walk-up ordering (counter service), self-service beverages (pop machine), and dining room seating.  In addition to the indoor dining experience, TGGMG also offers to-go orders and catering services.  **Exhibit A at 62:25, 63:10-22; Exhibit D (Excerpts of Ray Titus's Deposition Transcript) at 157:10-11.** | Objection, relevance. Defendant is trying to define their restaurants' services at an irrelevant level of granularity. Both Plaintiff's and Defendant's restaurants sell Greek food. **Soroky Decl., Ex. G [Thompson Depo.], at 49:7-10 (The Great Greek in Los Angeles is a Greek restaurant); 58:9-10 (Great Greek is a Greek, fast casual Greek restaurant); 58:11-15 (Some of Defendant's menu items are Gyros, feta fries, hummos, rice plates, salads; all Greek foods); Ex. H [Titus Depo. I], at 232:14-15 (Q: Do both restaurants offer Greek foods?  A: They – they do."); 99:19-20 (most all of our ad words are "Greek restaurant. Greek food"); 187:18-23 ("We sell Greek food."); 189: 4-9 (Q: Are you talking about some agreement not to compete because it's two** |

RESPONSE TO DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| Defendant's Uncontroverted Facts and Supporting Evidence: | Plaintiff's Statement of Genuine Disputes and Supporting Evidence: |
|---|---|
| | **restaurants selling Greek food, some territory –" A: Yes.). [Dkt. 146].** Defendant has not provided the evidence cited in Exhibit A to support the statement. |

**B.      D&D's The Great Greek**

| Defendant's Uncontroverted Facts and Supporting Evidence: | Plaintiff's Statement of Genuine Disputes and Supporting Evidence: |
|---|---|
| **7.** Plaintiff, D & D Greek Restaurant, Inc., d/b/a The Great Greek, ("D&D"), is a California corporation formed in October 2019. D&D owns and operates a single-location restaurant under the name "The Great Greek" ("Sherman Oaks restaurant") on Ventura Boulevard in Sherman Oaks, California. In 2019, D&D acquired TGG. **Exhibit E (California Secretary of State Business Filings for D & D Greek Restaurant, Inc.); Exhibit F (Excerpt of Kathy Araklisianos Deposition Transcript) at 185:3, 188:14-16.** | Undisputed for this motion. |
| **8.** D&D purchased the Sherman Oaks restaurant from The Great Greek, Inc. in 2019. D&D alleges the Sherman Oaks restaurant opened in 1984. Vicki West, who owned the restaurant up to and including May 8, 2018, testified that there was only one location of The Great Greek | Disputed. Contrary to Defendant's version of Ms. West's testimony, Ms. West testified that there was one restaurant at the time of sale to Plaintiff, and that there was a Great Greek restaurant in Houston co-owned by Mr. Criezis that had the same food, branding, décor and concept as Plaintiff's |

4860-1557-8896.1

5

RESPONSE TO DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| Defendant's Uncontroverted Facts and Supporting Evidence: | Plaintiff's Statement of Genuine Disputes and Supporting Evidence: |
|---|---|
| Sherman Oaks. **Doc. 71 ¶¶ 1, 3; Exhibit G (Excerpt of Vicki West's Deposition Transcript) at 89:10-15.** | restaurant. **Soroky Decl., Ex. RR [Declaration of Vicki Criezis West ("West Depo.")], at 15:1-17:25.** |
| **9.** At no time prior to the filing of this lawsuit did D&D file for state or federal trademark protection for its name, *The Great Greek.* Vicki West, the long-time owner of the Sherman Oaks restaurant prior to D&D, testified that she was not aware of trademarks or the need to protect the restaurant's name while she owned the restaurant. Dionisi Araklisianos, part-owner of D&D, testified that he did not know he was purchasing trademarks when he bought the Sherman Oaks restaurant from Ms. West. **Exhibit G at 87:9-17, 87:25-88:4; Exhibit H (Excerpts of Dionisi Araklisianos's Deposition Transcript) at 21:1-18; Exhibit I (D&D's California State Trademark Registration); Exhibit J (D&D's Federal Trademark Application).** | Disputed. Ms. West did not testify that she was "not aware of trademarks or the need to protect the restaurant's name." Ms. West testified that she did not know enough to ask and believed she had exclusive rights to the name Great Greek and that her parameters were "probably the whole country if you think about it." **Soroky Decl., Ex. RR [West Depo.], at 87:19-88:24.**<br><br>Contrary to Defendant's version of Mr. Araklisianos' testimony, he certainly knew he was purchasing the name and was just unaware of its legal significance. |
| **10.** The Sherman Oaks restaurant provides dine-in, take-out, catering, and event space. The Sherman Oaks restaurant is a sit down restaurant that offers table service, and a full bar. In addition to the full bar, the Sherman Oaks restaurant has an approximately 20-bottle wine list, which includes a $245 bottle of Dom Perignon. The Sherman Oaks restaurant has a capacity of 119. **Exhibit H at 17:10-** | Objection, relevance. Defendant is trying to define Plaintiff's restaurant at an irrelevant level of granularity. Both Plaintiff's and Defendant's restaurants sell Greek food. **Soroky Decl., Ex. G [Thompson Depo.], at 49:7-10; 58:9-10; 58:11-15; Ex. H [Titus Depo. I], at 232:14-15; 99:19-20; 187:18-23; 189:4-9 [Dkt. 146].** |

4860-1557-8896.1

6

RESPONSE TO DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| Defendant's Uncontroverted Facts and Supporting Evidence: | Plaintiff's Statement of Genuine Disputes and Supporting Evidence: |
|---|---|
| 13, 119:32; Exhibit K (Excerpts of Dobren Michaels's Deposition Transcript) at 60:7-8,11 65:13-15, 66:19-22, 67:9-12, 110:14-16, 110:21-23, 116:6-10; Exhibit G at 66:6-8. | Disputed. There is no evidence of "event space." Mr. Michaels testified that to-go orders may be placed at the counter. See Def's Exh. K at 110:21-23.<br><br>Defendant has not provided the evidence cited in Exhibit H to support the statement. |
| 11. The atmosphere of the Sherman Oaks restaurant includes white tablecloths, candles, cloth napkins, and complimentary bread on the tables. Additionally, the Sherman Oaks restaurant offers live music and prior to the COVID-19 pandemic, dancing waiters. **Exhibit K at 60:18, 108:2-3, 111:8-14, 115:25-116:5, 141:24-142:1, 142:13-15.** | Objection, relevance. Defendant is trying to define Plaintiff's restaurant at an irrelevant level of granularity. Both Plaintiff's and Defendant's restaurants sell Greek food. **Soroky Decl., Ex. G [Thompson Depo.], at 49:7-10; 58:9-10; 58:11-15; Ex. H [Titus Depo. I], at 232:14-15; 99:19-20; 187:18-23; 189:4-9 [Dkt. 146].**<br><br>Disputed. Mr. Michaels did not testify to the atmosphere of the restaurant in the cited pages. He testified that the restaurant uses paper napkins at lunch. See Def's Exh. K at 108:2-3. |

## C. D&D Lacks Market Penetration

| Defendant's Uncontroverted Facts and Supporting Evidence: | Plaintiff's Statement of Genuine Disputes and Supporting Evidence: |
|---|---|
| 12. D&D has never expanded or attempted to expand its operations from its single location in Sherman Oaks, California. D&D's has no business plans, leases, contracts, or agreements to open additional restaurants. In addition, Ms. West testified that the prior ownership had no plans to expand or franchise. | Disputed. Ms. Araklisianos testified to looking into other locations for The Great Greek and visiting potential locations. **Soroky Decl., Ex. XX [Declaration of Kathryn Araklisianos ("KA Depo.")], at 110:19-112:1; 114:15-116:13; 352:21-353:11; 356:20-25.** |

4860-1557-8896.1

RESPONSE TO DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| Defendant's Uncontroverted Facts and Supporting Evidence: | Plaintiff's Statement of Genuine Disputes and Supporting Evidence: |
|---|---|
| **Exhibit G at VCW 90:6, 90:9, 90:17; Exhibit F at 112:2-4, 120:9-17, 121:2-12, 354:2-355:4; Exhibit H at 125:23-126:6** | |
| **13.** D&D's financial statements indicate that its revenue prior to the institution of this lawsuit was generated solely through food and beverage sales from its Sherman Oaks restaurant. The financial information produced does not quantity the volume of sales attributable to any geographic area, whether at the city, state, or other territorial level. It also does not quantify the volume of sales to customers beyond providing only general, and insufficient, information of total sales by year. **Exhibit L (The Great Greek, Ltd. Financial Statements for 2017 and 2018); Exhibit M (D&D Financial Statements for 2019, 2020, 2021)**. | Objection, argumentative and not a statement of fact. |
| **14.** Ms. West testified that the Sherman Oaks restaurant was never impacted by the existence of the TGGMG restaurants. **Exhibit G at 83:18-84:17.** | Disputed. Contrary to Defendant's version of the cited testimony, Ms. West testified that she was not aware that Defendant's restaurants existed. **Soroky Decl., Ex. RR [West Depo.], at 84:15-17**.<br><br>Ms. Araklisianos testified to not knowing the extent of Defendant's impact on The Great Greek. **Soroky Decl., Ex. XX [KA Depo.], at 327:7-20.** There is substantial actual confusion. **Soroky Decl. Exs. S, T, V and W [Dkt. 146]; KA Decl. [Dkt. 147].** |

RESPONSE TO DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| Defendant's Uncontroverted Facts and Supporting Evidence: | Plaintiff's Statement of Genuine Disputes and Supporting Evidence: |
|---|---|
| | Defendant has not provided the evidence cited in Exhibit G to support the statement. |
| **15.** D&D does not ship food across the country.  **Exhibit F at 361:1-6.** | Undisputed for this motion. |
| **16.** D&D sales in the following years were: ▮▮▮▮ in 2016; ▮▮▮▮ in 2017; ▮▮▮▮ in 2018. **Exhibits L and N (D&D's Financial Statement for August 2021).** | Undisputed for this motion. |
| **17.** Ms. West testified that during her ownership, the customers came from the Los Angeles region. Likewise, Dionisi Araklisianos, part owner of the restaurant, admitted that he does not know whether an appreciable ofnumber of people across the United States are familiar with The Great Greek. Additionally, D&D's Google insights show that individuals requesting directions to The Great Greek were only from Los Angeles county and the surrounding area. **Exhibit O (D&D's Google Ads Business Insights); Exhibit G at 71:12-13; Exhibit H at 51:2-52:1.** | Disputed. Defendant omits Ms. West's full testimony: "Our customers come from all other the LA region <u>as a rule, like a on a nightly basis. But we also get customers from all over the country…</u>" See Def's. Exh. G at 71:12-25; Declaration of Dionisi Araklisianos (DA Decl."), ¶¶ 9, 12, 18-21 and Att. 1.*<br><br>Objection to the form of counsel's question to Mr. Araklisianos. He testified "I have a lot of reviews from all over the United States." See Def's Ex. H at 51:25-52:1.<br><br>Objection, Exhibit O is inadmissible hearsay.<br><br>*Subsequent declaration that differs from the version filed on 2/22/2022 [Dkt. 145]. |

RESPONSE TO DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| Defendant's Uncontroverted Facts and Supporting Evidence: | Plaintiff's Statement of Genuine Disputes and Supporting Evidence: |
|---|---|
| **18.** D&D's marketing and branding expert, Dr. Larry Chiagouris, opined that D&D's mark has "strength" in only the following counties: Kern, Orange, Riverside, San Bernadino, Santa Barbara, and Ventura. **Exhibit P (D&D Expert Report for Dr. Larry Chiagouris).** | Disputed. Defendant misstates the expert's opinion. Dr. Chiagouris opined that "Multiple marketplace indicators exist that reflect strength of The Great Greek brand and related trademark beyond Los Angeles County, including the surrounding counties…" See Def's Exh. P at 260. |
| **19.** Prior to instituting the present lawsuit, D&D did not police or monitor its mark in any territories. **Exhibit F at 243:18-19, 244:23-245:5.** | Disputed, as evidenced by this lawsuit. There is no evidence that Plaintiff or its predecessor was aware of any infringement and failed to act. Objection to the form of counsel's question as ambiguous as to "police" and asking an internally contradictory question. |

## D.   D&D's Advertising

| Defendant's Uncontroverted Facts and Supporting Evidence: | Plaintiff's Statement of Genuine Disputes and Supporting Evidence: |
|---|---|
| **20.** To promote the Sherman Oaks restaurant, D&D's marketing tools include: its website, its social media, the Internet, word of mouth, and customer reviews. **Exhibit F at 77:22-78:1.** | Undisputed for this motion. |
| **21.** From 2001 to 2019, an eighteen-year period, the Sherman Oaks restaurant incurred merely $32,000 in total advertising related expenses. **Exhibit Q (D&D's Supp. Response to Def.'s ROG, Set One No. 19(d)) at pg. 14:25-26.** | Disputed. Contrary to Defendant's interpretation of the evidence, the interrogatory states "From 2001 to 2009 The Great Greek had roughly $32,000 in advertising related expenses. |

4860-1557-8896.1

10

| Defendant's Uncontroverted Facts and Supporting Evidence: | Plaintiff's Statement of Genuine Disputes and Supporting Evidence: |
|---|---|
| | |
| **22.** Since 2017, the advertising budget for the Sherman Oaks restaurant has been under $5500. The Sherman Oaks restaurant's total advertising spend for these past five years was: ▉▉▉ in 2017; ▉▉▉ in 2018; ▉▉▉ in 2019; ▉▉▉ in 2020; and ▉▉▉ in 2021. From 2019 to 2021, D&D spent its advertising dollars on Google, Opentable, and help wanted. D&D's monthly Google Ads payment ranged from ▉▉ to ▉▉. **Exhibit L; Exhibit R (D&D's Advertising Spending Reports for 2019, 2020, and 2021).** | Undisputed for this motion. |
| **23.** D&D operates a Twitter account with the username of @thegreatgreek and currently has 9 followers. D&D also operates an Instagram account with the username of @greatgreekLA and currently has 231 followers. D&D operates a Facebook account with the username of @thegreatgreek and currently has 2508 likes. Lastly, D&D operates a YouTube account and has 4 subscribers and 3,323 views for its 12 videos, 11 of which were posted approximately 7 years ago. **Exhibit S (D&D's Social Media Accounts).** | Objection, vague as to "operates." D&D has two Twitter accounts, @thegreatgreek created in 2009 and the restaurant added a second Twitter handle @great-greek in 2010. D&D regained the cited account recently. **Soroky Decl., Ex. XX [KA Depo.], at 222:13-223:14.**<br><br>Objection, Exhibit S is admissible hearsay. |
| **24.** D&D's Google Ads only show in Orange, Los Angeles, and Ventura Counties. D&D's Google Ads are viewed by individuals in Los Angeles, | Disputed. The statement is not supported by the cited evidence. Exhibit T is inadmissible hearsay. The Google Ads evidence states where the ad is shown |

4860-1557-8896.1

11

| Defendant's Uncontroverted Facts and Supporting Evidence: | Plaintiff's Statement of Genuine Disputes and Supporting Evidence: |
|---|---|
| Van Vuys, and Long Beach. D&D did not start paying for or subscribing to Google Ads or Yelp until around October or November 2017. D&D does not pay for Yelp premium or Google search engine optimization. **Exhibit T (D&D's Google Ads Reports); Exhibit F at 77:1, 377:10-12, 377:21-24, 383:15-384:16.** | not viewed. Defendant illogically infers exclusion all other counties because certain counties are shown.

The statement misstates testimony. The witness testified "We did Google AdWords and we did AdWords on GoDaddy" in 2019. **Soroky Decl., Ex. XX [KA Depo.], at 316:11-12.** |
| **25.** Aside from maintaining an online presence, the prior owners of the Sherman Oaks restaurant did not direct any advertising outside of the Los Angeles area from 1996 until the restaurant was sold in 2019. Ms. West testified that the Sherman Oaks restaurant only appeared in one television advertisement during her ownership. The commercial was limited to a month-time period on a nationwide Iranian television station back in 1996. Aside from this commercial, there have been no additional television commercials promoting the Sherman Oaks restaurant. **Exhibit G at 37:7-18, 38:3-7, 41:3-22, 42:1-8, 45:4-22, 43:24-44:2.** | Disputed. The prior owners advertised outside of the Los Angeles area. Ms. West testified prior to the cited testimony, "There was still advertising in the Daily News and the Hollywood Reporter" in 1996. **Soroky Decl., Ex. RR [West Depo.], at 34:25-35:5**.

*The Hollywood Reporter* is a national publication that reaches a national audience. See Def's Exh. P, ¶ 49; *see also, Museum of Modern Art v. Momacha IP LLC,* 339 F.Supp.3d 361, 381 (S.D.N.Y., 2018) (Museum used its mark in "advertising and promoting itself in national publications such as . . . Hollywood Reporter"); *Basile v. Prometheus Global Media, LLC,* 2016 WL 2987004, at *3 (N.D.Ill., 2016) (Hollywood Reporter Magazine "is a nationally circulated publication").

The Great Greek has been mentioned or featured hundreds of times in articles in the *Los Angeles Times*. See Def's Exh. Q at 12:19-26.
The *Los Angeles Times* is known to have |

4860-1557-8896.1

12

RESPONSE TO DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| Defendant's Uncontroverted Facts and Supporting Evidence: | Plaintiff's Statement of Genuine Disputes and Supporting Evidence: |
|---|---|
| | substantial readership outside the greater Los Angeles metropolitan area. *See McCabe v. Kevin Jenkins & Assoc.* 531 F.Supp. 648, 655 (E.D.Pa. 1982) (L.A. Times was "a national paper"); *Rovio Ent., Ltd. v. Angry Clubs LLC,* No. 1:13–Civ–23619. 2013 WL 8743938, at *2 (S.D.Fla., Nov. 25, 2013) (plaintiff's brand and product "appeared in nationwide publications such as . . . Los Angeles Times.")<br><br>Prior ownership of The Great Greek also advertised in *The Daily Variety* (also a national publication), *Los Angeles Times*, *Herald Examiner* and *Daily News*. **Soroky Decl., Ex. XX [KA Depo.], at 245:17-246:22.** |
| **26.** As for print promotion of the Sherman Oaks restaurant, THE GREAT GREEK mark appears on signage at the restaurant and in local periodicals, including LA Magazine. Ms. West testified that she did not advertise the restaurant in newspapers and magazines beyond the Los Angeles area, specifically listing Miami, New York, Minnesota, or Las Vegas. **Exhibit G at 50:10-51:12; Exhibit F at 188:61-21; Exhibit H at 77:12-13, 79:1-4; Exhibit U (Picture of the Sherman Oaks restaurant); Exhibit V (Articles D&D produced about the Sherman Oaks restaurant).** | Disputed. Ms. West did not list these geographies. She testified "There was still advertising in the Daily News and the Hollywood Reporter." [VCW 34:25-35:5]. *The Hollywood Reporter* is a national publication that reaches a national audience. See Def's Exh. P, ¶ 49; *see also, Museum of Modern Art v. Momacha IP LLC,* 339 F.Supp.3d 361, 381 (S.D.N.Y., 2018) (Museum used its mark in "advertising and promoting itself in national publications such as . . . Hollywood Reporter"); *Basile v. Prometheus Global Media, LLC,* 2016 WL 2987004, at *3 (N.D.Ill., 2016) (Hollywood Reporter Magazine "is a nationally circulated publication");<br><br>The Great Greek has been mentioned or featured hundreds of times in articles in |

RESPONSE TO DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| Defendant's Uncontroverted Facts and Supporting Evidence: | Plaintiff's Statement of Genuine Disputes and Supporting Evidence: |
|---|---|
| | the *Los Angeles Times*. Defendant's Exhibit Q at 12:19-26.<br><br>The *Los Angeles Times* is known to have substantial readership outside the greater Los Angeles metropolitan area. *See McCabe v. Kevin Jenkins & Assoc.* 531 F.Supp. 648, 655 (E.D.Pa. 1982) (L.A. Times was "a national paper"); *Rovio Ent., Ltd. v. Angry Clubs LLC,* No. 1:13–Civ–23619. 2013 WL 8743938, at *2 (S.D.Fla., Nov. 25, 2013) (plaintiff's brand and product "appeared in nationwide publications such as . . . Los Angeles Times.").<br><br>Prior ownership of The Great Greek also advertised in *The Daily Variety* (also a national publication), *Los Angeles Times, Herald Examiner* and *Daily News*. **Soroky Decl., Ex. XX [KA Depo.], at 245:17-246:22.** |
| **27.** The Sherman Oaks restaurant has also promoted itself by sponsoring and donating money and gift cards to various entities, festivals, and events, all of which are located in the Los Angeles area. The monetary donations to schools' festivals and silent auctions, community and charitable organizations, and churches in Sherman Oaks, Valley Village, and the surrounding areas of Los Angeles ranged from $20 to $70. Additionally, the Sherman Oaks restaurant spent around $250 to $500 for sponsorships of local Greek festivals in Los | Disputed. Monetary donations have been up to $500. |

4860-1557-8896.1

14

| Defendant's Uncontroverted Facts and Supporting Evidence: | Plaintiff's Statement of Genuine Disputes and Supporting Evidence: |
|---|---|
| Angeles and Northridge areas. **Exhibit W (D&D produced donation forms); Exhibit F at 62:19, 377:14-16.** | |

### E.    GGF's Acquiring of TGGMG and TGGMG Trademarks

| Defendant's Uncontroverted Facts and Supporting Evidence: | Plaintiff's Statement of Genuine Disputes and Supporting Evidence: |
|---|---|
| **28.** On January 17, 2016, Neighbors acquired TGGMG restaurant concept and the first TGGMG restaurant from Mr. Goumroian. In addition to acquiring the TGGMG restaurant and the concept from Mr. Goumroian, Neighbors acquired, among other things, all intellectual property and goodwill for the First TGGMG Store, including its use of the trademarks including "The Great Greek Mediterranean Grill" and any related trademarks and rights related to that intellectual property and goodwill. **Exhibit A at 95:17-25; Exhibit B at 73:6-74:20; Exhibit C at 48:15-17.** | Undisputed for this motion.<br><br>Defendant has not provided the evidence cited in Exhibit C to support the statement. |
| **29.** Based on those intellectual property rights and goodwill, on April 28, 2017, Neighbors filed for a service mark on the U.S. Patent and Trademark Office's ("USPTO") Supplemental Register for the mark "The Great Greek Mediterranean Grill". That mark was registered on the Supplemental Register on August 1, 2017 as Registration No. 5,298,597. Neighbors used counsel from Las | Undisputed that Neighbors registered the trademark, but disputed as to the basis for Neighbors to do this "[b]ased on those intellectually property rights and goodwill." Neighbors is a junior user whose use was not in good faith due to Mr. Goumroian's admitted knowledge of The Great Greek before he opened the Henderson restaurant in 2011. **Soroky Decl., Ex. C [Goumroian Depo.], at** |

| Defendant's Uncontroverted Facts and Supporting Evidence: | Plaintiff's Statement of Genuine Disputes and Supporting Evidence: |
|---|---|
| Vegas, Nevada, to apply for and obtain that mark. **Exhibit X (Neighbors' Federal Trademark Registrations).** | **70:4-22, 72:7-21, 73:10-15, 85:15-86:6, 112:19-113:8] [Dkt. 146].** |
| **30.** Concurrently, Neighbors expanded the TGGMG locations and use of the mark within Nevada. Neighbors opened the second TGGMG restaurant in June 2017. **Exhibit B at 123:2-4.** | Undisputed for this motion. |
| **31.** After Mr. Titus and others at UFG identified TGGMG as a potential investment opportunity, UFG and Great Greek Partners, LLC (an entity owned by the principals of Neighbors) entered into a Joint Venture Agreement on September 18, 2017. Pursuant to the Joint Venture Agreement, GGF was created on December 4, 2017. **Titus Decl. ¶ 4.** | Undisputed for this motion. |
| **32.** On February 27, 2018, UFG and Great Greek Partners entered into the original LLC Operating Agreement for GGF. Through the operating agreement, GGF acquired all intellectual property rights in the name "The Great Greek Mediterranean Grill," including all goodwill in the trademark dating back to the First TGGMG Store. **Titus Decl. ¶ 5.** | Undisputed that the trademark registration transferred to GGF, but disputed as to GGF acquiring "all intellectual property rights" in the trademark. GGF is a junior user whose use was not in good faith due to Mr. Goumroian's admitted knowledge of The Great Greek before he opened the Henderson restaurant in 2011. **Soroky Decl., Ex. C [Goumroian Depo.], at 70:4-22, 72:7-21, 73:10-15, 85:15-86:6, 112:19-113:8. [Dkt. 146].** Mr. Goumroian discovered The Great Greek in California when |

4860-1557-8896.1

16

RESPONSE TO DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| Defendant's Uncontroverted Facts and Supporting Evidence: | Plaintiff's Statement of Genuine Disputes and Supporting Evidence: |
|---|---|
| | he registered a website for The Great Greek Mediterranean Grill. **Soroky Decl., Ex. C [Goumroian Depo.], at 70:4-22, 72:7-21, 73:10-15 [Dkt. 146].**<br><br>Mr. Goumroian listed the restaurant as The Great Greek, not The Great Greek Mediterranean Grill **Soroky Decl., Ex. SS [Jones Depo.], at 55:11-56:17; Ex. YY [Ex. 41 to Jones Depo.].**<br><br>Messrs. Goumroian, Jones, and Della Penna memorialized the purchase and sale of The Great Greek Mediterranean Grill with the assistance of business brokers using bulk sale transaction and escrow forms. **Soroky Decl., Ex. C [Goumroian Depo.] at 88:13-24; 105:6-106:5; Exs. M and N [Exhs. 18 and 19 to Goumroian Depo.]; Ex. E [Jones Depo.], at 76:2-11; Ex. F [Della Penna Depo.], at 73:8-13; 73:23-74:2, 74:16-20. [Dkt. 146].**<br><br>Within the bulk sale and escrow documents was a document titled "Assignment of Seller's Interest in Trade Name" that read: "Assignor does not warrant any "legal" ownership of the Trade Name, given that the Trade Name is not currently registered by the Assignor with the United States Patent and Trademark Office." **Soroky Decl., Ex. C [Goumroian Depo.], at 105:6-106:5; Ex. N [Ex. 19 to Goumroian Depo.], at GGF0001994; Ex. F [Della |

RESPONSE TO DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| Defendant's Uncontroverted Facts and Supporting Evidence: | Plaintiff's Statement of Genuine Disputes and Supporting Evidence: |
|---|---|
| | Penna Depo.], at 76:17-77:5; Ex. E [Jones Depo.], at 80:15-23. [Dkt. 146]. |
| **33.** GGF owns the following federal trademark registrations: Registration No. 5,298,597 for THE GREAT GREEK MEDITERRANEAN GRILL (standard character), Registration Nos. 6,110,408, 6,110,409, 6,110,410, and 6,110,411 for TGGMG logos, and Registration No. 5,964,545 for GREAT GREEK (standard character). Titus Decl. ¶ 6; **Exhibit Y (USPTO Records showing GGF Federal Trademark Registrations).** | The trademarks and their associated registration numbers are undisputed, but Plaintiff disputes that validity of GGF's claim of ownership to the trademark and seeks cancellation of these registrations. |
| **34.** GGF and its franchisees use the TGGMG Marks in all locations to market TGGMG restaurants. **Titus Decl. ¶ 7.** | Disputed. Ambiguous as to the meanings of "all locations" and "market." |

## F.        TGGMG Franchisees and Advertising

| Defendant's Uncontroverted Facts and Supporting Evidence: | Plaintiff's Statement of Genuine Disputes and Supporting Evidence: |
|---|---|
| **35.** GGF is the franchisor of TGGMG restaurants. GGF does not own or operate any of its own TGGMG restaurants. Franchisees locations are owned by separate, independent entities and individuals. **Titus Decl. ¶ 3.** | Disputed. Mr. Della Penna testified that Mr. Ray Titus co-owns a restaurant with Messrs. Della Penna and Jones. **Ex. TT [Della Penna Depo.], at 111:6-10.** |
| **36.** The TGGMG restaurants have delivered, and continue to deliver, high quality Mediterranean food | Disputed. Defendant's restaurants are not nationwide. The statement is contradicted by Mr. Titus' declaration |

4860-1557-8896.1

18

RESPONSE TO DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| Defendant's Uncontroverted Facts and Supporting Evidence: | Plaintiff's Statement of Genuine Disputes and Supporting Evidence: |
|---|---|
| with fresh and healthy ingredients to thousands of customers across the United States. **Titus Decl. ¶ 8.** | which states that there are restaurants in only 9 out of 50 states. |
| **37.** Currently, there are five TGGMG restaurants in Nevada, two in Colorado, three in Michigan, five in Florida, one in Minnesota, one in Ohio, one in South Carolina, two in Texas, and one in Virginia. **Titus Decl. ¶ 9.** | Disputed. As of April 30, 2021 GGF had 144 franchise agreements signed including agreements for 36 locations in California, more than any other state.<br><br>**Ex. ZZ [FDD/Ex. 124 to Titus Depo], at 63.** |
| **38.** No TGGMG restaurants have opened in California. No TGGMG restaurants are currently set to open in or in the immediate vicinity of Sherman Oaks, California. **Titus Decl. ¶ 10.** | Objection, vague as to "immediate vicinity." GGF franchised restaurants are scheduled as "coming soon" in locations where Plaintiff is known and attracts customers throughout the state including Orange County, San Diego, Inland Empire Counties and the San Francisco Bay Area. **Soroky Decl., Ex. H [Titus Depo. I], at 28:3-5 (several people are close to operating in California); 28:11-14 (locations will be in San Diego, Orange County, Inland Empire and Bay Area); 29:17-20 (has not instructed any of the franchisees to stop their progress on getting restaurants open); 30:14-19 (same); 29:21-24 (these four franchisees are moving forward with efforts to open Great Greek restaurants in California). [Dkt. 146].** |

4860-1557-8896.1

19

RESPONSE TO DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

## G. GGF's Intent

| Defendant's Uncontroverted Facts and Supporting Evidence: | Plaintiff's Statement of Genuine Disputes and Supporting Evidence: |
|---|---|
| **39.** Registration No. 5,298,597 was applied for by Neighbors' attorney Charles Coons on April 28, 2017. **Exhibit B at NDP 119:15-122:1, 123:16-25; Exhibit C at TJ 113:18-21; Exhibit D at Titus 84:17-24.** | Undisputed for this motion. |
| **40.** Mr. Coons testified that he conducted a clearance search before filing the application and that search did not reveal any restaurant by the name of The Great Greek. **Exhibit Z (Excerpts of Charles Coons' Deposition Transcript) at 14:15-19, 17:11-17, 18:20-23, 32:21-24, 54:1-4.** | Disputed. Mr. Coons refused to identify what was searched on the basis of privilege. Mr. Coons claims he searched the USPTO's trademark database and the internet. Mr. Coons claims he focused his search only on the Las Vegas, Nevada market because that was the only place where Neighbors intended to operate. The cited testimony re: The Great Greek was not in response to a question about the results of any search. **Soroky Decl., Ex. UU [Deposition of Charles Coons ("Coons Depo.")], at 47:11-23].** |
| **41.** Both principals of Neighbors, Nick Della Penna and Trent Jones, testified that Neighbors' learned of the Sherman Oaks restaurant after it filed its trademark application. **Exhibit B at 18:22-19:24, 21:21-25, 23:5-12; Exhibit C at 19:19-20:21, 88:9-89:22.** | Disputed. Messrs. Goumroian, Jones, and Della Penna memorialized the purchase and sale of The Great Greek Mediterranean Grill with the assistance of business brokers using bulk sale transaction and escrow forms, that included a document titled "Assignment of Seller's Interest in Trade Name" that read: "Assignor does not warrant any "legal" ownership of the Trade Name, given that the Trade Name is not currently registered by the Assignor with the United States Patent and Trademark |

| Defendant's Uncontroverted Facts and Supporting Evidence: | Plaintiff's Statement of Genuine Disputes and Supporting Evidence: |
|---|---|
| | Office." **Soroky Decl., Ex. C [Goumroian Depo.] at 88:13-24; 105:6-106:5; Exs. M [Exh. 18 to Goumroian Depo.]; Ex. E [Jones Depo.], at 76:2-11; 80:15-23; Ex. F [Della Penna Depo.], at 73:8-13; 73:23-74:2, 74:16-20; 76:17-77:5; Ex. N [Ex. 19 to Goumroian Depo.], at GGF0001994. [Dkt. 146].**<br><br>Neighbors is a junior user whose use was not in good faith due to Mr. Goumroian's admitted knowledge of The Great Greek before he opened the Henderson restaurant in 2011. **Soroky Decl., Ex. C [Goumroian Depo.], at 70:4-22, 72:7-21, 73:10-15, 85:15-86:6, 112:19-113:8. [Dkt. 146].**<br><br>Mr. Goumroian discovered The Great Greek in California when he registered a website for The Great Greek Mediterranean Grill. **Soroky Decl., Ex. C [Goumroian Depo.], at 70:4-22, 72:7-21, 73:10-15. [Dkt. 146].** |
| **42.** Registration Nos. 6,110,408, 6,110,409, 6,110,410, 6,110,411, and 5,964,545 were applied for by GGF. Mr. Titus, as President of GGF, signed the applications on behalf of GGF. Mr. Titus only became aware of the Sherman Oaks restaurant after GGF filed its trademark applications. **Exhibit Y; Exhibit D at 201:17-202:18** | Undisputed that Mr. Titus signed the applications. Disputed that he became aware of The Great Greek after filing the applications. Mr. Titus testified that Defendant had lawyers investigate the trademark. The lawyers took the steps usually taken to check trademark availability. They did what any other trademark lawyer would have done. **Soroky Decl., Ex. WW [Titus Depo.], at 194:3-195:15].** |

RESPONSE TO DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| Defendant's Uncontroverted Facts and Supporting Evidence: | Plaintiff's Statement of Genuine Disputes and Supporting Evidence: |
|---|---|
| | Counsel hired by Defendant performed an internet search before applying to register a trademark. **Declaration and Report of Dawn Newton, Ex. X.** |
| | The USPTO instructs the same at https://www.uspto.gov/trademarks/basics/**why-search-similar-trademarks** (emphasis added.) **Request for Judicial Notice 1.** |
| | GGF also had constructive knowledge. Messrs. Goumroian, Jones, and Della Penna memorialized the purchase and sale of The Great Greek Mediterranean Grill with the assistance of business brokers using bulk sale transaction and escrow forms, that included a document titled "Assignment of Seller's Interest in Trade Name" that read: "Assignor does not warrant any "legal" ownership of the Trade Name, given that the Trade Name is not currently registered by the Assignor with the United States Patent and Trademark Office." **Soroky Decl., Ex. C [Goumroian Depo.] at 88:13-24; 105:6-106:5; Exs. M [Exh. 18 to Goumroian Depo.]; Ex. E [Jones Depo.], at 76:2-11; 80:15-23; Ex. F [Della Penna Depo.], at 73:8-13; 73:23-74:2, 74:16-20; 76:17-77:5; Ex. N [Ex. 19 to Goumroian Depo.], at GGF0001994 [Dkt. 146].** |
| | GGF is a junior user whose use was not in good faith due to Mr. Goumroian's admitted knowledge of The Great Greek before he opened the Henderson |

4860-1557-8896.1

22

| Defendant's Uncontroverted Facts and Supporting Evidence: | Plaintiff's Statement of Genuine Disputes and Supporting Evidence: |
|---|---|
| | restaurant in 2011. Soroky Decl., Ex. C [Goumroian Depo.], at 70:4-22, 72:7-21, 73:10-15, 85:15-86:6, 112:19-113:8. [Dkt. 146].<br><br>In view of this evidence, and given the sophistication and experience of United Franchise Group, there is no question that GGF would have learned of existence of The Great Greek before filing the trademark applications. **Declaration and Report of Dawn Newton, Ex. X, ¶ 16.** |

## H.    No California State Trademark Registration

| Defendant's Uncontroverted Facts and Supporting Evidence: | Plaintiff's Statement of Genuine Disputes and Supporting Evidence: |
|---|---|
| **43.** Count IV of the Second Amended Complaint ("SAC") purports to assert a claim for trademark infringement under Cal. Bus. & Prof. Code § 14200 et seq. **Doc. 71 ¶¶ 86-92.** | Undisputed for this motion. |
| **44.** On October 18, 2021, GGF moved for partial judgment on the pleadings on its Counterclaim II for Cancellation of D&D's California Service Mark Registration. **Doc. 99.** | Undisputed for this motion. |
| **45.** On November 23, 2021, the Court granted GGF's motion for partial judgment on the pleadings. In granting the motion, the Court ordered the mark be cancelled by the California Secretary of State. **Doc. 113.** | Undisputed for this motion. |

4860-1557-8896.1

RESPONSE TO DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| Defendant's Uncontroverted Facts and Supporting Evidence: | Plaintiff's Statement of Genuine Disputes and Supporting Evidence: |
|---|---|
| **46.** On November 30, 2021, the California Secretary of State cancelled D&D's state trademark registration. Thus, D&D no longer has a mark registered pursuant to California state law as required by § 14245. **Exhibit AA (California Secretary of State Trademark Webpage and Trademark Cancellation Filings for D&D's Mark)**. | Undisputed for this motion. |

I.        **D&D's Damages**

| Defendant's Uncontroverted Facts and Supporting Evidence: | Plaintiff's Statement of Genuine Disputes and Supporting Evidence: |
|---|---|
| **47.** Ms. West admitted that from 2011 through 2019, she was unaware of any lost sales or other financial harm that resulted from GGF's operation of restaurants in Las Vegas, Nevada. **Exhibit G at 83:25-84:5.** | Disputed. The fact that Defendant tries to establish is lost sales, but this is not the fact Defendant stated. The statement made by Defendant is a witness's unawareness of a fact that does not prove any element in this case.<br><br>Defendant has not provided the evidence cited in Exhibit G to support the statement. |
| **48.** D&D cannot articulate an amount—to the alleged harm attributable to the goodwill value of its mark. **Exhibit F at 445:7-446:23.** | Objection, the questions asked invaded the attorney-client privilege. There were insufficient questions to establish the purported fact. Other questions would have elicited this information. The cited evidence does not establish the purported fact. Defendant has not provided the evidence cited in Exhibit F to support the statement. |

4860-1557-8896.1

24

RESPONSE TO DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| Defendant's Uncontroverted Facts and Supporting Evidence: | Plaintiff's Statement of Genuine Disputes and Supporting Evidence: |
|---|---|
| **49.** D&D's damages calculations are set forth in the expert report of Deborah Dickson. For the period January 2016 to December 2021, D&D seeks (1) unjust enrichment damages in the form of a disgorgement of revenue/profit made by third parties (GGF *franchisees*) and/or (2) recovery of lost profits in the form of a reasonable royalty. **Exhibit BB (D&D Expert Report for Deborah Dickson Report).** | Undisputed for this motion. |

## II.     PLAINTIFF'S ADDITIONAL REBUTTAL FACTS

| No. | Plaintiff's Additional Uncontroverted Rebuttal Facts | Supporting Evidence |
|---|---|---|
| **1.** | Plaintiff's social media is filled with guest reviews and comments throughout the nation. | DA Decl., ¶ 13 and Att. 1. |
| **2.** | *The Great Greek* was advertised in *The Hollywood Reporter*. | Soroky Decl., Ex. RR [West Depo.], at 34:25-35:5; See Def's Exh. P, ¶ 49. |
| **3.** | *The Great Greek* was advertised in *The Daily Variety*, *Los Angeles Times*, *Herald Examiner* and *Daily News*. | See Def's Exh. Q at 12:19-26.<br><br>Soroky Decl., Ex. XX [KA Depo.], at 245:17-246:22. |
| **4.** | There are already 22 franchised restaurants of Defendant operating under The Great Greek name and GGF intends to add more. | Soroky Decl., Ex. WW [Titus Depo.], at 27:17-21. |

4860-1557-8896.1

25

| No. | Plaintiff's Additional Uncontroverted Rebuttal Facts | Supporting Evidence |
|---|---|---|
| 5. | GGF wants to make The Great Greek a household name for their restaurants. | Soroky Decl., Ex. WW [Titus Depo.], at 168:6-9; 18-20; Ex. VV [Thompson Depo.], at 168:18-20; Ex. AAA [Ex. 61 to Thompson Depo.] |
| 6. | GGF seeks to achieve royalties of 6% on gross revenues of all franchised restaurants in addition to advertising fees of an additional 3% on gross revenues of all franchised restaurants | Soroky Decl., Ex. WW [Titus Depo.], at 167:14-23; Ex. ZZ [FDD/Ex. 124 to Titus Depo.], at p. 13. |
| 7. | Mr. Goumroian discovered and knew of Plaintiff's restaurant, The Great Greek, before he opened The Great Greek Mediterranean Grill. | Soroky Decl., Ex. C [Goumroian Depo.], at 70:4-22, 72:7-21, 73:10-15, 85:15-86:6, 112:19-113:8. |
| 8. | GGF had lawyers investigate the trademark by taking the steps usually taken to check trademark availability. | Soroky Decl., Ex. WW [Titus Depo.], at 193:20-194:18. |
| 9. | Those steps are a full clearance search. | Declaration and Report of Dawn Newton, Ex. X. |
| 10. | Such steps leave "no question" that GGF would have learned the existence of D&D's trademark | Declaration and Report of Dawn Newton, Ex. X, ¶ 16. |

RESPONSE TO DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Additional Uncontroverted Rebuttal Facts | Supporting Evidence |
|---|---|---|
| 11. | Messrs. Goumroian, Jones, and Della Penna memorialized the purchase and sale of The Great Greek Mediterranean Grill with the assistance of business brokers using bulk sale transaction and escrow forms, that included a document titled "Assignment of Seller's Interest in Trade Name" that read:<br><br>"Assignor does not warrant any "legal" ownership of the Trade Name, given that the Trade Name is not currently registered by the Assignor with the United States Patent and Trademark Office." | Soroky Decl., Ex. C [Goumroian Depo.] at 88:13-24; 105:6-106:5; Exs. M and N [Exhs. 18 and 19 to Goumroian Depo.]; Ex. E [Jones Depo.], at 76:2-11; Ex. F [Della Penna Depo.], at 73:8-13; 73:23-74:2, 74:16-20. [Dkt. 146].<br><br>Soroky Decl., Ex. N [Ex. 19 to Goumroian Depo.], at GGF0001994; Ex. F [Della Penna Depo.], at 76:17-77:5; Ex. E [Jones Depo.], at 80:15-23. [Dkt. 146]. |
| 12. | GGF franchised restaurants are scheduled as "coming soon" in locations where Plaintiff is known and attracts customers throughout the state including Orange County, San Diego, Inland Empire Counties and the San Francisco Bay Area. | Soroky Decl., Ex. H [Titus Depo. I], at, 28:3-5 (several people are close to operating in California); 28:11-14 (locations will be in San Diego, Orange County, Inland Empire and Bay Area); 29:17-20 (has not instructed any of the franchisees to stop their progress on getting restaurants open); 30:14-19 (same); 29:21-24 (these four franchisees are moving forward with efforts to open Great Greek restaurants in California). [Dkt. 146]. |
| 13. | At April 2021 Defendant had 36 Franchise Agreements signed for at least 36 restaurant locations in California | Soroky Decl., Ex. ZZ [FDD/Ex. 124 to Titus Depo.], at p. 63. |

RESPONSE TO DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Additional Uncontroverted Rebuttal Facts | Supporting Evidence |
|-----|------|------|
| 14. | Actual confusion is evidenced by Uber Eats associating GGF's chain of franchised restaurants with Plaintiff's restaurant, replacing Plaintiff's menu with the chain's menu and blocking Plaintiff from changing it back. | Declaration of Kathryn Araklisianos ("KA Decl."), ¶ 2.n and Ex. NN [Dkt. 147].<br><br>Soroky Decl., Ex. H [Titus Depo. I], at 127:1-128:3 ("I am familiar with Uber Eats' mistake that they have admitted was their mistake and – and that they did that."); 249:20-22 ("I know of the Uber Eats' scenario, which was Uber Eats' mistake.") [Dkt. 146]. |
| 15. | Actual confusion is evidenced by misdirected orders. | KA Decl., ¶ 2.g and Ex. GG [Dkt. 147]; Soroky Decl., Exhs. S and T, Ex. I [Titus Depo. II], at 267:5 – 269:15 (Mr. Titus is aware of incident of misdirected order; characterizes it as a "mistake.") [Dkt. 146]. |
| 16. | Actual confusion is evidenced by misdirected emails. | KA Decl., ¶¶ 2.h, 2.j, 2.m, 2.o,, 2.q and Exs. HH, JJ, MM, OO and QQ [Dkt. 147]. |
| 17. | Actual confusion is evidenced by misdirected social media posts and tags. | KA Decl., ¶¶ 2.a. 2.b, 2.c, 2.d, 2.e, 2.i, 2.k, 2.o, 2.p, and Exs.AA, BB, CC, DD, EE, II, KK, OO and PP [Dkt. 147]. |
| 18. | Actual confusion is evidenced by misdirected restaurant reviewers believing Plaintiff is part pf GGF's chain. | Soroky Decl., Exs. V and W [Dkt. 146]. |
| 19. | Actual confusion is evidenced by confused vendors offering services to Plaintiff believing Plaintiff is GGF and/or a GGF franchisee. | KA Decl., ¶¶ 2.m, 2.j, 2.o,, 2.q and Exs. MM, JJ, OO and QQ [Dkt. 147]. |

4860-1557-8896.1

28

RESPONSE TO DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Additional Uncontroverted Rebuttal Facts | Supporting Evidence |
|---|---|---|
| 20. | Actual confusion is evidenced by customers of GGF's restaurants contacting Plaintiff's restaurant to order from or complain about a TGGMG location. | KA Decl., ¶¶ 2.f, 2.g, 2.h, 2.l and Exs. FF, GG, HH and LL [Dkt. 147]. |
| 21. | GGF places in every Franchise Agreement, with every franchisee, the following obligation upon each franchisee: "Change of Marks. Great Greek Franchising may add, modify, or discontinue any Marks to be used under the System. Within a reasonable time after Great Greek Franchising makes any such change, Franchisee must comply with the change, at Franchisee's expense." | Soroky Decl., Ex. ZZ [FDD/Ex. 124 to Titus Depo.], at Ex. C [Fran. Agrmt. § 12.2 p. 25; Ex. WW [Titus Depo.], at 341; 372:1-4. |
| 22. | By at least as early as 2002, D&D's predecessor-in-interest advertised and marketed the brand interstate and nationwide using the www.greatgreek.com website. | Soroky Decl., Ex. J [Response to Interrogatory 11], p. 15 [Dkt. 146].<br><br>Declaration of Dionisi Araklisianos ("DA Decl."), ¶¶ 7, 26*;<br><br>*Subsequent declaration that differs from the version filed on 2/22/2022 [Dkt. 145]. |

4860-1557-8896.1

29

RESPONSE TO DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Additional Uncontroverted Rebuttal Facts | Supporting Evidence |
|-----|------------------------------------------------------|---------------------|
| 23. | The Great Greek has continuously maintained a social media presence on Twitter @thegreatgreek, which was created in October 2009, @great_greek, which was created in April 2011, Facebook @thegreatgreek, which was created April 24, 2010, YouTube, where the first video of The Great Greek was posted December 31, 2010; and where the channel was created December 21, 2013, and on Instagram, which was created March 14, 2020. | Soroky Decl., Ex. J [Responses to Interrogatory 4], p. 10 [Dkt. 146];<br><br>DA Decl., ¶ 30. |
| 24. | Customers of The Great Greek began posting reviews on Yelp as early as July 7, 2005 and on TripAdvisor as early as June 25, 2007. | Soroky Decl., Ex. J [Responses to Interrogatory 4], p. 10 [Dkt. 146];<br><br>DA Decl., ¶ 29. |
| 25. | Plaintiff owns and operates The Great Greek restaurant in Los Angeles. | Soroky Decl., Ex. H [Ray Titus Deposition Vol. I ("Titus Depo. I")], at 48:7-14 [Dkt. 146];<br><br>DA Decl., ¶ 5. |
| 26. | The Great Greek opened to the public in June 1984 and has operated continuously from its location at 13362 Ventura Boulevard, Sherman Oaks, California. | Soroky Decl., Ex. A [West Depo.] at 17:12-14; Ex. H [Titus Depo. I], at 207:2-7; Ex. I [Titus Depo. II], at 364:13-20; Ex. J [Response to Interrogatory 7], p. 13 [Dkt. 146];<br><br>DA Decl., ¶ 6. |

4860-1557-8896.1

30

| No. | Plaintiff's Additional Uncontroverted Rebuttal Facts | Supporting Evidence |
|---|---|---|
| 27. | The opening of The Great Greek was publicized in Texas where it received media attention. | Soroky Decl., Ex. A [West Depo.], at 29:18-30:13 [Dkt. 146]; DA Decl., Att. 1, at 064 and 070. |
| 28. | In 1984 services were provided to interstate travelers who were in Los Angeles for the 1984 Olympic Games. | Soroky Decl., Ex. J [Response to Interrogatory 11], p. 15 [Dkt. 146]; DA Decl., ¶ 9. |
| 29. | The Great Greek's location on Ventura Boulevard is located near heavily traveled U.S. Routes 101 and Interstate 405. | DA Decl., ¶ 2; Request for Judicial Notice ("RJN") 1 [Dkt. 148]. |
| 30. | In 2019 Plaintiff acquired the restaurant, trademark and goodwill from the founding company in a transaction memorialized in an asset purchase agreement. | Soroky Decl., Ex. B [West Depo.] at 3:16-25 and 4:5-7; Ex. L [Ex. 4 to West Depo.]; Ex. S [DM Decl.], ¶ 4 [Dkt. 146]; DA Decl., ¶¶ 4-5. |
| 31. | On October 21, 2019 Dionisi Araklisianos and Dobren Michaels formed D & D Greek Restaurant, Inc. to acquire The Great Greek. | Soroky Decl., Ex. S [Declaration of Dobren Michaels ("DM Decl.,")] ¶ 4 [Dkt. 146]; DA Decl., ¶ 5. |

RESPONSE TO DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Additional Uncontroverted Rebuttal Facts | Supporting Evidence |
| --- | --- | --- |
| 32. | The asset purchase included the "exclusive right to use the fictitious business name The Great Greek or The Great Greek Restaurant and their respective logo and business identification signs." | Soroky Decl., Ex. L [Ex. 4 to West Depo.], at p. 2. |
| 33. | The asset purchase agreement included "All rights…claims and rights under any agreements, contracts, intellectual property…goodwill related to the restaurant, royalty rights…and any other personal or intellectual property used in the operation of the Restaurant." claims and rights under agreements and intellectual property | Soroky Decl., Ex. L [Ex. 4 to West Depo.], at p. 2; Declaration of Vicki Criezis West, ¶¶ 3-4. |
| 34. | Mr. Goumroian sold the Nevada restaurant to Neighbors Hospitality in 2016. | Soroky Decl., Ex. C [Goumroian Depo.] at 24:11-13. 88:13-20; Exs. M and N [Exhibits 18 and 19 to Goumroian Depo.]; Ex. E [Jones Depo.], at 76:2-11, 21-24; Ex. F [Della Penna Depo.], at 73:23-74:2; Ex. U [Jones Decl.] at ¶ 5 [Dkt. 146]. |
| 35. | Neighbors was a limited liability company operated by managers Trenton Jones and Nick Della Pena. | Soroky Decl., Ex. E [Jones Depo.], at 48:14-19; Ex. F [Della Penna Depo.], at 73:23-74:2, 74:16-20; Ex. U [Jones Decl.] at ¶ 5 [Dkt. 146]. |

RESPONSE TO DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Additional Uncontroverted Rebuttal Facts | Supporting Evidence |
|---|---|---|
| 36. | After purchasing the Nevada restaurant, Messrs. Jones and Della Penna hired trademark/intellectual property attorney, Charles Coons of Cooper Coons, Ltd. in Las Vegas to apply for registration of The Great Greek Mediterranean Grill. | Soroky Decl., Ex. E [Jones Depo.], at 27:24-28:3; Ex. F [Della Penna Depo.], at 119:15 121:5; Ex. Q [TM App. Ser. No. 87429962]; Ex. U [Jones Decl.], ¶ 6 [Dkt. 146]. |
| 37. | GGF's CEO Mr. Titus admitted the acquisition of the trademark was subject to any limitations on its rights. | Soroky Decl., Ex. WW [Titus Depo.], at 226:18-24. |
| 38. | The PTO website states: This means conducting a clearance search, which typically involves searching our Trademark Electronic Search System (TESS) of federally registered and applied-for trademarks, state trademark databases, **and the internet**. Although the trademark examining attorney assigned to your application will also conduct a search, they will only determine whether there are conflicting trademarks in our database. So, you should be aware of any other potentially conflicting trademarks. **It's your responsibility to search state trademark databases and the internet**. | (www.uspto.gov/trademarks/basics/why-search-similar-trademarks); Request for Judicial Notice 1. |

4860-1557-8896.1

33

| 39. | A typical trademark review in a situation such as this would involve a recommendation to obtain a full clearance search or comprehensive search report in order to identify as many possible prior common law users and their locations as possible.<br><br>   *   *   *<br><br>The search to determine if there are problematic prior users of the same or a similar mark in any market in which the franchisor could license a third party to use the mark is considered critical when considering franchising.<br><br>   *   *   *<br><br>Given the sophistication and experience of The United Franchise Group and the specific due diligence phase the Defendant undertook in the summer of 2017 to evaluate whether The Great Greek Mediterranean Grill concept could be franchised, the immediacy with which predecessor The Great Greek LLC identified the Los Angeles restaurant as far back as 2011 during its unsophisticated efforts to establish the brand, there is no question but that Defendant would have learned of the existence of Plaintiff's restaurant and use of GREAT GREEK for decades in the Los Angeles metro market. At least two people associated with franchise efforts knew by 2018, and potentially by 2017, of Plaintiff's | Declaration and Report of Dawn Newton, Ex. X, at ¶¶ 16-18. |

RESPONSE TO DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Additional Uncontroverted Rebuttal Facts | Supporting Evidence |
|-----|------------------------------------------------------|---------------------|
|     | business.                                            |                     |
| 40. | *The Great Greek* trademark has been in popular media, like nationally shown TV shows *NCIS: Los Angeles*, *Two and A Half Men* and *Chasing Maria Menounos*. | Soroky Decl., Ex. H [Titus Depo. I], at 210:13 – 211:1 (Mr. Titus is aware from this litigation and does not dispute that The Great Greek has been shown on tv shows broadcast throughout the United States); Ex. J [Responses to Interrogatory 4], p. 10 [Dkt. 146].<br><br>DA Decl., ¶ 15. |

4860-1557-8896.1

35

RESPONSE TO DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| 41. | Deborah Dickson, CPA, ECF, CFF, MAFF, recognized there was no prior trademark license agreement used by D&D. She identified a sample of comparable food service franchises using the IFA Franchise Opportunities Guide, Spring/ Summer 2020 Edition. In determining which food service franchises were comparable to GGF franchises, she considered such factors as initial investment costs, geographic operating locations, number of operating locations and type of cuisine. Ms. Dickson researched available information related to these franchises using FDDs submitted closest to when the infringement began (January 2016).<br><br>Ms. Dickson summarized key statistics at the date of each franchise disclosure document, including royalty fee and franchisor's obligations to franchisees after the opening date of each location. The sample of comparable franchises indicated a royalty fee in the range of 5 to 7 percent of revenues, with GGF franchises in the middle of that range with a royalty of 6 percent. Ms. Dickson found that a royalty of 6 percent was the most frequently occurring rate based on the identified sample, and therefore concluded GGF's own | **Declaration and Report of Deborah Dickson, Ex. Y, at p. 4.** |

| No. | Plaintiff's Additional Uncontroverted Rebuttal Facts | Supporting Evidence |
|---|---|---|
| | royalty fee of 6 percent was a reasonable starting point for her calculations. | |
| 42. | The Great Greek has clientele that includes:<br>Susan Anton-Las Vegas<br>Dan Akroyd- Ontario, Canada<br>Alan Alda – New Jersey<br>Tim Allen – Colorado<br>Sandra Bernhardt – New York<br>Polly Bergen – Connecticut<br>Matthew Broderick – New York<br>Tom Cruise – Florida<br>Michael Constantine – NY/Penn<br>Olympia Dukakis – New York<br>Linda Evans – Washington<br>James Gandolfini – New York<br>U.S. Senator Gary Hart – Colorado<br>Neil Patrick Harris – New York<br>Lisa Harman – Nashville, TN<br>Rich Little – Las Vegas<br>Shirley MacLaine – New Mexico<br>Anthony Newley – Florida<br>Bronson Pinchot – Atlanta, GA<br>Christopher Reeve – New York<br>Geraldo Rivera – Ohio<br>Johnny Rivers – Louisiana<br>Rob Schneider – Arizona<br>Jerry Seinfeld – New York<br>Robert Vaughn – Connecticut<br>Pruitt Vince – Louisiana<br>Gene Wilder – Connecticut<br>Vanessa Williams – New York | DA Decl., ¶¶ 18-19. |

4860-1557-8896.1

37

RESPONSE TO DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

DATED:  March 1, 2022

LEWITT, HACKMAN, SHAPIRO, MARSHALL & HARLAN


By:  _____ */s/ Matthew J. Soroky*
Matthew J. Soroky
Attorneys for Plaintiff D & D GREEK RESTAURANT, INC.

RESPONSE TO DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT