B. Scott Eidson (*Pro Hac Vice* – MO 057757)
scott.eidson@stinson.com
Julie C. Scheipeter (*Pro Hac Vice* – MO 65978)
julie.scheipeter@stinson.com
**STINSON LLP**
7700 Forsyth Blvd
Suite 1100
St. Louis, Missouri 63105
Telephone:    314.863.0800
Facsimile:    314.863.9388

Javier Torres (217538)
javier.torres@stinson.com
**STINSON LLP**
1850 North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4584
Tel: (602) 279-1600
Fax: (602) 240-6925

Christopher P. Leyel (161755)
cleyel@yokasmith.com
**YOKA & SMITH, LLP**
445 South Figueroa Street, 38th Floor
Los Angeles, CA 90071
Tel: (213) 427-2300
Fax: (213) 427-2330

*Attorneys for Defendants Great Greek Franchising, LLC*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| D & D Greek Restaurant, Inc., d/b/a The Great Greek, a California corporation,<br><br>        Plaintiff,<br><br> v.<br><br>Great Greek Franchising, LLC, a Florida limited liability company and DOES 1 through 10,<br><br>        Defendants. | Case No. 2:20-cv-09770-MWF-SK<br><br>**DEFENDANT GREAT GREEK FRANCHISING, LLC'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date filed: October 23, 2020<br>FAC filed: February 11, 2021<br>SAC filed: June 7, 2021<br>Counter-<br>claim filed: March 4, 2021<br>Judge:  Hon. Michael W. Fitzgerald<br><br>Hrng Date: March 21, 2022<br>Time:   10:00a.m.<br>Courtroom: 5A |

1

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................ 1

II. ARGUMENT ..................................................................................................... 1

    A. D&D's Failure to Address Market Penetration is Telling. ................... 1

        1. D&D's "Claim to Fame" is Not Market Penetration. ............... 3

        2. There is No Overlapping Use. ................................................... 5

    B. GGF Did Not Commit Fraud on the USPTO. ..................................... 6

    C. D&D Does Not Have a Viable Claim for Damages. ........................... 9

        1. D&D Presented No Evidence Establishing Damage in Fact ........................................................................................... 9

        2. D&D's Measures of Damage are Speculative. ...................... 10

        3. Direct Competition is Required for Profits in this Case ......................................................................................... 13

III. CONCLUSION ................................................................................................ 15

i

DEFENDANT GREAT GREEK FRANCHISING, LLC'S REPLY IN SUPPORT OF ITS MOTION FOR
PARTIAL SUMMARY JUDGMENT
CASE NO.  2:20-CV-09770-MWF-SK

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aaron & Andrew, Inc. v. Sears Holdings Mgmt. Corp.*,
   No. CV-14-1196 SS, 2018 WL 1942373
   (C.D. Cal. Mar. 26, 2018)..............................................................................8, 9

*Adray v. Adry-Mart, Inc.*,
   76 F.3d 984 (9th Cir. 1996)................................................................................2

*Basile v. Prometheus Global Media, LLC*,
   No. 15-CV-10138, 2016 WL 2987004
   (N.D. Ill. May 24, 2016)................................................................................5, 10

*Bauer Bros., LLC v. Nike, Inc.*,
   159 F. Supp. 3d 1202 (S.D. Cal. 2016) ...............................................................13

*Blau v. YMI Jeanswear, Inc.*,
   No. CV 02-09551 FMC (SHSx), 2004 WL 5313967
   (C.D. Cal. Jan. 2, 2004) ..............................................................................10, 14

*Boston Pro. Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc.*,
   597 F.2d 71 (5th Cir. 1979).................................................................................13

*Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*,
   174 F.3d 1036 (9th Cir. 1999)..............................................................................1

*E&J Gallo Winery v. Gallo Cattle Co.*,
   967 F.2d 1280 (9th Cir. 1992)..........................................................................2, 3

*FaceGym, Ltd. v. Skin Gym Inc.*,
   No. CV 19-09625-CJC(JEMx), 2020 WL 12028894
   (C.D. Cal. 2020) .................................................................................................6

*Garcoa, Inc. v. All Clean Natural Ltd.*,
   No. 2:20-cv-09827-VAP-(SKx), 2021 WL 5994532
   (C.D. Cal. Nov. 5, 2021) ..............................................................................9, 10

*Glow Indus. v. Lopez*,
   252 F. Supp. 2d 962 (C.D. Cal. 2002)..................................................................4

*God's Era v. New Era Cap Co., Inc.*,
   No. 1:18-CV-11065-IT, 2020 WL 1536646
   (D. Mass. Mar. 31, 2020) ............................................................................... 6

*Kelley Blue Book v. Carsmarts, Inc.*,
   802 F. Supp. 278 (C.D. Cal. 1992)................................................................. 9

*Lands Council v. McNair*,
   629 F.3d 1070 (9th Cir. 2010)..................................................................... 2, 8

*Lindy Pen Co. v. Bic Pen Corp.*,
   982 F.2d 1400 (9th Cir. 1993).......................................................... 10, 11, 14

*Living on the Edge, LLC v. Lee*,
   No. CV-14-5982-MWF, 2015 WL 12661917
   (C.D. Cal. Aug. 25, 2015) .............................................................................. 3

*Lodestar Anstalt v. Bacardi & Co., Ltd.*,
   No. 2:16-cv06411-CAS(FFMx), 2019 WL 8105378
   (C.D. Cal. July 3, 2019)........................................................................... 12, 13

*M2 Software Inc. v. Viacom Inc.*,
   223 F. App'x 653 (9th Cir. 2007).................................................................. 13

*Maier Brewing Co. v. Fleischmann Distilling Corp.*,
   390 F.2d 117 (9th Cir. 1968)......................................................................... 14

*Marketquest Group, Inc. v. BIC Corp.*,
   862 F.3d 927 (9th Cir. 2017)......................................................................... 15

*McCabe v. Kevin Jenkins & Assocs., Inc.*,
   531 F. Supp. 648 (E.D. Pa. 1982)................................................................... 5

*Monster Energy Co. v. Integrated Supply Network, LLC.*
   533 F. Supp. 3d 928 (C.D. Cal. 2021)........................................................... 15

*Monster Energy Co. v. Integrated Supply Network, LLC*,
   821 F. App'x. 730 (9th Cir. 2020).................................................................. 15

*Museum of Modern Art v. MOMACHA IP LLC*,
   339 F. Supp. 3d 361 (S.D.N.Y. 2018)............................................................. 5

*Novadaq Techs., Inc. v. Karl Storz GmbH & Co. K.G.*,
No. 14-CV-04853-PSG, 2015 WL 9028123
(N.D. Cal. Dec. 16, 2015)..................................................................................15

*Pac. Dawn LLC v. Pritzker*,
831 F.3d 1166 (9th Cir. 2016).........................................................................2, 8

*Playboy Enters., Inc. v. Baccarat Clothing Co.*,
692 F.2d 1272 (9th Cir. 1982)...........................................................................14

*QS Wholesale, Inc. v. World Mktg., Inc.*,
No. SA 12-CV-0451 RNBX, 2013 WL 1953719
(C.D. Cal. May 9, 2013)................................................................................12, 13

*Ramada Inns, Inc. v. Gadsken Motel Co.*,
804 F.2d 1562 (11th Cir. 1986)..........................................................................13

*Razor USA LLC v. Vizio, Inc.*,
No. CV 14-01586 SJO, 2015 WL 12656941
(C.D. Cal. Oct. 19, 2015)...................................................................................15

*Romag Fastners, Inc. v. Fossil Group, Inc.*,
200 U.S. 321 (2020) ...........................................................................................14

*Rovio Entm't, Ltd. v. Angry Clubs LLC*,
No. 1:13-Civ-23619, 2013 WL 8743938
(S.D. Fla. Nov. 25, 2013) .....................................................................................5

*Sands, Taylor & Wood v. Quaker Oats Co.*,
34 F.3d 1340 (7th Cir. 1994)..............................................................................13

*Sansi N. Am., LLC v. LG Elecs. USA, Inc.*,
No. CV 18-3541 PSG, 2019 WL 8168069
(C.D. Cal. Nov. 14, 2019) ...............................................................................9, 10

*Stone Creek, Inc. v. Omnia Italian Design, Inc.*,
875 F.3d 426 (9th Cir. 2017)................................................................................2

*Stop Staring! Designs v. Tatyana, LLC*,
625 F. App'x 328 (9th Cir. 2015)..................................................................11, 14

*SunEarth, Inc. v. Sun Earth Solar Power Co.*,
846 F. Supp. 2d 1063 (N.D. Cal. 2012) ...............................................................4

iv

*Taylor v. List*,
880 F.2d 1040 (9th Cir. 1989) ................................................................. 7

*Vill. Builders 96, L.P. v. U.S. Lab'ys, Inc.*,
112 P.3d 1082 (Nev. 2005) .................................................................... 12

*Wilson v. Dalton*,
24 F. App'x 777 (9th Cir. 2001) ............................................................ 7

**Statutes**

Cal. Bus. & Prof. Code § 14200 .............................................................. 9

**Other Authorities**

3 McCarthy §§ 26.10-11 ......................................................................... 2

5 McCarthy § 26:4 .................................................................................. 2

McCarthy on Trademarks and Unfair Competition § 30:1 ...................... 9

DEFENDANT GREAT GREEK FRANCHISING, LLC'S REPLY IN SUPPORT OF ITS MOTION FOR
PARTIAL SUMMARY JUDGMENT
CASE NO. 2:20-cv-09770-MWF-SK

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Nine. Four. Two hundred thirty-one. These are the numbers for the Sherman Oaks restaurant's Twitter followers, YouTube subscribers, and Instagram followers, respectively.  Ignoring these metrics, and the arguments and authorities submitted by GGF, D&D addresses a series of strawman arguments in the hopes of diverting attention from its lack of factual or legal authority that would preclude summary judgment in GGF's favor.  Instead of bringing forward evidence to rebut GGF's contention that there is no national market penetration, D&D argues that the *Tea Rose-Rectanus* defense is not applicable to GGF.  Doc. 155 at 11-15.  Instead of addressing GGF's assertion that D&D has (1) not established damages in fact or (2) that the alleged damage attributed to GGF prior to its formation, or from third parties, is speculative, D&D argues about rights it allegedly acquired during its asset purchase. *Id.* at 18.  Whether intentional or not, D&D's arguments fail to connect.

## II.   ARGUMENT

### A.   D&D's Failure to Address Market Penetration is Telling.

D&D avoids bringing forward evidence that would establish its claims of nationwide market penetration.  Instead, it argues GGF's motion for summary judgment on market penetration is really a "disguised assertion of the *Tea-Rose Rectanus* defense." *Id.* at 11.  These are fundamentally distinct and different doctrines under the law.  Perhaps this is by design as D&D has no evidence that would preclude summary judgment in GGF's favor on this issue.

D&D must meet its burden of establishing common law trademark rights.  It must establish (1) prior use of a protectable mark *and* (2) legally sufficient market penetration in the geographic areas in which it seeks to enforce its rights. *See, e.g.*, *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999).  GGF claims D&D has not, and cannot, establish the latter beyond an

1

area around Sherman Oaks, California. Market penetration is not a "defense" as D&D suggests (Doc. 155 at 11)[1]—it is an essential element of D&D's claim.

As alluded to in GGF's Opposition to D&D's Motion for Summary Judgment, D&D also fails to present any evidence that its THE GREAT GREEK mark, which largely describes the type of food served, has acquired secondary meaning.[2] *E&J Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1290 (9th Cir. 1992) (secondary meaning refers to the association by consumers of a party's mark with that party or any other "particular source or sponsor"). This is important because it ties directly to market penetration. If a mark is largely descriptive, like D&D's here, "'a much greater quantum of use in the disputed territory' is necessary to entitle a party to protection in that territory than would be needed for an inherently distinctive mark." *Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 989 n.3 (9th Cir. 1996) (quoting 3 McCarthy §§ 26.10-11).

Because it has not addressed market penetration,[3] D&D has conceded any argument pertaining to its claimed market penetration or zone of natural expansion outside of an area surrounding Sherman Oaks. *See, e.g.*, *Pac. Dawn LLC v. Pritzker*, 831 F.3d 1166, 1178 n.7 (9th Cir. 2016) (citing *Lands Council v. McNair*, 629 F.3d 1070, 1079 n.4 (9th Cir. 2010)) ("[P]laintiffs did not raise that argument to the district court in their motion for summary judgment or opposition to the defendants' motion for summary judgment, so the argument was waived.").

---

[1] D&D's own authority clearly makes this distinction as *Stone Creek* plainly recognizes the trademark basics: for an infringement claim, a trademark owner must establish valid trademark rights, which is a separate inquiry from the *Tea Rose-Rectanus* defense. *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 436 (9th Cir. 2017) (citing 5 McCarthy § 26:4).

[2] This is another basis for which the Court may find D&D cannot establish trademark rights outside an area of Sherman Oaks . . . or any trademark rights at all.

[3] D&D does point to the speculative testimony of its proffered trademark practice expert, Dawn Newton, as to what allegedly happens in a typical trademark review. Doc. 155 at 13-14. This argument, and her opinions, have no bearing on market penetration. Likewise, D&D's arguments regarding "constructive knowledge" are similarly off point and have been rejected. *Id.* at 22-25 (collecting cases and distinguishing authority cited by D&D regarding "constructive knowledge").

DEFENDANT GREAT GREEK FRANCHISING, LLC'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 2:20-cv-09770-MWF-SK

### 1.    D&D's "Claim to Fame" is Not Market Penetration.

D&D claims the Sherman Oaks restaurant has nationwide recognition.  Doc. 155 at 16 (Section C).  Yet, D&D's own expert does not opine that D&D's THE GREAT GREEK mark has nationwide recognition.  For good reason.  To do so would likely strain credibility.  Since the creation of its Twitter account in 2009, the Sherman Oaks restaurant only has 9 followers, 111 tweets, and its current profile's first tweet was on November 4, 2020.  Doc. 141 ¶ 23; Doc. 151-1 ¶ 2; Doc. 151-3.  Since the creation of its YouTube page in 2013, the Sherman Oaks restaurant has posted 12 videos and all but one was posted more than 7 years ago. Doc. 141 ¶ 23; Doc. 141-20 at 8-9.  The total views for the 12 videos is 3,323, and each video's views ranges from 90 to 585 views.  Doc. 141 ¶ 23; Doc. 141-20 at 8-9. The Sherman Oaks restaurant's YouTube channel/page has 4 subscribers.  Doc. 141 ¶ 23; Doc. 141-20 at 8-9.  Since creation of its Instagram in 2020, the Sherman Oaks restaurant has 61 posts and 231 followers.  Doc. 141 ¶ 23; Doc. 141-20 at 3.  These are hardly the internet stats of a nationally recognized restaurant.

Consistent with this data, GGF's market penetration expert, David Franklyn, completed a consumer survey using methodologies regularly accepted as probative of these issues by this Circuit.  *See E.&J. Gallo*, 967 F.2d at 1292.  Mr. Franklyn concluded that "there is a net national recognition of 0% for The Great Greek." Declaration of Javier Torres ("Torres Decl.") Ex. LL at 31.[4]  Even within an area 10-20 miles away from the Sherman Oaks restaurant, D&D's net consumer recognition is 5%. *Id.* at 29.  Hardly enough to establish market penetration for a non-distinctive mark.

Forging ahead, D&D claims national recognition on the basis of customer reviews on TripAdvisor and Yelp, background appearances in three television

---

[4] Mr. Franklyn's expert report was completed March 4, 2022, per the Scheduling Order and was not available when GGF prepared its opening brief.  In addition, the Court may consider exhibits attached to this reply where such exhibits "rebut arguments raised by Plaintiff in its opposition." *Living on the Edge, LLC v. Lee*, No. CV-14-5982-MWF (JEMx), 2015 WL 12661917, at *3-4 (C.D. Cal. Aug. 25, 2015).

DEFENDANT GREAT GREEK FRANCHISING, LLC'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 2:20-cv-09770-MWF-SK

shows, and sporadic advertisements in five news publications. Doc. 155 at 16. Crucially though, D&D has adduced no evidence regarding the geographic areas where its customers reside or where it is known. Instead, D&D hypothesizes it is recognized nationwide based on these activities. This is not supported by the law, including that relied on by D&D. This is not market penetration.

D&D's reliance on *SunEarth, Inc. v. Sun Earth Solar Power Co.* is distinguishable as, in that case, the court's analysis relied on those plaintiffs having "provided sufficiently specific information to 'assist the court in quantifying market penetration, sales levels, growth trends, or the number of people who purchased the company's products in relation to the number of potential customers.'" 846 F. Supp. 2d 1063, 1076 (N.D. Cal. 2012) (quoting *Glow Indus. v. Lopez*, 252 F. Supp. 2d 962, 984-85 (C.D. Cal. 2002)). For example, those plaintiffs provided a declaration and corroborating evidence of sales of "more than $80 million worth of . . . products since 2000 in 49 states, including California and Texas, about $14 million of which was in California alone." *Id.* at 1069. Further, the appearances in news publications highlighted the plaintiffs' quantified market share (39% of all solar thermal collectors) and plaintiffs' leadership in their market (profiled as "Energy Leaders Today"). *Id.* Other quantified evidence in *SunEarth* included the number of website visitors per month (3,400) and advertising and marketing costs per year ($66,000). D&D has no such evidence, and as a result, has no evidence of market penetration.

D&D mentions a handful of "celebrity" customers with unsubstantiated evidence of states or cities of residence. Doc. 155 at 3, 17 (citing to declaration of D&D's co-owner, Dionisi Araklisianos).[5] D&D also mentions its location and interstate travelers on the roads near D&D's location as a basis for its recognition.

---

[5] Indeed, of the 28 customers and states of residence identified in D&D's opposition, Mr. Araklisianos's declaration identifies the residence of 6 of these based on "public[] know[ledge]." Doc. 159 ¶ 19. It is unclear from where the declarant's conclusion regarding the 22 remaining states of residence came from or where all of the claimed celebrities lived when they visited the restaurant.

DEFENDANT GREAT GREEK FRANCHISING, LLC'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 2:20-cv-09770-MWF-SK

However, D&D does not associate these bare facts with any sales or other data corresponding to recognition in any particular territory. *Id.* at 8. Again, no evidence of market penetration.

Finally, GGF does not dispute that certain national publications exist, but does dispute that D&D's authority is applicable to the situation at hand. *Cf. Basile v. Prometheus Global Media, LLC*, No. 15-CV-10138, 2016 WL 2987004, at *3 (N.D. Ill. May 24, 2016) (stating that the Hollywood Reporter, where statements at issue were published, was a national magazine for purposes of personal jurisdiction over defamation and false light claims); *McCabe v. Kevin Jenkins & Assocs., Inc.*, 531 F. Supp. 648, 655 (E.D. Pa. 1982) (noting that the "Los Angeles Times was a national paper" for purposes of personal jurisdiction in defamation and invasion of privacy claims). Even the trademark cases D&D relies on do not support its ultimate position, as both involve plaintiffs with registered marks, and neither discuss whether advertising in such publications translates to market penetration sufficient to establish common law trademark rights. *Museum of Modern Art v. MOMACHA IP LLC*, 339 F. Supp. 3d 361, 370, 374 (S.D.N.Y. 2018) (limiting its discussion to plaintiff's federal trademark registrations and noting the Hollywood Reporter is a national publication while analyzing other indicia of fame such as millions of annual visitors and wide-reaching sales of goods in stores, online, and through other third-party channels); *Rovio Entm't, Ltd. v. Angry Clubs LLC*, No. 1:13-Civ-23619, 2013 WL 8743938, at *2 (S.D. Fla. Nov. 25, 2013) (limiting discussion to plaintiff's federal trademark registrations and noting that the Los Angeles Times had a national audience).

At base, D&D's "claim to fame" is just that: an unsubstantiated claim divorced from sufficient fact to establish nationwide market penetration.

## 2. There is No Overlapping Use.

D&D's internet and social media statistics are factually and legally underwhelming. Nonetheless—with no supporting authority—D&D claims that its

5

internet presence supports a finding of overlapping use. Doc. 155 at 15. However, as this District recently articulated, internet presence, even in this decade, remains diffuse and that "[b]ecause of the lack of boundaries on the Internet, it is difficult to attribute general advertising on a website to market penetration without corresponding geographic data like sales or page views." *FaceGym, Ltd. v. Skin Gym Inc.*, No. CV 19-09625-CJC(JEMx), 2020 WL 12028894, at *3 (C.D. Cal. 2020). Though D&D seemingly argues that any internet and social media presence would translate into wide public awareness of its brand and overlapping use, this view is not supported by the law. Nine Twitter followers is not a national presence.

It is also undisputed that GGF franchisees do not operate any locations in Los Angeles County or in California. Doc. 162 ¶ 38. Instead, D&D objects that "GGF franchised restaurants are scheduled as 'coming soon' in locations where Plaintiff is known and attracts customers throughout the state including Orange County, San Diego, Inland Empire Counties, and the San Francisco Bay Area." *Id.* This nebulous speculation—without establishing when or whether any TGGMG restaurants will ever operate in these markets or whether D&D has any rights in these markets—does not raise an issue of overlapping use of D&D's and GGF's mark in any markets.[6] As a result, there can be no likelihood of confusion and D&D's infringement claims fail. *See, e.g.*, *God's Era v. New Era Cap Co., Inc.*, No. 1:18-CV-11065-IT, 2020 WL 1536646, at *4-5 (D. Mass. Mar. 31, 2020).

## B.    GGF Did Not Commit Fraud on the USPTO.

Again with no authority or substantive fact, D&D concludes that its fraud claim should be allowed to go to the jury because it can show both Neighbors and

---

[6] D&D's suggestion (Doc. 155 at 5, 16) that language in GGF's FDD documents regarding trademark use and modification is evidence of bad faith or knowledge that GGF knows its trademark claims are inferior is suspect. As D&D's counsel is undoubtedly aware, this type of provision is common in many standard franchise agreements. *See, e.g.*, Torres Decl. ¶¶ 3-7, Exs. MM at 112, NN at 212, OO at 607, PP at 908, QQ at 1071 (franchise disclosure documents utilized by Caribou Coffee, Qdoba, Dairy Queen, Jimmy John's, and Papa John's, all containing provisions providing mechanism for changing marks).

6

GGF knew about D&D's mark before submitting their respective trademark applications. Doc. 155 at 17. However, "[a] summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Wilson v. Dalton*, 24 F. App'x 777, 779 (9th Cir. 2001) ("[F]actually unsupported arguments are not sufficient to raise a genuine issue of material fact."). Now is the time to show the evidence that creates a genuine fact dispute. D&D failed to do so.[7]

D&D relies on unsupported conclusions by its expert, Dawn Newton, who opines that "there is no question" Neighbors or GGF knew about D&D's mark. Doc. 157 ¶ 18. Setting aside the admissibility of this testimony under *Daubert*, her opinion is based on two assumptions: (1) that Neighbors and/or GGF performed an internet search prior to filing and (2) that it is certain that D&D's restaurant would have turned up in those searches. First, it is undisputed that GGF performed no searches when pursuing its trademark applications. Torres Decl. ¶ 8, Ex. RR (GGF's Amended Response to Interrogatory No. 9). It did not need to because it was buying an established business that already owned a trademark registration—and for which there were no issues regarding the business's trademark use for many years. This obviated the need for wasting resources on further searching. Similarly, Neighbors outsourced its trademark application to a trademark professional who testified that the Sherman Oaks restaurant did not come up in any of his pre-filing due diligence. Doc. 141 ¶ 40. D&D may not like these facts, but these facts cannot be reasonably disputed.

---

[7] Absent specific authority, D&D refers the Court to its motion for summary judgment on cancellation based on priority of use and likelihood of confusion and argues that moots GGF's request for summary judgment on D&D's claims of fraud. Doc. 155 at 17. This misses the point as GGF's summary judgment request was narrowly focused on the allegations of fraud. GGF's response to D&D's request for cancellation on priority grounds is fully set forth in GGF's Opposition to D&D's Motion for Summary Judgment. Doc. 151 at 11-18.

DEFENDANT GREAT GREEK FRANCHISING, LLC'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 2:20-cv-09770-MWF-SK

Second, Ms. Newton relies entirely on circumstantial evidence to reach her opinions. *See, e.g.*, Doc. 157 ¶¶ 17-18. Ms. Newton is not an expert on Google, search engines, social media, or search engine optimization. *Id.* ¶¶ 1-3, Exhibit 1. Yet her opinions assume that a user in Sherman Oaks, running a Google search, will get the same results as a different user in Nevada or Florida. This assumption fails to account for the many different variables affecting the personalized search results returned in Google. *See, e.g.,* Google, "Personalized Search for Everyone" *available at* https://googleblog.blogspot.com/2009/12/personalized-search-for-everyone.html (last visited Mar. 8, 2022) (noting a user's location, search history, web browsing history, and language preferences as a few of the variables that influence a user's search results). The deposition testimony relied on by D&D fares no better. The Neighbors and GGF witnesses were clear—none of them was aware of the Sherman Oaks restaurant before trademark applications were filed. Doc. 141 ¶ 41. That much cannot be reasonably disputed by D&D.[8]

Without legitimate dispute, D&D appeals to a moral ground and refers to GGF as "inconsiderate" to the public in light of "substantial evidence of actual confusion." Doc. 155 at 17-18. The purported confusion alleged by D&D does not impact any meaningful portion of the public and is instead *de minimis*, inadmissible, and not actual confusion. None of the evidence that D&D points to—*e.g.*, mistaken tags in a social media post—indicates that the posters actually knew about the Sherman Oaks restaurant or were confused about the purchase of their food. Further, D&D's evidence is speculative hearsay, based largely on one person's "belief" or "observation," which is inadmissible. *See, e.g.*, Doc. 147 ¶ 2m; *see also Aaron & Andrew, Inc. v. Sears Holdings Mgmt. Corp.*, No. CV-14-1196 SS, 2018 WL

_____

[8] To the extent that D&D does not otherwise dispute or address any of the facts or legal authority set forth in GGF's motion, which includes undisputed facts that Neighbors and GGF lacked knowledge of D&D's mark, D&D concedes the same. *See, e.g., Pac. Dawn LLC*, 831 F.3d at 1178 n.7 (citing *Lands Council*, 629 F.3d at 1079 n.4).

DEFENDANT GREAT GREEK FRANCHISING, LLC'S REPLY IN SUPPORT OF ITS MOTION FOR
PARTIAL SUMMARY JUDGMENT
CASE NO. 2:20-cv-09770-MWF-SK

1942373 at *5-6 (C.D. Cal. Mar. 26, 2018) (noting website printouts are often inadmissible hearsay).  The Court should not allow D&D to run to the jury with speculative accusations of fraud.

### C.    D&D Does Not Have a Viable Claim for Damages.[9]

Instead of disputing material fact, D&D attempts to dispute the applicable law in an attempt to distract from the lack of evidence that cripples its claim for damages. GGF argued that D&D cannot establish causation for damages.  Doc. 140-2 at 18. D&D did not respond.  GGF argued that D&D is not entitled to damages based on conduct or revenue of third parties.  *Id.* at 24.  D&D did not respond.  D&D's lack of response is not surprising given that "[t]he traditional remedy for unfair competition and trademark infringement cases is the equitable remedy of injunction." *Kelley Blue Book v. Carsmarts, Inc.*, 802 F. Supp. 278, 293 (C.D. Cal. 1992) (citing McCarthy on Trademarks and Unfair Competition § 30:1).

### 1.    D&D Presented No Evidence Establishing Damage in Fact.

Regardless of D&D's damages theory, proof of damages in fact is required. In an attempt to address its causation deficiencies, D&D relies on its alleged instances of confusion and the expert report of Deborah Dickinson.  As for confusion, that is not sufficient to establish injury in fact or that such confusion led to a lost sale—particularly as is the case here where *all* of D&D's alleged instances of confusion are forward looking when it claims only reverse confusion.  Doc. 151 at 18-19; *see, e.g.*, *Sansi N. Am., LLC v. LG Elecs. USA, Inc.* No. CV 18-3541 PSG (SKx), 2019 WL 8168069, at *4, 10 (C.D. Cal. Nov. 14, 2019) (finding evidence of actual confusion insufficient to show injury in fact).  As for Ms. Dickinson's report, it does not purport to analyze injury in fact, just the amount of alleged damaged suffered by D&D.[10]  Doc. 141-29.  This report cannot carry D&D's burden.

---

[9] Setting aside D&D's mistake about the substance of the parties' meet-and-confer, it does not dispute that the Court should grant summary judgment in GGF's favor on Count IV for trademark infringement under Cal. Bus. & Prof. Code § 14200.

[10] Even if the disclosure addressed damages in fact, it would not be sufficient to

9

Recently, in *Garcoa, Inc. v. All Clean Natural Ltd.*, the Central District of California granted summary judgment in favor of a defendant in a trademark infringement case finding that "no triable issue remains as to recovery of monetary damages."  No. 2:20-cv-09827-VAP-(SKx), 2021 WL 5994532, at *11 (C.D. Cal. Nov. 5, 2021).  The court found that the plaintiff failed to satisfy the damage in fact requirement (*i.e.*, causation).  *Id.*  In addition, the plaintiff—like D&D here—failed to produce any cancelled purchase orders resulting from confusion with defendant's mark.  *Id.*  This ruling, and requirement of proof of causation, is not unique to this Court.  *Accord Sansi*, 2019 WL 8168069, at *10; *see also Blau v. YMI Jeanswear, Inc.*, No. CV 02-09551 FMC (SHSx), 2004 WL 5313967, at *3-5 (C.D. Cal. Jan. 2, 2004) (granting summary judgment for defendant because plaintiff failed to tie alleged damages to defendant's conduct and noting, like the situation here, this is "not a situation where the customer intended to purchase [plaintiff's product], but instead was induced to purchase [defendant's product].").

Just as in *Garcoa*, *Sansi*, and *Blau*, D&D fails to provide any evidence of: cancelled orders due to confusion; specific instances of lost sales due to alleged infringement; accounts or customers that were lost due to alleged infringement; declining revenue attributable to the alleged infringement; or instances where the customer intended to purchase from D&D but instead was induced to purchase from GGF.  *See* Doc. 140-2 at 19, 21.  This failure, by itself, is enough for the Court to Grant GGF's Motion that D&D is not entitled to the monetary relief it seeks.

## 2.    D&D's Measures of Damage are Speculative.

All of D&D's damages claims are speculative and not proven with reasonable certainty because they are based on: (1) total revenue instead of revenue attributable to the infringing conduct; (2) revenue from third parties; and (3) a time period prior to GGF's formation.  *See Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407-08

---

avoid summary judgment because it is unsworn.  *Sansi*, 2019 WL 8168069, at *10.

10

(9th Cir. 1993) (affirming trial court's denial of defendant's profits as damages for lack of proof when plaintiff only "brought forth proof of [defendant's] total sales" and holding "an accounting is intended to award profits only on sales that are attributable to the infringing conduct.")

Here, D&D does nothing to apportion GGF's total revenue to the alleged infringing conduct. Just like the plaintiff in *Lindy Pen Co.*, D&D seeks an accounting of the defendant's profits based on a theory of unjust enrichment. *Id*. at 1408. In that case, the Ninth Circuit rejected the plaintiff's argument that it did not have the burden to separate infringing sales from total sales and stated "an accounting is intended to award profits only on sales that are attributable to the infringing conduct." *Id*. The Ninth Circuit found the plaintiff was unable to "present competent evidence" to justify an accounting because it "failed to come forward with any evidence of sales of the [defendant's product] in the infringing market [but] instead brought forth proof of [the defendant's] total sales." *Id*.

As in *Lindy*, D&D has the burden to show that its claimed revenue amounts reflect gross revenue *attributable to the infringing conduct* with reasonable certainty. *Lindy*, 982 F.2d at 1408. By merely including GGF and its franchisees' total revenues, without more, D&D has not satisfied its burden under *Lindy* and its claims for damage under an unjust enrichment theory must fail. *See Stop Staring! Designs v. Tatyana, LLC*, 625 F. App'x 328, (9th Cir. 2015) (affirming dismissal of unjust enrichment claim when plaintiff failed to show defendant's alleged infringement caused an effect on either company's bottom line).

In addition, D&D's claimed damage amounts are speculative because they include time periods prior to D&D's formation in 2019, prior to GGF's formation in 2017, and revenue or profit earned by third parties. Doc. 140 at 20. D&D fails to explain how (1) GGF is liable for actions of any third parties prior to GGF's formation or (2) GGF is liable for alleged conduct of third party franchisees. Doc. 141 ¶ 31; Doc. 155 at 18. Here, D&D did not pursue any type of alter ego or other

11

derivative liability theory, and the Asset Purchase Agreement between Neighbors and Mr. Goumroian plainly establishes that Neighbors did not assume any liabilities other than those listed in the Agreement—an agreement that did not list trademark infringement or related issues as a liability.  Doc. 146 at 173.  *See Vill. Builders 96, L.P. v. U.S. Lab'ys, Inc.*, 112 P.3d 1082, 1087 (Nev. 2005) (holding that it is the general rule that when one corporation sells all of its assets to another corporation the purchaser is not liable for the acts of the seller).

Finally, D&D's reasonable royalty damages are also speculative.  GGF does not dispute that a reasonable royalty is an acceptable measure of calculating trademark damages in certain cases.  This is just not that case.  A reasonable royalty must be proved with reasonable certainty.  *Lodestar Anstalt v. Bacardi & Co., Ltd.*, No. 2:16-cv06411-CAS(FFMx), 2019 WL 8105378, at *13 (C.D. Cal. July 3, 2019) (granting summary judgment that plaintiff was not entitled to a reasonable royalty). "For this reason, reasonable royalties are most often granted in a trademark context where the parties had a prior licensing agreement . . . or where the plaintiff previously had engaged in the practice of licensing the mark to a third party." *Id*. (internal quotes and citations omitted).  Where a plaintiff has failed to present evidence of an intent to license its trademark, a reasonable royalty analysis is necessarily speculation. *Id*.

In *Lodestar*, this Court granted defendant's motion for summary judgment that plaintiff was not entitled to a reasonable royalty in the absence of (1) any evidence of a prior license for plaintiff's mark or (2) negotiations with a third party to license plaintiff's mark. *Id*. at 14-15.  The Court rejected plaintiff's attempts to cure those deficiencies through expert testimony, including testimony of an expert who reviewed publicly available royalty rates in the relevant industry and opined what a hypothetical royalty rate would be. *Id*. at 14.  The court further rejected plaintiff's argument that it did not need to show that it licensed its mark to a third party, and addressed *QS Wholesale,* noting that "those cases all involved plaintiffs who did, in

12

fact, license their marks to third parties or at least engaged in some negotiations about the potential purchase of their marks." *Id.* No such evidence exists here.

D&D's authority fails to support its position that prior licensing is not required (or it is not from this Circuit). *Sands, Taylor & Wood v. Quaker Oats Co.*, 34 F.3d 1340, 1344 (7th Cir. 1994) (plaintiff had prior licenses); *Ramada Inns, Inc. v. Gadsken Motel Co.*, 804 F.2d 1562, 1565 (11th Cir. 1986) (merely noting that royalties normally received for the use of a mark are a proper measure of damages); *Boston Pro. Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc.*, 597 F.2d 71, 76-78 (5th Cir. 1979) (prior offer to pay $15,000 for a license); *M2 Software Inc. v. Viacom Inc.*, 223 F. App'x 653, 655 (9th Cir. 2007) (rejecting plaintiff's royalty theory and holding: "In the absence of a legitimate proposed basis on which to calculate a royalty, awarding a reasonable royalty here would be impermissibly speculative"); *Bauer Bros., LLC v. Nike, Inc.*, 159 F. Supp. 3d 1202, (S.D. Cal. 2016) (merely stating "[s]ome courts, however, have awarded 'reasonable royalty damages' absent prior licensing agreements if the evidence provides a sufficiently reliable basis from which to calculate them." (internal quotation and citation omitted)); *QS Wholesale, Inc. v. World Mktg., Inc.*, No. SA 12-CV-0451 RNBX, 2013 WL 1953719, at *5 (C.D. Cal. May 9, 2013) (detailed business negotiations between the plaintiff and defendant regarding purchase of the mark). There is no evidence that D&D licensed its mark or intended to license its mark. Doc. 140-2 at 23. As such, a reasonable royalty is not applicable here.

On multiple fronts, D&D's damages claim is tainted with speculation and, on this ground alone, summary judgment in GGF's favor that D&D is not entitled to monetary relief is proper.

### 3.   Direct Competition is Required for Profits in this Case.

An accounting of profits is awarded in two instances: (1) as a measure of a plaintiff's damages for infringement; and (2) under the unjust enrichment rationale.

13

*Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 124 (9th Cir. 1968). D&D is not allowed GGF's profits under either theory.

In the first instance, accounting is "utilized as a method of compensating the [plaintiff] for diversion of sales." *Maier Brewing Co.*, 390 F.2d at 124. Therefore, if a plaintiff seeks an accounting of a defendant's profits as a measure of plaintiff's damages, a plaintiff must prove direct competition between the parties because "if there is no competition, there can be no diversion of customers." *Id.* at 121. There is no dispute that the parties are not in direct competition and that D&D cannot obtain GGF's profits as a measure of damages for infringement. *Blau*, 2004 WL 5313967, at *5. Doc. 155 at 19; *see also* Doc. 141 ¶¶ 1, 4, 5, 12, 13, 35.

In the second instance regarding unjust enrichment, direct competition is not required, but this is a reverse confusion case (Doc. 140-2 at 27-29).[11] Unjust enrichment damages are not applicable in this context. First, as in *Lindy*, D&D still has the burden to show any of its claimed revenue amounts of GGF reflect gross revenue *attributable to the infringing conduct* with reasonable certainty. *Lindy*, 982 F.2d at 1408. D&D has not satisfied its burden. *See Stop Staring! Designs v. Tatyana, LLC*, 625 F. App'x 328, (9th Cir. 2015) (affirming dismissal of unjust enrichment claim when plaintiff failed to show defendant's alleged infringement caused an effect on either company's bottom line). Second, profits for unjust enrichment are not allowed in reverse confusion cases. Doc. 140-2 at 21 (collecting authority).

D&D spends over three pages of its Opposition discussing the Supreme Court's decision in *Romag Fastners, Inc. v. Fossil Group, Inc.* and its narrow holding that willful infringement is not required to award a defendant's profits. 200

---

[11] GGF is not moving for summary judgment that direct competition is required under the unjust enrichment theory, and therefore, D&D's citation to *Playboy Enters., Inc. v. Baccarat Clothing Co.*, 692 F.2d 1272, 1274 (9th Cir. 1982) and argument that a defendant's profits are available even in indirect competition cases are irrelevant. Doc. 155 at 19.

14

U.S. 321 (2020); Doc. 155 at 19-23. D&D then argues that disgorgement of profits is appropriate because all of GGF's authority is outdated, and because of Mr. Goumroian's alleged knowledge of D&D's restaurant. Doc. 155 at 21. Again this misses the mark. GGF's contention is that because of the unique state of mind present in reverse confusion cases, profits are not available.

In order to obtain profits of a defendant under unjust enrichment theory, some intent to exploit an existing mark is required even if willfulness is found. *Novadaq Techs., Inc. v. Karl Storz GmbH & Co. K.G.*, No. 14-CV-04853-PSG, 2015 WL 9028123, at *2 (N.D. Cal. Dec. 16, 2015) (holding in a reverse confusion case that plaintiff may not receive unjust enrichment or disgorgement damages). This intent to exploit an existing mark is necessarily absent in reverse confusion cases where the senior user is not claiming that the junior user's goods and services are being mistaken for the senior user's. *Id.*

None of the cases relied on by D&D help its cause. *Monster Energy Co. v. Integrated Supply Network, LLC*, 821 F. App'x. 730, 733 (9th Cir. 2020) (merely noting that willfulness is no longer required for disgorgement of profits); *Monster Energy Co. v. Integrated Supply Network, LLC*. 533 F. Supp. 3d 928 (C.D. Cal. 2021) (noting that defendant acted with malice, fraud, or oppression in infringement weighed in favor of disgorgement); *Razor USA LLC v. Vizio, Inc.*, No. CV 14-01586 SJO (JCGx), 2015 WL 12656941, at *9 (C.D. Cal. Oct. 19, 2015) (merely finding that plaintiff could not recover defendant's profits because actions were not willful); *Marketquest Group, Inc. v. BIC Corp.*, 862 F.3d 927, 934 (9th Cir. 2017) (discussing intent with respect to assessing likelihood of confusion but not damages). D&D is not entitled to the profits it seeks.

## III.   CONCLUSION

Because D&D (1) ignores relevant argument or (2) fails to come forward with material fact or relevant authority to create a genuine fact dispute, the Court should grant GGF's request motion for partial summary judgment.

15

Dated: March 8, 2022                    STINSON LLP


                                   By: /s/ *Javier Torres*
                                       B. Scott Eidson
                                       Julie C. Scheipeter
                                       Javier Torres

                                       Attorneys for Defendants Great Greek
                                       Franchising, LLC

16